# 26-1130

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

BOYSING SAMUEL, JR., LAURA PINCAY, CHRISTOPHER MONTEAGUDO, KEANNA KOVOS,

*Plaintiffs - Appellants,*

SHAWNICE BETTIS,

*Plaintiff,*

v.

AMAZON.COM SERVICES, LLC, FKA AMAZON SERVICES.COM, INC.,

*Defendant - Appellee.*

*On appeal from Order and Judgment of the U.S. District Court for the Eastern District of New York Case No. 24-cv-7563 [DeArcy Hall, J.]*

## APPELLANTS' APPENDIX

**VOL. I of II**
**pp. A.1-A.106**

**ROBERT WISNIEWSKI P.C.**
17 State Street, Suite 820
New York, New York 10004
(212) 267-2101
rw@rwapc.com

**LEON GREENBERG, ATTORNEY AT LAW**
1811 S. Rainbow Boulevard, Suite 210
Las Vegas, Nevada 89146
(702) 383-6086
leongreenberg@overtimelaw.com

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS – APPENDIX

Table of Contents ....................................................................................i

Civil Docket, Bettis et. al. v. Amazon Services, LLC, United States District Court, Eastern District of New York, Case # 1:24-cv-07563-LDH JAM.........................................................................................A1

Second Amended Complaint filed May 30, 2025 .....................................A9

Declaration in Opposition to Motion to Dismiss with Exhibits "1" through "7" filed September 1, 2025.....................................................A37

Memorandum and Order granting motion to dismiss [DeArcy Hall, J.] filed March 31, 2026 .........................................................................A172

Judgment filed March 31, 2026..........................................................A191

Declaration of Robert Wisniewski, Esq., in support of motion to vacate judgment and reconsider, with Exhibits "3" and "4" filed April 13, 2026 .........................................................................................A192

Notice of Appeal filed April 27, 2026..................................................A201

Docket Text Order denying motion to vacate judgment and reconsider [DeArcy Hall, J.] filed April 28, 2026..................................................A203

Amended Notice of Appeal filed May 11, 2026 ..................................A206

APPEAL,ACO,DJI

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:24-cv-07563-LDH-JAM

Bettis et al v. Amazon.com Services LLC
Assigned to: Judge LaShann DeArcy Hall
Referred to: Magistrate Judge Joseph A. Marutollo
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 10/29/2024
Date Terminated: 03/31/2026
Jury Demand: Plaintiff
Nature of Suit: 790 Labor: Other
Jurisdiction: Diversity

**Plaintiff**

**Shawnice Bettis** represented by **Leon Greenberg**
633 South 4th Street #9
Las Vegas, NV 89101
702-383-6085
Fax: 702-385-1827
Email: leongreenberg@overtimelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Wisniewski**
Robert Wisniewski P.C.
17 State Street
Ste 820
New York, NY 10004
212-267-2101
Email: rw@rwapc.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Boysing Samuel, Jr.** represented by **Leon Greenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Wisniewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Laura Pincay** represented by **Robert Wisniewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Monteagudo** represented by **Robert Wisniewski**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ms. Keanna Kovos** represented by **Robert Wisniewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Amazon.com Services LLC**
*f/k/a Amazon Services.Com, Inc.*

represented by **Grace Elizabeth Hart**
61 Jane Street
Apartment 16a
New York, NY 10014
914-874-3341
Email: ghart@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Harris Michael Mufson**
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
212-351-4000
Fax: 212-351-4035
Email: HMufson@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Jason Craig Schwartz**
Gibson, Dunn & Crutcher LLP
1700 M Street NW
Washington, DC 20036
202-955-8500
Email: jschwartz@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/29/2024 | 1 | COMPLAINT against Amazon.com Services LLC filing fee $ 405, receipt number ANYEDC-18440207 Was the Disclosure Statement on Civil Cover Sheet completed -YES,, filed by Shawnice Bettis, Boysing Samuel, Jr.. (Attachments: # 1 Proposed Summons Proposed Summons, # 2 Civil Cover Sheet Civil Cover Sheet) (Wisniewski, Robert) (Entered: 10/29/2024) |
| 10/30/2024 | | Case Assigned to Judge LaShann DeArcy Hall and Magistrate Judge Joseph A. Marutollo. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (KD) (Entered: 10/30/2024) |
| 10/30/2024 | 2 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action |

| | | |
|---|---|---|
| | | including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (KD) (Entered: 10/30/2024) |
| 10/30/2024 | 3 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (KD) (Entered: 10/30/2024) |
| 10/30/2024 | 4 | Summons Issued as to Amazon.com Services LLC. (KD) (Entered: 10/30/2024) |
| 10/30/2024 | 5 | SCHEDULING ORDER: A telephonic initial conference will be held on January 6, 2025 at 12:30 p.m. before Magistrate Judge Joseph A. Marutollo. To participate in the conference, the parties shall dial (646) 828-7666; Meeting ID: 160 711 7492; Passcode: 087228. The parties must complete the attached proposed Discovery Plan and Scheduling Order and file it on ECF no later than January 3, 2025. Plaintiff is directed to ensure that all Defendants are aware of this conference. Counsel with knowledge of the case must attend the conference; *per diem* counsel may not appear without prior permission of the Court. The parties are directed to review this Court's Individual Practices and Rules in advance of the conference. Ordered by Magistrate Judge Joseph A. Marutollo on 10/30/2024. (Attachments: # 1 Individual Practices and Rules) (EG) (Entered: 10/30/2024) |
| 10/30/2024 | 6 | NOTICE of Appearance by Leon Greenberg on behalf of All Plaintiffs (aty to be noticed) (Greenberg, Leon) (Entered: 10/30/2024) |
| 11/08/2024 | 7 | SUMMONS Returned Executed by Shawnice Bettis, Boysing Samuel, Jr.. Amazon.com Services LLC served on 11/1/2024, answer due 11/22/2024. (Wisniewski, Robert) (Entered: 11/08/2024) |
| 11/08/2024 | 8 | SUMMONS Returned Executed by Shawnice Bettis, Boysing Samuel, Jr.. (Wisniewski, Robert) (Entered: 11/08/2024) |
| 11/19/2024 | 9 | NOTICE of Appearance by Harris Michael Mufson on behalf of Amazon.com Services LLC (aty to be noticed) (Mufson, Harris) (Entered: 11/19/2024) |
| 11/19/2024 | 10 | Corporate Disclosure Statement by Amazon.com Services LLC identifying Corporate Parent Amazon.com, Inc. for Amazon.com Services LLC. (Mufson, Harris) (Entered: 11/19/2024) |
| 11/19/2024 | 11 | Letter MOTION for Extension of Time to File Answer re 1 Complaint, /*Unopposed Letter Motion for a 45-day extension of time to January 6, 2025 to respond to the complaint* by Amazon.com Services LLC. (Mufson, Harris) (Entered: 11/19/2024) |
| 11/20/2024 | | ORDER granting 11 . Defendant shall answer, move, or otherwise respond to the complaint by January 6, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 11/20/2024. (EG) (Entered: 11/20/2024) |
| 12/20/2024 | 12 | Letter MOTION for pre motion conference *in anticipation of motion to dismiss and to stay discovery* by Amazon.com Services LLC. (Mufson, Harris) (Entered: 12/20/2024) |
| 12/26/2024 | 13 | Letter MOTION for Extension of Time to File *Proposed Discovery Plan and Scheduling Order*, Letter MOTION to Adjourn Conference *(January 6, 2025 Initial Telephonic Conference)* by Amazon.com Services LLC. (Mufson, Harris) (Entered: 12/26/2024) |
| 12/26/2024 | | ORDER Granting in part and denying in part 13 . The Court adjourns the January 6, 2025 conference and all associated deadlines *sine die*. Defendant moves to stay as part of its request to Judge DeArcy Hall for a pre-motion conference. Dkt. No. 12 . Plaintiffs shall file a letter, addressed to Magistrate Judge Marutollo, by January 3, 2025 addressing whether |

| | | |
|---|---|---|
| | | they consent to the request to stay discovery pending motion practice. Defendant shall file a letter, also addressed to Magistrate Judge Marutollo, in response to Plaintiffs' letter by January 5, 2025.<br><br>The Court notes that Plaintiffs shall comply with Judge DeArcy Hall's Individual Practices and Rules regarding responding to Defendant's pre-motion conference letter. Ordered by Magistrate Judge Joseph A. Marutollo on 12/26/2024. (GWM) (Entered: 12/26/2024) |
| 12/26/2024 | 14 | Letter *from Harris M. Mufson to the Hon. Joseph A. Marutollo dated December 26, 2024 re: request for clarification of the Court's December 26, 2024 Order* by Amazon.com Services LLC (Mufson, Harris) (Entered: 12/26/2024) |
| 12/26/2024 | | ORDER - Per 14 , the Court clarifies its order as follows: Defendant's response to Plaintiffs' letter shall be filed by January 6, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 12/26/2024. (JAM) (Entered: 12/26/2024) |
| 12/28/2024 | 15 | First MOTION for Extension of Time to File Response/Reply by Shawnice Bettis, Boysing Samuel, Jr.. (Wisniewski, Robert) (Entered: 12/28/2024) |
| 01/03/2025 | 16 | Letter MOTION for Extension of Time to File Response/Reply *to Defendant's Request to Stay Discovery* by Shawnice Bettis, Boysing Samuel, Jr.. (Wisniewski, Robert) (Entered: 01/03/2025) |
| 01/03/2025 | | ORDER granting 16 : Plaintiffs shall file their response to the 12 request to stay discovery by February 2, 2025. Responses due by 2/2/2025Ordered by Magistrate Judge Joseph A. Marutollo on 1/3/2025. (GWM) (Entered: 01/03/2025) |
| 01/08/2025 | | ORDER: Plaintiff's request 15 for an extension of time to respond to Defendant's request for a pre-motion conference is GRANTED. Plaintiff shall file any response on or before January 8, 2025. Ordered by Judge LaShann DeArcy Hall on 1/8/2025. (SCI) (Entered: 01/08/2025) |
| 01/08/2025 | 17 | Letter MOTION for Extension of Time to File Response/Reply as to 12 Letter MOTION for pre motion conference *in anticipation of motion to dismiss and to stay discovery* by Shawnice Bettis, Boysing Samuel, Jr.. (Wisniewski, Robert) (Entered: 01/08/2025) |
| 01/14/2025 | | ORDER: The Court is in receipt of Defendant's request 12 for a pre-motion conference and Plaintiffs' second request for an extension of time 17 stating that they intend to amend the complaint. In light of Plaintiffs' intention to amend, Defendant's request for a pre-motion conference is DENIED. Plaintiffs' request for an extension of time to amend the complaint is GRANTED. Plaintiffs shall file the amended complaint on or before February 7, 2025. Ordered by Judge LaShann DeArcy Hall on 1/14/2025. (CG) (Entered: 01/14/2025) |
| 02/03/2025 | 18 | Letter *in response to Defendant's request to stay discovery* by Shawnice Bettis, Boysing Samuel, Jr. (Wisniewski, Robert) (Entered: 02/03/2025) |
| 02/03/2025 | | ORDER: In light of Plaintiffs' argument that they do not oppose the proposed stay 18 , the Court grants Defendants' motion to stay discovery 16 . "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Salese v. JP Morgan Chase & Co.*, No. 23-CV-153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023) (quoting *Landis v. N. Am. Co.* , 299 U.S. 248, 254 (1936)). Considering that Plaintiffs do not oppose such a request, and given Plaintiffs' anticipated amended complaint, the Court finds that a stay is warranted at this time. *See Johnson v. N.Y. Univ. Sch. of Educ.* , 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[A] stay of discovery is appropriate [ ] where the motion appears to have substantial grounds or, stated another way, does not appear to be without foundation in law." (citation omitted)). Ordered by Magistrate Judge Joseph A. Marutollo on 2/3/2025. (EG) (Entered: 02/03/2025) |

| | | |
|---|---|---|
| 02/07/2025 | 19 | AMENDED COMPLAINT against Amazon.com Services LLC, Laura Pincay, Christopher Monteagudo, filed by Shawnice Bettis, Laura Pincay, Christopher Monteagudo. (Wisniewski, Robert) (Entered: 02/07/2025) |
| 02/21/2025 | 20 | Letter MOTION for pre motion conference / *pre-motion conference in anticipation of motion to dismiss* by Amazon.com Services LLC. (Mufson, Harris) (Entered: 02/21/2025) |
| 02/28/2025 | 21 | Letter *in opposition to the defendant's pre-motion letter* by Shawnice Bettis, Christopher Monteagudo, Laura Pincay, Boysing Samuel, Jr. (Attachments: # 1 Exhibit New York Department of Labor Opinion) (Wisniewski, Robert) (Entered: 02/28/2025) |
| 03/14/2025 | | ORDER: Defendant's request 20 for a pre-motion conference on its anticipated motion to dismiss is GRANTED. A pre-motion conference shall be held before Judge LaShann DeArcy Hall on May 7, 2025, at 3:30 p.m. in Courtroom 4H North. At the pre-motion conference, the Court will order a briefing schedule. The parties should anticipate a schedule that will require service of their motions within a short time after the pre-motion conference (usually two weeks). Ordered by Judge LaShann DeArcy Hall on 3/14/2025. (CG) (Entered: 03/14/2025) |
| 05/07/2025 | | MINUTE ENTRY AND ORDER: A pre-motion conference was held before Judge LaShann DeArcy Hall on May 7, 2025. Robert Wisniewski appeared on behalf of Plaintiffs Shawnice Bettis, Boysing Samuel, Jr., Laura Pincay, and Christopher Monteagudo. Harris Michael Mufson appeared on behalf of Defendant Amazon.com Services LLC. Plaintiffs are directed to file an amended complaint on or before May 30, 2025. Defendant shall file any request for a pre-motion conference on or before June 20, 2025. Plaintiff shall file any response to Defendants' pre-motion conference request within five business days thereafter.<br><br>Unless otherwise directed by the Court, the parties shall brief the motion to dismiss as follows: Defendant is directed to serve Plaintiff with any motion to dismiss on or before July 30, 2025. Plaintiff shall serve its opposition on or before August 29, 2025. Defendant shall serve its reply and electronically file the fully briefed motion on or before September 12, 2025. Ordered by Judge LaShann Hall on 5/7/2025. (Court Reporter Linda Marino.) (CG) (Entered: 05/14/2025) |
| 05/30/2025 | 22 | AMENDED COMPLAINT against Amazon.com Services LLC, filed by Shawnice Bettis, Christopher Monteagudo, Boysing Samuel, Jr., Laura Pincay, Keanna Kovos. (Wisniewski, Robert) (Entered: 05/30/2025) |
| 06/17/2025 | 23 | Letter MOTION for pre motion conference *in anticipation of motion to dismiss Plaintiffs' Second Amended Complaint*. by Amazon.com Services LLC. (Attachments: # 1 Exhibit A - Transcript of May 7 Pre-Motion Conference) (Mufson, Harris) (Entered: 06/17/2025) |
| 06/24/2025 | 24 | Letter *in Response to Defendant's Second Pre-Motion Letter* by Shawnice Bettis, Keanna Kovos, Christopher Monteagudo, Laura Pincay, Boysing Samuel, Jr. (Attachments: # 1 Exhibit NYDOL letter) (Wisniewski, Robert) (Entered: 06/24/2025) |
| 06/27/2025 | | ORDER: Defendant's request 23 for a pre-motion conference is DENIED. The parties shall brief any motion to dismiss in accordance with the Court's Individual Rules and Practices. Defendant is directed to serve its motion to dismiss no later than July 11, 2025. Plaintiffs shall serve their opposition no later than July 25, 2025. Defendant shall serve any reply no later than August 1, 2025. As a courtesy to the Court, unless objected to by the parties, Defendant shall file the motion and related memoranda of law once the motion is fully briefed. Ordered by Judge LaShann DeArcy Hall on 6/27/2025. (CG) (Entered: 06/27/2025) |
| 07/02/2025 | 25 | MOTION for Extension of Time to File Response/Reply as to Order on Motion for Pre Motion Conference,, by Shawnice Bettis, Keanna Kovos, Christopher Monteagudo, Laura |

| | | |
|---|---|---|
| | | Pincay, Boysing Samuel, Jr.. (Wisniewski, Robert) (Entered: 07/02/2025) |
| 07/09/2025 | | ORDER: Plaintiff's request 25 to revise the briefing schedule as to Defendant's motion to dismiss from the briefing schedule that was ordered on June 27, 2025 to the briefing scheduled that was ordered on May 7, 2025 is GRANTED. Defendant is directed to serve Plaintiff with any motion to dismiss on or before July 30, 2025. Plaintiff shall serve its opposition on or before August 29, 2025. Defendant shall serve any reply on or before September 12, 2025. As a courtesy to the Court, unless objected to by the parties, Defendant shall file the motion and related memoranda of law once the motion is fully briefed. The briefing schedule as to Defendant's motion to dismiss that was ordered on June 27, 2025 is VACATED. Ordered by Judge LaShann DeArcy Hall on 7/9/2025. (CG) (Entered: 07/09/2025) |
| 08/21/2025 | 26 | NOTICE of Appearance by Grace Elizabeth Hart on behalf of Amazon.com Services LLC (aty to be noticed) (Hart, Grace) (Entered: 08/21/2025) |
| 08/21/2025 | 27 | MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number ANYEDC-19372556 by Amazon.com Services LLC. (Attachments: # 1 Affidavit of Jason C. Schwartz in Support, # 2 Exhibit A - Certificates of Good Standing, # 3 Proposed Order to admit Jason C. Schwartz Pro Hac Vice) (Schwartz, Jason) (Entered: 08/21/2025) |
| 08/22/2025 | | ORDER granting 27 Motion to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $200 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Joseph A. Marutollo on 8/22/2025. (EG) (Entered: 08/22/2025) |
| 08/29/2025 | 28 | NOTICE of Appearance by Jason Craig Schwartz on behalf of Amazon.com Services LLC (notification declined or already on case) (Schwartz, Jason) (Entered: 08/29/2025) |
| 09/12/2025 | 29 | MOTION to Dismiss for Failure to State a Claim by Amazon.com Services LLC. (Attachments: # 1 Memorandum in Support of Defendant's Motion To Dismiss, # 2 Declaration of Harris M. Mufson in Support of Defendant's Motion To Dismiss, # 3 Exhibit A - Plaintiffs' Second Amended Complaint, # 4 Exhibit B - May 7, 2025 Premotion Conference Transcript, # 5 Exhibit C - New York Department of Labor Opinion Letter 09-170, # 6 Memorandum in Opposition to Defendant's Motion To Dismiss, # 7 Declaration of Leon Greenberg in Opposition to Defendant's Motion To Dismiss, # 8 Memorandum in Support / Reply Memorandum of Law in Support of Defendant's Motion To Dismiss) (Mufson, Harris) (Entered: 09/12/2025) |
| 02/12/2026 | 30 | Letter *alerting the Court to an important decision* by Keanna Kovos, Christopher Monteagudo, Laura Pincay, Boysing Samuel, Jr. (Attachments: # 1 Exhibit Del Rio decision, # 2 Exhibit Plaintiffs' Memorandum of Law in Opposition) (Wisniewski, Robert) (Entered: 02/12/2026) |
| 02/17/2026 | 31 | Letter *in response to Plaintiffs' letter regarding the Connecticut Supreme Court's decision in Del Rio v. Amazon.com Services, Inc. [Dkt. 30]* by Amazon.com Services LLC (Mufson, Harris) (Entered: 02/17/2026) |
| 03/25/2026 | 32 | Letter *Re: Motion Awaiting Decision, New Authority of Possible Interest to the Court* by Shawnice Bettis, Keanna Kovos, Christopher Monteagudo, Laura Pincay, Boysing Samuel, Jr. (Greenberg, Leon) (Entered: 03/25/2026) |
| 03/31/2026 | 33 | Letter *in response to Plaintiffs' letter regarding the Illinois Supreme Court's decision in Johnson v. Amazon.com Services, Inc. [Dkt. 32]* by Amazon.com Services LLC (Mufson, Harris) (Entered: 03/31/2026) |

| | | |
|---|---|---|
| 03/31/2026 | 34 | MEMORANDUM AND ORDER: For the reasons set forth in the attached memorandum and order, Defendant's motion 29 to dismiss is GRANTED, and Plaintiffs' Second Amended Complaint is DISMISSED. The Clerk of Court is respectfully directed to enter judgment and close this case. Ordered by Judge LaShann DeArcy Hall on 3/31/2026. (JAR) (Main Document 34 replaced on 4/7/2026) (CG). (Entered: 03/31/2026) |
| 03/31/2026 | 35 | CLERK'S JUDGMENT that the Defendants motion to dismiss is granted; and that the Plaintiffs Second Amended Complaint is dismissed. Signed by Deputy Clerk, Christina Frunzi, on behalf of Clerk of Court, Brenna B. Mahoney, on 3/31/2026. (CCF) (Entered: 03/31/2026) |
| 04/13/2026 | 36 | MOTION to Vacate 34 Order on Motion to Dismiss for Failure to State a Claim, 35 Clerk's Judgment *and to reconsider the Memorandum and Order Doc. 34* by Shawnice Bettis, Keanna Kovos, Christopher Monteagudo, Laura Pincay, Boysing Samuel, Jr.. (Wisniewski, Robert) (Entered: 04/13/2026) |
| 04/13/2026 | 37 | AFFIDAVIT/DECLARATION in Support re 36 MOTION to Vacate 34 Order on Motion to Dismiss for Failure to State a Claim, 35 Clerk's Judgment *and to reconsider the Memorandum and Order Doc. 34* filed by All Plaintiffs. (Attachments: # 1 Exhibit Memorandum and Order of March 31, 2026, # 2 Exhibit Judgment Closing the Case dated March 31, 2026, # 3 Exhibit NYDOL Opinion Letter of Septeber, 1997, # 4 Exhibit NYDOL Opinion Letter mentioned in the Hynix case) (Wisniewski, Robert) (Entered: 04/14/2026) |
| 04/14/2026 | 38 | MEMORANDUM in Support re 37 Affidavit in Support of Motion,, 34 Order on Motion to Dismiss for Failure to State a Claim, 35 Clerk's Judgment, 36 MOTION to Vacate 34 Order on Motion to Dismiss for Failure to State a Claim, 35 Clerk's Judgment *and to reconsider the Memorandum and Order Doc. 34* filed by All Plaintiffs. (Wisniewski, Robert) (Entered: 04/14/2026) |
| 04/15/2026 | 39 | CERTIFICATE OF SERVICE by Shawnice Bettis, Keanna Kovos, Christopher Monteagudo, Laura Pincay, Boysing Samuel, Jr. re 37 Affidavit in Support of Motion,, 38 Memorandum in Support, 36 MOTION to Vacate 34 Order on Motion to Dismiss for Failure to State a Claim, 35 Clerk's Judgment *and to reconsider the Memorandum and Order Doc. 34* (Wisniewski, Robert) (Entered: 04/15/2026) |
| 04/27/2026 | 40 | NOTICE OF APPEAL as to 35 Clerk's Judgment, 34 Order on Motion to Dismiss for Failure to State a Claim, by Shawnice Bettis, Keanna Kovos, Christopher Monteagudo, Laura Pincay, Boysing Samuel, Jr.. Filing fee $ 605, receipt number ANYEDC-20154160. Appeal Record due by 5/11/2026. (Attachments: # 1 Exhibit Memorandum and Order dated March 31, 2026, # 2 Exhibit Judgment Dismissing the Action, dated March 31, 2026, # 3 Exhibit Docket Sheet) (Wisniewski, Robert) (Entered: 04/27/2026) |
| 04/27/2026 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 40 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/27/2026) |
| 04/27/2026 | 41 | MEMORANDUM in Opposition re 36 MOTION to Vacate 34 Order on Motion to Dismiss for Failure to State a Claim, 35 Clerk's Judgment *and to reconsider the Memorandum and Order Doc. 34* filed by Amazon.com Services LLC. (Mufson, Harris) (Entered: 04/27/2026) |
| 04/28/2026 | | ORDER: The Court is in receipt of Plaintiffs' motion 36 for reconsideration, in which Plaintiffs urge the Court to reconsider its Memorandum and Order 34 , dismissing the claims against Defendant for failure to state a claim. The Court may grant a motion for reconsideration where there is "an intervening change of controlling law, the availability of |

| | | |
|---|---|---|
| | | new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citation and quotation marks omitted). In moving the Court to reconsider its decision, Plaintiffs pointed to no change in the controlling law, new evidence, nor a need to correct clear error or prevent manifest injustice. Accordingly, Plaintiffs' motion 36 for reconsideration is DENIED. Ordered by Judge LaShann DeArcy Hall on 4/28/2026. (CG) (Entered: 04/28/2026) |
| 05/11/2026 | 42 | Subsequent NOTICE OF APPEAL as to Order on Motion to Vacate,,, 35 Clerk's Judgment, 34 Order on Motion to Dismiss for Failure to State a Claim, by Shawnice Bettis, Keanna Kovos, Christopher Monteagudo, Laura Pincay, Boysing Samuel, Jr. . Appeal Record due by 5/28/2026. (Wisniewski, Robert) (Entered: 05/11/2026) |
| 05/12/2026 | | Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 42 Subsequent Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 05/12/2026) |

---


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/23/2026 14:40:41 | | | |
| **PACER Login:** | Todd_Lewis | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cv-07563-LDH-JAM |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

Robert Wisniewski, Esq.
Robert Wisniewski P.C.
17 State Street - Suite 820
New York, New York 10004
(212) 267-2101
rw@rwapc.com
Attorney for Plaintiffs

Leon Greenberg, Esq.
The Law Office of Leon Greenberg
1811 S. Rainbow Blvd. - Suite 210
Las Vegas, Nevada 89145
(702) 383-6085
leongreenberg@overtimelaw.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

SHAWNICE BETTIS, BOYSING SAMUEL, JR., CHRISTOPHER MONTEAGUDO, LAURA PINCAY and KEANNA KOVOS, Individually and on behalf of all others similarly situated,

**Docket No. 24-cv-7563-LDH-JAM**

Plaintiffs,

-against-

AMAZON.COM SERVICES LLC.,
f/k/a AMAZON SERVICES.COM, INC.

Defendant.

----------------------------------------------------X

## SECOND AMENDED COMPLAINT

Plaintiffs Shawnice Bettis ("Bettis"), Boysing Samuel, Jr. ("Samuel"), Christopher Monteagudo ("Monteagudo"), Laura Pincay ("Pincay") and Keanna Kovos ("Kovos") (collectively, the "Named Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys, Robert Wisniewski and Leon Greenberg, as and for their First Amended Complaint against the defendant, Amazon.com Services LLC f/k/a Amazon.com Services, Inc. ("Amazon" or "Defendant") state as follows:

### NATURE OF ACTION

1. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated to recover unpaid wages, unpaid overtime wages, and other actual damages as

well as liquidated damages and reasonable attorneys' fees and costs under the New York Labor Law Articles 6 and 19, and §195, §198, §193, and §663 (the "NYLL"), and various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-143 as well as the New York State common law.

2. The violations of New York Labor Law at issue arose because Defendant, as more fully detailed *infra,* would have Plaintiffs and those similarly situated to Plaintiffs spend time performing labor and services that the New York Labor Law deems "work" for which wages must be paid to such hourly employees and for which Defendant paid no wages whatsoever to Plaintiffs and others similarly situated. No claims are made in this case to recover unpaid wages that would also be owed to the Plaintiffs and others similarly situated under the obligations imposed upon employers by the Fair Labor Standards Acts (29 U.S.C. §§ 201-219) as limited by the Portal to Portal Act (29 U.S.C. §§ 251-262).

3. Defendant also violated the New York Labor Law by failing to indicate on statements it provided to Plaintiffs and those similarly situated that such time had been worked by those persons for which such compensation was owed but had not been paid.

**PARTIES, JURISDICTION AND VENUE**

4. This Court has jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1332, the Class Action Fairness Act, in that Defendant is not a citizen of the State of New York and the amount in controversy exceeds $5,000,000.

5. Venue is proper as per 28 U.S.C. §1391(b) as the acts and violations of law complained of took place within this District and Defendant may be found within the district.

6. Amazon is a Delaware limited liability company with its principal place of

business and headquarters in the State of Washington.

7. Amazon is subject to personal jurisdiction of this Court because at all relevant times it has purposefully availed itself of the privileges of conducting activities in the State of New York and established minimum contacts sufficient to confer jurisdiction. Amazon does business in New York, maintains offices in New York, advertises in New York, markets to New York consumers, employs thousands of New York citizens, including the Named Plaintiffs, in its warehouses located throughout the State of New York and the violations of the law forming the basis of this lawsuit occurred within the State of New York.

8. At all relevant times, the Named Plaintiffs except for Kovos were and still are residents of the State of New York and one of the Named Plaintiffs resides in this District. Kovos is a resident of New Jersey.

9. The Named Plaintiffs are "Employees" within the meaning of the NYLL.

10. Amazon is an "Employer" within the meaning of the NYLL.

## JURY DEMAND

11. Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

### Amazon's Warehouses, Systems and Policies Giving Rise to the Plaintiffs' Claims

12. Currently, and during each of the six years and seven months prior to the filing of this action, Defendant has employed well over six thousand (6,000) persons as hourly compensated "associates" at its JFK8 and DNJ-3 warehouses/fulfillment centers located in Staten Island and the Bronx, respectively, and thousands of additional such similarly situated persons at

numerous other warehouse/fulfillment/delivery centers ("Amazon Warehouses") throughout New York State.

13. Defendant employs these thousands of workers whom it calls "associates" in various positions which are endemic to its business, including those of loaders, packers, pickers, diverters, stowers, line leaders, water spiders, and problem solvers.

14. Named Plaintiff Boysing Samuel, Jr. is a former employee of Defendant who has worked at Amazon Warehouse JFK8 during the years from February 2021 through September 2022 as an "associate" whom Defendant agreed to compensate for his work at a regular hourly rate of between $15.00 and $19.00 an hour.

15. Named Plaintiff Shawnice Bettis is a former employee of Defendant who has worked at Amazon Warehouse JFK8 from approximately August of 2023 through February of 2024 as an "associate" whom Defendant agreed to compensate for her work at a regular hourly rate of between $15.00 and $19.00 an hour.

16. Named Plaintiff Christopher Monteagudo is a former employee of Defendant who has worked at an Amazon Warehouse DNJ-3 located in Bronx, New York, from December of 2019 through July of 2020 whom Defendant agreed to compensate for his work at a regular hourly rate of approximately $17.50 and $19.00 an hour.

17. Named Plaintiff Laura Pincay is a former employee of Defendant who has worked at Amazon Warehouse JFK8 from approximately November or December of 2018 through December of 2024 as an "associate" whom Defendant agreed to compensate for her work at a regular hourly rate of between $15.00 and $19.00 an hour.

18. Named Plaintiff Keanna Kovos is a former employee of Defendant who has

worked at Amazon Warehouse JFK8 during the years from September 19, 2020 through December 25, 2022 as an "associate" whom Defendant agreed to compensate for his work at a regular hourly rate of between $15.00 and $20.00 an hour.

19. The violations of NYLL alleged herein sustained by the Named Plaintiffs and those similarly situated (the "Class Members") involving the non-payment of legally required regular hourly wages, overtime wages and/or other earned but unpaid wages was constant throughout their employment with Defendant occurring in every week of their employment with Amazon except such weeks entirely consisting of vacation or holiday or other non-working time periods. As detailed more fully, *infra*, Amazon has consistently subjected the Named Plaintiffs and the Class Members to a policy whereby certain periods of working time, both at the beginning and the end of each work shift, are not compensated by Amazon in violation of the NYLL. In addition, because the Named Plaintiffs, and many or most Class Members, were regularly scheduled to work, and did work, at least 40 hours a week for Amazon, such wholly uncompensated working time was in the majority of the workweeks at issue also required to be paid at a rate of one and one-half such person's hourly regular rate as required by 12 NYCRR 142-2.2.

20. The violations of NYLL alleged herein sustained by the Named Plaintiffs were common to all of the Class Members who worked at Amazon's warehouses in the State of New York employing persons to perform the same or similar work as performed by the Named Plaintiffs, such Class Members numbering well over 10,000 persons.

21. Defendant is the largest e-commerce provider to retail consumers whereby it sells goods on its website and then delivers them to consumers as quickly as possible.

22. To that end, Defendant has created a network of Amazon Warehouses – fulfillment centers, sortation centers and delivery stations. Generally, workers at fulfillment centers fulfill customers' orders, package them into boxes and sort them for delivery in particular locations. Defendant then sends these packages to sortation centers where workers sort packages to send them to the delivery stations located closer to the consumer, where packages are further sorted for local delivery by drivers employed by Defendant's delivery service partners.

23. Amazon warehouses are very large. Some are the size of a city-block size and may cover the area of several football fields and, as a result, may employ thousands of workers at a single location.

24. Amazon used and uses several electronic security, productivity and time-keeping systems to monitor the activities of the Named Plaintiffs and the Class Members. Each such person is provided with an identification badge containing a magnetic stripe and other electronic information that he or she must use whenever her or she is working at an Amazon warehouse.

25. The Named Plaintiffs and the Class Members must use, or swipe, such badges, or be prepared to do so, to enter the warehouse at which they work before their shift begins and to swipe them after they clock out at the end of their work shift to leave the warehouse. Amazon's security system captures each employee swipe at the time of his or her entry into, and exit from, an Amazon warehouse.

26. Amazon structures its warehouse operations to maximize the productivity of the workers it employs at those operations and the speed at which they process merchandise that is ultimately delivered to Amazon's customers. In furtherance of those goals it very closely monitors the exact time employees clock in and out for work each day and their individual

productivity.

27. In furtherance of its goal of maximizing the productivity of its New York warehouse workers Amazon implemented a 13 point discipline scale that is focused extensively on the productivity of each such worker. Once a warehouse worker accrues 13 disciplinary points on their personnel record on that scale he or she will be terminated.

28. Amazon does and did impose disciplinary points on the personnel records of the Named Plaintiffs and the Class Members if they clocked in to start their work shift at a time more than five minutes after the scheduled start of that shift. Such disciplinary points would also be imposed if such persons accumulated too much of what Amazon deemed to be "time-off task." Activities performed by such persons during the working day that did not involve production work, but were conducted "on the clock" and involved time spent away from such person's work station or otherwise not spent performing production work, was deemed by Amazon to be "time-off task." If Amazon determines a Named Plaintiff or Class Member had spent too much "time-off task" it would and did impose disciplinary points on their personnel record.

29. Defendant uses a centralized electronic system within each Amazon warehouse to monitor employee time Defendant considers as "work." At relevant periods, employee time is transmitted from each Amazon warehouse to Defendant's centralized time-keeping system.

30. The Named Plaintiffs and the Class Members can and did record the time that Amazon considers "work" in two ways. They can do so by using a physical time clock at a location within an Amazon warehouse to clock in at the beginning and end of their shifts and for all unpaid meal break periods. In addition, if they have a cell phone they sometimes can use an app provided by Amazon, called "Amazon A to Z" (the "A to Z app") on their cell phone to

perform such clock in and clock out. But use of the Amazon A to Z app was limited, as sometimes it had problems functioning and it was also designed to only allow its use during certain time periods or only while the user was present at certain locations (such as within an Amazon warehouse).

31. While Amazon diligently monitored whether the Named Plaintiffs and the Class Members clocked in promptly at the scheduled start of their work shifts, imposing disciplinary points for shift start clock ins that were more than five minutes later than the scheduled shift start time, it simultaneously prohibited such persons from clocking in, and accruing compensated working time, more than five minutes prior to the scheduled start of their shift.

32. Amazon paid wages to the Named Plaintiffs and the Class Members only for the time it considered and recorded as working time for such persons in its work timekeeping system. In the event the Named Plaintiffs and the Class Members performed labor and services for Amazon during periods of time that were not considered by Amazon to be working time, they were not recorded in Amazon's work timekeeping system and Amazon did not pay any wages to the Named Plaintiffs and the Class Members for the time expended performing such labor and services.

33. The Named Plaintiffs and the Class Members were required by Amazon to work at their assigned Amazon Warehouse for shifts with specified daily start and end times, typically scheduled to be in excess of 8 or 10 hours in length each workday, with a minimum of four or five of such work days required each week. Amazon also typically required the Named Plaintiffs and the Class Members, as a condition of their employment, to work a schedule dictated by Amazon consisting of at least 40 hours of work each week and more during what

Amazon considered to be its prime season, that is from September through February of each year.

**Amazon's Requirement that the Named Plaintiffs and the Class Members Perform Uncompensated Work at the Start of their Workdays**

34. Except during the Covid-19 period, discussed *infra*, Amazon required the Named Plaintiffs and the Class Members as their first task of each working day to either swipe their badge to gain entry to the warehouse where they worked or be prepared to do so and/or show or be prepared to show their identification as an Amazon employee to security personnel to enter such warehouse.

35. During the period of the Covid-19 epidemic, commencing in 2020 and ending in 2022, Amazon required the Named Plaintiffs Samuel, Monteagudo, Pincay and Kovos, and the Class Members employed during such time period, as their first task of each working day to que up in a single file line, six feet apart, and proceed to the front of that line to reach the warehouse entrance. During that period such single-file line was very long and it typically took 10 to 15 minutes for such persons to reach the front of that line so they could enter the warehouse.

36. During the period of the Covid-19 pandemic, Amazon additionally required the Named Plaintiffs Samuel, Monteagudo, Pincay, Kovos and the Class Members employed during such time period, prior to allowing them to clock in, to submit to a body temperature/fever screening. During that time period such screening process, which involved staying six feet apart from other persons and not proceeding to commence clocking in until that test was completed, was time consuming.

37. Only after entering the Amazon warehouse could the Named Plaintiffs and the Class Members properly, and consistent with Amazon's rules, clock in and commence the

recording of their compensated working time for Amazon for that workday.

38. Amazon instituted and imposed various procedures, policies and circumstances upon the Named Plaintiffs and the Class Members that rendered it either impossible, or infrequent, for such persons to actually clock in, and commence the recording of their compensated working time for Amazon, immediately upon entering the Amazon warehouse where they were working. Those procedures and circumstances included the following:

a. Positioning time clocks a significant distance inside such Amazon warehouse, typically at or near breakrooms or such person's workstation for the day, requiring such persons to spend a significant amount of time walking to the location of such time clocks prior to clocking in. The time it took to travel to such locations inside Amazon's warehouses was often increased by the large number of employees who were present and walking in those areas and changing shifts and going through required turnstiles, thus slowing the pace of such travel to those time clocks, all of which was compounded even more during the period of COVID pandemic when Amazon's employees had to observe social-distancing protocols;

b. Allowing numerous time clocks in the warehouse to fall into disrepair and not repairing them for prolonged periods of time which, for example, on numerous occasions forced Named Plaintiffs, Kovos included, to walk a distance of several football fields from the entrance door to the other end of the JFK8 warehouse, to clock in. The time necessary to travel from one end of the warehouse to another having been compounded by the social

distancing requirements during the Covid-19 pandemic;

c. Requiring such persons secure a work station assignment from a superior prior to walking to that work station location where they would have access to a time clock to clock in;

d. Not allowing use of the A to Z app in a consistent and reliable fashion so that such persons could clock in immediately upon entering the Amazon warehouse where they were working;

e. Not positioning time clocks at the entrance to the Amazon warehouse where such persons were working and making them available to those persons to clock in immediately upon entering the Amazon warehouse where they were working;

f. Imposing policies disciplining such persons if they clocked in more than five minutes after a scheduled shift start while simultaneously prohibiting them from clocking in more than five minutes before a scheduled shift start. That policy coerced such persons into being present inside the Amazon warehouse where they were working during periods of time (more than five minutes before a scheduled shift start) that they would not be compensated for by Amazon.

39. For the foregoing reasons, the amount of uncompensated work time spent by the Named Plaintiffs and the Class Members, from their performance of the first labor or service task required by Amazon each working day until they were actually clocked in by Amazon and compensated for their time (their "Start of Shift" uncompensated working time), was, except for

the Covid-19 epidemic period, between 5 and 10 minutes each such workday. During the Covid-19 epidemic period such amount of uncompensated time was considerably larger and up to 30 minutes each day.

40. Amazon has and at all times had the ability to ensure via electronic means that its record of the working time of the Named Plaintiffs and the Class Members was kept accurately commencing with such persons' first labor or service work task required by Amazon each workday, which task was either complying with Amazon's protocols for entry to a warehouse or undergoing Covid-19 screening. Amazon had the ability to do so through proper use of the A to Z App, if it had worked fully and correctly and Amazon had provided proper equipment to each person to use the same. It also had the ability to do so by using its system of electronic entry/warehouse access recording or other available systems/technologies to record the commencement of the start of each such person's workday. It intentionally failed to do either of those things so it could continue to reap the economic benefit it enjoyed, a reduction in the amount of wages it was otherwise legally required to pay the pursuant to the NYLL to the Named Plaintiffs and the Class Members for their Start of Shift uncompensated working time.

**Amazon's Requirement that the Named Plaintiffs and the Class Members Perform Uncompensated Work at the End of their Workdays**

41. Amazon required the Named Plaintiffs and the Class Members as their last labor or service for Amazon each working day to undergo a security screening before being allowed to leave the Amazon warehouse where they worked (the "Shift-End Security Screening") .

42. The Named Plaintiffs and the Class Members were not allowed to undergo that required Shift-End Security Screening until after they clocked out for the end of their shift,

meaning Amazon would not compensate them for the time they spent undergoing that screening.

43. The Shift-End Security Screening required the Named Plaintiffs and the Class Members line up single-file and walk through the security area (metal detectors) which were placed before the turnstiles at which they swipe out to leave the warehouse.

44. The uncompensated time at the end of the shift for the Named Plaintiffs and the Class Members to leave the warehouse after clocking out and undergoing the Shift-End Security Screening (the "End of Shift" uncompensated working time) was typically between five (5) and ten (10) minutes in length. But during the Covid-19 pandemic, that is from some time in March or April 2020 through some time in late 2022, when employees had to observe social-distancing causing such Shift-End Security Screenings to become more time consuming, that End of Shift uncompensated work was often or typically longer in length and was, on average, between ten (10) and twenty (20) minutes.

45. During certain work shifts the Named Plaintiffs and the Class Members could and would be selected by the security guards for closer inspection and have to spend additional time having their bags or knapsacks examined during the Shift-End Security Screening, as required by Amazon. In those instances such Shift-End Security Screenings would consume an amount of End of Shift uncompensated working time longer than the typical and average amount of such time they would otherwise consume.

46. Amazon could have easily avoided subjecting the Named Plaintiffs and the Class Members to the End of Shift uncompensated working time by placing time clocks after the security screening lines, at the exits to its warehouses, and/or by utilizing other means to clock them out after they had finished such Shift-End Security Screenings. It was well aware it could

do so but intentionally failed to do so to reap the economic benefit it enjoyed, a reduction in the amount of wages it was otherwise legally required to pay the pursuant to the NYLL to the Named Plaintiffs and the Class Members for their End of Shift uncompensated working time.

47. Plaintiffs allege that the uncompensated time they spent performing the foregoing described labor and services required by Amazon during such "End of Shift" and "Start of Shift" time periods had to be compensated pursuant to the NYLL and Amazon violated the NYLL by failing to pay them any wages whatsoever for such time periods, even though plaintiffs make no claim of any entitlement to payment of wages for such periods of time under the obligations imposed upon Amazon by the Fair Labor Standards Acts (29 U.S.C. §§ 201-219, the "FLSA") as limited by the Portal to Portal Act (29 U.S.C. §§ 251-262, the "PTPA"). Plaintiffs maintain they are entitled to payment of such wages pursuant to the NYLL because:

(a) New York, and the NYLL, has never adopted the exclusions from compensable working time imposed upon the FLSA by the later enactment of the PTPA (the "PTPA compensable time exclusion"). The activities engaged in by the plaintiffs during their uncompensated "End of Shift" and "Start of Shift" time periods are "work" within the meaning of the FLSA and were, prior to the enactment of the PTPA in 1947, periods of working time for which an employer was obligated to pay compensation pursuant to the FLSA, consistent with *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 690-91 (1946).

(b) No provision of the NYLL or the Minimum Wage Orders issued thereunder as authorized by NYLL Article 19, §§ 650-659, has ever stated,

either expressly or implicitly, that the NYLL adopts the PTPA compensable time exclusion as a limitation on the obligations the NYLL otherwise imposes on an employer to pay wages. Nor does the NYLL itself contain any language or terms analogous to those of the PTPA and excepting activities engaged in by employees during the preliminary or postliminary periods of a workday from the wage payment obligations of the NYLL. Such lack of express or implicit language anywhere in the NYLL confirms that it does not adopt the PTPA compensable time exclusion. That conclusion is confirmed by the fact that NYLL Article 19, §§ 650-659, New York's minimum wage law, was not enacted until 1960, well after the enactment of the FLSA in 1938, the PTPA in 1947, and the law as to what constitutes compensable working time for minimum wage and overtime pay purposes, in the absence of any PTPA compensable time exclusion, was established by *Anderson v. Mt. Clemens Pottery Co.* in 1946.

(c) That the NYLL has not, and does not, limit an employer's obligation to pay wages by adopting the PTPA compensable time exclusion, is demonstrated by the express language of the Minimum Wage Order set forth at 12 NYCRR 142-2.1(b) requiring payment of wages for all time an employee "....is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the

employee." That obligation conflicts with the PTPA compensable time exclusion exempting an employer from its compensation obligations under the FLSA for certain periods of time an employee spends "traveling" that may be "part of the duties" of such employee but is performed during the preliminary or postliminary periods of a workday.

(d) That the NYLL has not, and does not, limit an employer's obligation to pay wages by adopting the PTPA compensable time exclusion, is also confirmed by NYLL Article 6 governing the obligations of employers to pay wages. NYLL § 190(1) defines "Wages" as "...the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." NYLL § 198 provides statutory remedies, including an award of double any unpaid wage amount and attorney's fees, to an employee who is not paid the wages required by NYLL Article 6, and further provides at NYLL § 198(3) that "[t]there is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements." Such language in both NYLL § 190 and § 198 further confirms that the PTPA compensable time exclusion has not been adopted by the NYLL. Pursuant to NYLL § 190 "wages" are "earnings" owed to an employee for "labor or services rendered" to an employer and NYLL § 198 requires payment of such wages without "exception" when the failure to pay such wages was "unauthorized." The NYLL, unlike the PTPA, does *not* grant

employers authorization *not* to pay wages for the labor or services rendered by employees during preliminary or postliminary periods of a workday. As a result, an employee performing "labor or services" for an employer must be compensated for all of the time spent doing so, as required by NYLL §190 and §198, notwithstanding that such preliminary or postliminary workday time expenditures may be rendered non-compensable under the FLSA by application of the PTPA compensable time exclusion.

**Amazon's Failure to Provide Correct Wage Statements**

48. Named Plaintiffs, including the Class Members, were also not given correct wage statements that would reflect all time the NYLL recognizes as work as set forth *supra*.

49. In failing to provide proper wage statements, Amazon has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Amazon's failure to provide correct wage statements trivializes the importance of these documents in protecting Plaintiffs' and the Class Members' interest in ensuring proper pay.

50. Despite Amazon's conduct, there is a reason why the New York State legislature concluded that enacting wage statement provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Deprivation of such correct wage statements necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

51. Here, Amazon's failure goes beyond generating a risk of harm to Plaintiffs and the

Class Members. Amazon's conduct actually harmed Plaintiffs and all others similarly situated. Amazon's failure to provide correct wage statements listing all hours actually worked by its employees under the NYLL, deprived employees of the ability to contest Amazon's calculations, allowed Amazon to hide its wrongdoing, and necessitated the current litigation to vindicate the rights of Plaintiffs and Class Members. This conduct ensured Amazon's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.

52. Due to Amazon's failure to provide legally mandated notices such as wage statements and wage notices, Amazon was able to hide its wrongdoing from employees, and continue to attempt to hide its wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiffs and all others similarly situated.

**Amazon's Failure to Pay Proper Wages was Willful**

53. Amazon as an employer has certain statutory obligations towards its employees, including paying employees for all of the time the NYLL considers as work, paying the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week, and making, keeping, and preserving correct payroll records.

54. Amazon was aware of its requirement to pay Plaintiffs and the Class Members for each hour worked, and to pay the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week and was certainly aware of the need to make, keep and preserve correct payroll records

55. Nevertheless, Amazon failed to pay Named Plaintiffs and the Class Members

proper wages, including overtime wages.

56. Amazon knowingly and willfully operated its business with a conscious policy of wage violations which included wage theft and issuing incorrect wage statements in violation of the NYLL.

57. As such, the various violations of the NYLL which are alleged herein were committed intentionally and willfully by Amazon. At a minimum, Amazon failed to take the necessary steps to ascertain its duties with respect to the payment of wages to their employees and the issuance of correct wage statements.

**CLASS ACTION ALLEGATIONS**

58. The claims made in this case are brought on a class action basis on behalf of the Named Plaintiffs and the Class Members pursuant to Fed. R. Civ. P. §23, and more specifically, such Class Members are all persons employed at Amazon Warehouses in the State of New York within the applicable statute of limitations period. More specifically, it is brought on behalf of all such persons employed by Defendant on an hourly compensation basis within the last six years and seven months who performed End of Shift and/or Start of Shift uncompensated work in an Amazon warehouse as alleged herein.

59. The aforesaid alleged policies and practices of Amazon at its warehouses in the State of New York, whereby Amazon secured on a regular and continuing basis End of Shift and/or Start of Shift uncompensated work from the Class Members, were uniform and consistent among all of such warehouses and not just those that the Named Plaintiffs worked in.

60. The Class Members are all entitled to seek a common form of relief against Amazon as a result of its common policy of securing End of Shift and/or Start of Shift

uncompensated work from the Class Members, to wit, damages for Defendant 's violations of New York's Labor Law as more specifically alleged herein. The class may include one or more sub-classes if the Court finds that more manageable.

61. The Named Plaintiffs are informed and believe, and based thereon allege that there are over 10,000 putative class action members and the joinder of such persons individually in any action, or their pursuit of individual actions to seek a remedy for their common injury, would be impractical, and therefore such persons are numerous enough in amount to warrant the granting of class action certification pursuant to Fed. R. Civ. P. §23.

62. There is a well-defined community of interest in the questions of law and fact affecting the class as a whole. Proof of a common or single set of facts will establish the right of each member of the class to recover. These common questions of law and fact predominate over questions that affect only individual class members. The Named Plaintiffs' claims are typical of those of the class.

63. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Due to the typicality of the class members' claims, the interests of judicial economy will be best served by adjudication of this lawsuit as a class action. This type of case is uniquely well-suited for class treatment since Defendant's practices were uniform and the burden is on Defendant, as an employer, to establish that its method for compensating the class members and providing them with statements complies with the requirements of the New York Labor Law.

64. The Named Plaintiffs will fairly and adequately represent the interests of the class and have no interests that conflict with or are antagonistic to the interests of the class and have

retained to represent them competent counsel experienced in the prosecution of class action cases and will thus be able to appropriately prosecute this case on behalf of the class.

65. Named Plaintiffs and their counsel are aware of their fiduciary responsibilities to the members of the proposed class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for all members of the proposed class.

66. There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for the defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. In addition, the class members' individual claims are small in amount and they have no substantial ability to vindicate their rights, and secure the assistance of competent counsel to do so, except by the prosecution of a class action case.

67. Named Plaintiffs bring the First and Second Claim for relief under Fed. R. Civ. P. §23 on behalf of themselves and the Class Members.

**FIRST CLAIM FOR RELIEF**
**Unpaid Wages and Unpaid Overtime under NYLL §§ 198 and 663**

68. This First Claim for Relief is brought on behalf of the Named Plaintiffs and the Class Members pursuant to New York Labor Law Sections 198 and 663, providing, *inter alia,* that persons employed in New York may seek a judgment for the monetary relief specified therein against their employer when such employer has paid those employees an amount less than the wage to which he or she is entitled to under the provisions of the NYLL.

69. The period of time the Named Plaintiffs and the Class Members spent each workday from the beginning of the first work related task required by Amazon each such day, the

first labor or service they rendered to Amazon as required by Amazon, to the last work related task and labor or service Amazon required them to perform, excluding such time between those two events that was consumed in a *bona fide* meal break period as provided for by 12 NYCRR 142-2.1(b), was working time Amazon was required to pay compensation to such persons for pursuant to the applicable provisions of the NYLL.

70. As alleged aforesaid, the Named Plaintiffs and the Class Members commenced the beginning of each workday for Amazon by performing certain required activities, labor, and services, including but not limited to swiping a badge to enter a warehouse or presenting their identification or being prepared to do so or queing up at the end of a line during the Covid-19 pandemic period so they could perform those actions, all of such activities being performed before the time (their start of shift clock in recognized by Amazon) that Amazon deemed the start of their workday. Such Start of Shift uncompensated working time was, in fact, work time Amazon was required to compensate the Named Plaintiffs and the Class members for pursuant to the NYLL.

71. As alleged aforesaid, the Named Plaintiffs and the Class Members did not end each workday for Amazon until they completed Amazon's required Shift End Security Screening and were free to leave the Amazon warehouse. Yet Amazon deemed the conclusion of their workday to have occurred earlier each such shift, at the time Amazon forced them to clock out on Amazon's work time keeping system and before that Shift End Security Screening was concluded and Amazon did not compensate the Named Plaintiffs and the Class Members for the time consumed after such clock out and until that Shift End Security Screening was concluded. Such End of Shift uncompensated working time involved labor and services performed by such

persons as required by Amazon and was, in fact, work time Amazon was required to compensate the Named Plaintiffs and the Class Members for pursuant to the NYLL.

72. Amazon's policy of not recognizing that the End of Shift and Start of Shift uncompensated working time as time worked by the Named Plaintiffs and the Class Members that Amazon was required to treat as working time and pay wages for under the NYLL had no proper or good faith basis. The relevant provisions of the NYLL, specifically 12 NYCRR 142-2.1(b), requires that the minimum wage specified by any applicable New York Wage Order be paid by an employer, such as Amazon, for all periods of time it required employees be at their place of employment and be available for work and/or engage in activities required by it and/or time during which such employees were required by their employer to engage in traveling as part of their duties as an employee.

73. The Start of Shift and End of Shift uncompensated working time of the Named Plaintiffs and the Class Members was also working time for which Amazon was required to pay wages pursuant to well established, and controlling, principles and precedents. The Named Plaintiffs and the Class Members received no benefit from the activities Amazon required they engage in during those time periods and they were unable to use those periods of time for their own benefit as they chose. The activities Amazon forced them to engage in during those time periods solely benefitted Amazon, by ensuring the monitoring of its employees by Amazon's security and productivity systems, reducing potential thefts, reducing the potential spread of Covid-19 in its facilities or through products it shipped, and in allowing Amazon to avoid the expense of installing more time clocks and/or security screening lines and/or Covid-19 test screening stations. Such activities are, as a matter of law, "work" for purposes of the NYLL

involving periods for which Amazon must pay the Plaintiffs and the Class Members wages pursuant to the NYLL for the reasons specified in paragraph 47, *supra,* though Amazon paid no wages whatsoever to those persons for the time consumed in those activities.

74. Because the Named Plaintiffs and Class Members during most weeks worked for Amazon for at least 40 hours, excluding their End of Shift and Start of Shift uncompensated working time, such uncompensated time should have been paid to them by Amazon at applicable overtime (time and one-half) wage rates pursuant to 12 NYCRR 142-2.2.

75. In the event a Named Plaintiff or Class Member did not work at least 40 hours a week for Amazon, during such weeks their End of Shift and Start of Shift uncompensated working time should have been paid to them at their regular hourly rate otherwise paid to them for their work or at the hourly rates specified in 12 NYCRR 142-2.1(b).

76. Defendant, despite its obligation to pay such wages to the Named Plaintiffs and the Class members for their End of Shift and Start of Shift uncompensated working time it paid those persons no wages whatsoever for that working time.

77. Defendant's aforesaid failures to pay the Named Plaintiffs and the Class Members the full wages they were owed, as alleged *supra*, for the work they performed for Defendant was willful and not based upon any good faith belief by Defendant that such wages were not owed by Defendant to those persons.

78. As detailed, *supra,* Defendant has failed to pay Named Plaintiffs and the Class Members the wages owed to them for their Start of Shift and End of Shift uncompensated working time in violation of the New York Labor Law and the Wage Orders issued thereunder, including, but not limited to, NYLL Sec. 198, Sec. 652, 12 NYCRR 142-2.2 and 12 NYCRR

142-2.1(b).

79. As a result of Defendant's violations of New York Labor Law, the Named Plaintiffs, on behalf of themselves and the Class Members, seek all relief that is available to them pursuant to New York Labor Law Sections 198 and 663 to remedy Defendant's failure to pay them the wages it was required to pay them under New York Law, including:

(A) A judgment for all wages they are owed that Amazon has failed to pay them, along with an award of interest accrued on such amounts of unpaid wages from when they were due pursuant to New York Labor Law § 198 and § 663;

(B) A judgment equal to an additional 100% of the unpaid wages that Amazon owes them as a liquidated damages amount as provided for by New York Labor Law § 198(1-a) and § 663(1);

(C) A judgment for their attorneys' fees and all other costs and monetary relief available to them as a result of Amazon's failure to pay such wages owed to them pursuant to New York law as provided for by New York Labor Law § 198 and § 663(1).

**SECOND CLAIM FOR RELIEF**
**Violations of NYLL § 195(3) – Failure to Furnish Correct Wage Statements**

80. The Named Plaintiffs repeat and reallege each and every allegation previously set forth.

81. The Named Plaintiffs bring this second claim for relief on their own behalf and on behalf of the Class Members pursuant to New York Labor Law Section 198(1-d), providing, *inter alia,* that persons employed in New York who are not provided with the statements

required by New York Labor Law Section 195(3), may bring a civil action for damages for $250.00 for each day that such violation has occurred for an amount that does not exceed $5,000 along with an award of costs, attorney's fees, and injunctive and declaratory relief.

82. New York Labor Law Section 195(3) imposed a duty upon Defendant to furnish the Named Plaintiffs and the Class Members with every payment of their wages a statement that included, among other things, their regular hourly rate or rates of pay, their overtime rate or rates of pay, the number of regular hours they worked, and the number of overtime hours that they worked.

83. While Defendant provided certain statements to the Named Plaintiffs and the Class Members with every payment of wages, those statements did not comply with the requirements of New York Labor Law Section 195(3). Specifically, these statements did not include full and accurate statements of the amount of regular hours and overtime hours worked by the Named Plaintiffs and the Class Members as such statements did not include, as working time, the Start of Shift and End of Shift uncompensated working time of those persons.

84. That failure arose because certain amounts of time worked by those persons, as alleged in the First Claim for Relief, was not recorded on or included in those statements' recitals of the amount of regular hours and overtime hours worked by such persons for Defendant.

85. As a result of Defendant's aforesaid violations of New York Labor Law Section 195(3) the Named Plaintiffs, on behalf of themselves and the Class Members, seek all relief that is available to them pursuant to New York Labor Law Section 198 to remedy such violations, including:

(A) A judgment of $250 for each Named Plaintiff and Class Member, up to a maximum of $5,000 for each such person, for each day that such New York Labor Law Section 195(3) violation has existed;

(B) Appropriate injunctive and declaratory relief that will ensure Amazon does not continue in the future to violated New York Labor Law Section 195(3), in the form of an injunction requiring it to include on the statements it furnishes to its employees the working time it has failed to include on such statements, the nature of such working time being specified in the First Claim for Relief herein;

(C) A judgment for their attorneys' fees and all other costs

[no more text on this page]

interest and monetary relief available to then as a result of Amazon's violation of New York Labor Law Section 195(3) as provided for by New York Labor Law § 198.

Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
May 30, 2025

Respectfully submitted,

*/s/Robert Wisniewski*
Robert Wisniewski, Esq.
Robert Wisniewski P.C.
17 State Street - Suite 820
New York, NY 10004
(212) 267-2101
rw@rwapc.com
Attorney for Plaintiffs

*/s/ Leon Greenberg*
Leon Greenberg, Esq.
The Law Office of Leon Greenberg
Admitted in New York
1811 S. Rainbow Blvd. - Suite 210
Las Vegas, Nevada 89145
(702) 383-6085
leongreenberg@overtimelaw.com

Attorney for Plaintiffs

Robert Wisniewski, Esq.
Robert Wisniewski P.C.
17 State Street - Suite 820
New York, New York 10004
(212) 267-2101
rw@rwapc.com
Attorney for Plaintiffs

Leon Greenberg, Esq.
The Law Office of Leon Greenberg
1811 S. Rainbow Blvd. - Suite 210
Las Vegas, Nevada 89145
(702) 383-6085
leongreenberg@overtimelaw.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

SHAWNICE BETTIS, BOYSING SAMUEL, JR., CHRISTOPHER MONTEAGUDO, LAURA PINCAY and KEANNA KOVOS, Individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

AMAZON.COM SERVICES LLC., f/k/a AMAZON SERVICES.COM, INC.

Defendant.

---------------------------------------------------------X

**Docket No. 24-cv-7563-LDH-JAM**

**DECLARATION IN OPPOSITION TO MOTION TO DISMISS**

Leon Greenberg, an attorney duly admitted to practice law in the State of New York and a member of the bar of this Court, hereby affirms, under penalty of perjury, that:

1. I am one of the attorneys representing the plaintiffs in this case.

2. I offer this declaration to authenticate the correctness, source, and accuracy of the various Exhibits annexed to this declaration and referenced in the plaintiffs' memorandum of law in opposition to the defendant's motion to dismiss.

3. Annexed hereto at Ex. "1" is a copy of the New York State Department of Labor Division of Labor Standards Investigator's Manual of Interpretations issued December, 1972.

This 24 page document is on file with the New York State Court of Appeals and was submitted as part of the Addendum of *Amicus Curie* New York State Department of Labor in the case of *Andryeyeva v. New York Health Care, Inc.* No. APL-2018-00038, Opinion at *Andryeyeva v. New York Health Care, Inc.* 124 N.E.3d 162 (N.Y. 2019). This document was obtained from that public record and Exhibit "1" is a true and accurate copy of the same in that public record.

3. Annexed hereto at Ex. "2" is a true and accurate copy of the Laws of New York, 1960, containing the original text of New York Labor Law Chapter 619 as enacted in 1960, consisting of 14 pages and obtained by the plaintiffs' counsel from the Heinonline service at the Brooklyn Law School law library.

4. Annexed hereto at Ex. "3" is a copy of 43 pages excerpted from the Thirteenth Official Supplement to the Official Compilation of Codes, Rules and Regulations of the State of New York, January 1, 1957 to December 31, 1958, Inclusive, Volume 1, 1961. These pages, setting forth various New York Wage Orders in existence during such period, were part of the Addendum of *Amicus Curie* New York State Department of Labor in the foreging *Andryeyeva* case. This document was obtained from that case's public record and Exhibit "3" is a true and accurate copy of the same in that public record.

5. Annexed hereto at Ex. "4" is a copy of 12 pages setting forth 12 NYCCR Part 142, the New York Miscellaneous Wage Order, as published and effective as of October 31, 1968. This is a true and accurate copy of same which was obtained by plaintiffs' counsel from the Queens County Supreme Court Law Library.

6. Annexed hereto at Ex. "5" is a copy of 4 pages setting forth the New York State Register Volume VIII, Issue 39, of October 1, 1986. This is a true and accurate copy of same

which was obtained by plaintiffs' counsel from the New York Law Institute Library located at 120 Broadway, New York, New York.

7. Annexed hereto at Ex. "6" is a copy of 25 pages consisting of the Memorandum of Law of plaintiffs in opposition to defendant's motion to dismiss, filed in the case of *Chase v. Madicorp,* United States District Court, Northern District of New York, 23-cv-0436, Document 12-4, filed on June 30, 2023, subsequent decision at 2024 WL 841266. This is a true and accurate copy of same which was obtained by plaintiffs' counsel from that Court's PACER document system.

8. Annexed hereto at Ex. "7" is a copy of 3 pages consisting of the January 15, 2009, Opinion Letter RO-09-0170, of New York State Department of Labor from the case of *Beecher v. TWC Administration, LLC,* United States District Court, Western District of New York, 15-CV-00154, Ex. "G" of Document 67-10 filed therein. This is a true and accurate copy of same which was obtained by plaintiffs' counsel from that Court's PACER document system.

I have read the foregoing and affirm under penalty of perjury that the same is true and correct.

Affirmed this 29th Day of August, 2025

/s/ *Leon Greenberg*
Leon Greenberg, Esq.

# EXHIBIT "1"

EXHIBIT "1"

NEW YORK STATE DEPARTMENT OF LABOR

DIVISION OF LABOR STANDARDS

# INVESTIGATOR'S MANUAL

# OF

# INTERPRETATIONS

MINIMUM WAGE ORDER FOR THE MISCELLANEOUS INDUSTRIES AND OCCUPATIONS
(OTHER THAN NON-PROFITMAKING INSTITUTIONS)

PART 142 OF OFFICIAL COMPILATION OF CODES, RULES AND REGULATIONS

EFFECTIVE JULY 1, 1970

(ISSUED DECEMBER, 1972 WITH UPDATED MATERIAL)

## INTRODUCTION

A 1970 legislative amendment to the New York State Minimum Wage Act increased the minimum wage rate from $1.60 an hour to $1.85 an hour effective July 1, 1970. The amendment also provided for proportionate increases in all other wage order rates and allowances.

Listed below are the rates and allowances of the Minimum Wage Order for Miscellaneous Industries and Occupations, Part 142 of Title 12 of the Official Compilation of Codes, Rules and Regulations effective January 1, 1967 and the rates and allowances in the new order effective July 1, 1970, for other than non-profitmaking institutions.

| | January 1, 1967 | | | July 1, 1970 | |
|---|---|---|---|---|---|
| Basic Hourly Rate | 1.50 per hour (1/1/67)<br>1.60 per hour (2/1/68) | | | $1.85 an hour | |
| | | Non-res | Res. | | |
| Overtime Rate | $2.25 (1/1/67) | 44 hrs | 48 hrs | | |
| | 2.40 (2/1/68) | 42 hrs | 46 hrs | Non-Res. | Res. |
| | " (2/1/69) | 40 hrs | 44 hrs | 2.77 1/2 - 40 hrs | 44 hrs |
| Tip Allowance | 20¢ and 30¢ (1/1/67)<br>25¢ and 40¢ (2/1/68) | | | 30¢ and 45¢ | |
| Meal Allowance | 55¢ per meal | | | 65¢ per meal | |
| Lodging Allowance | 65¢ per day<br>Apt - $1.30 per day | | | 75¢ per day<br>Apt - $1.50 per day | |
| Uniform Maintenance Rate | | | | | |
| More than 30 hours | $2.00 per week | | | $2.30 per week | |
| 21-30 hours | $1.50 per week | | | $1.75 per week | |
| 20 hours or less | $1.00 per week | | | $1.15 per week | |
| Youth Rate | 25¢ per hour less | | | 30¢ per hour less | |
| Executive and Administrative Exemption | $120 per week | | | $138.75 per week | |

## SUB-PART 142-1 COVERAGE

The minimum wage order for Miscellaneous Industries and Occupations applies to all employees not covered by another wage order and not exempted by statute. It applies to all industries and establishments not covered by another wage order. (Note also, that employees who are covered under the Federal Fair Labor Standards Act are also fully covered under the applicable State wage orders).

Listed below are some of the industries covered by the Miscellaneous wage order - although not necessarily included in our regular inspection program.

- Miscellaneous Personal Services
  - proprietary hospitals and nursing homes
  - nursery schools and day camps
  - barber shops
  - Shoe repair and shoe shine parlors
  - parking lots, garages, car wash
  - funeral parlors
  - garment alteration and repair
  - custom made shops
  - tuxedo and dress for hire
  - car rentals
  - medical and dental labs
  - offices of physicians, dentists, chiropractors, optometrists, etc.
- Miscellaneous Business Services
  - detective and guard agencies
  - employment agencies
  - temporary help agencies
  - legal and accounting offices
  - addressing and mailing services
  - messenger service
  - photostat and duplicating services
  - commercial art
  - trucking and delivery
  - taxicab services
- Finance and Insurance
- Manufacturing
- Mining, construction, public utilities
- Newspaper, radio, television, publishing, communications, etc.

Some occupations are covered by the Miscellaneous order because they have been excluded from other wage order coverage, either by specific provision in the other wage order, or by administrative decision. For example, all employees of a day camp - food service, amusement, etc. - administratively are to be covered under the Miscellaneous order. All employees of a bungalow colony - maintenance, lifeguards, etc. - are to be covered under the Miscellaneous order. Also, all employees of detective and guard agencies and temporary help agencies will be covered under the Miscellaneous Order on a general basis, subject to review in specific instances, even through technically there could be coverage under another order or under several orders during a single week. Covered by the Miscellaneous order by virture of specific exemptions from other orders are the following:

Excluded from Amusement and Recreation Order

Summer theatre apprentice actors (covered by Miscellaneous Wage Order only for time spent at non-professional work)

Rolling Chair pushers

Excluded from Beauty Service Order

Barbers, manicurists and other workers in barber shops which perform services primarily for men

Excluded from Building Service Order

Building trades contractors engaged exclusively in the field of construction.

Employees of an owner or lessee of a building occupying the entire building for his own use, if they work exclusively in that building. (Coverage under other wage orders may be possible in some instances).

Excluded from Laundry-Cleaning & Dyeing Order

Cleaning, dyeing or processing occupations incidental to the manufacture of new garments or second hand material processed for resale

Excluded from Hotel Industry Order

Employees in establishments in which lodging accommodation is not available to the public or to members or guests of members but is incidental to instruction, medical care, religious observance or to the care of handicapped or destitute persons or other public charges.

Excluded from Restaurant Order

Employees in eating and drinking places operated by establishments where the service of food or beverage is not available to the public but is incidental to instruction, medical care, religious observance, or the care of handicapped or destitute persons or other charges. (Coverage under the Miscellaneous Order also applies to outside contractors which provide such services in non-profit educational institutions. (Legal Decision)

## MINIMUM WAGE RATES AND ALLOWANCES

This wage order calls for a basic hourly rate, an overtime rate, and a uniform maintenance rate. It has no provision for daily call-in, part-time, weekly, spread of hours, or split shift rates.

### 142-2.1 Basic Hourly Rate

On and after July 1, 1970 - $1.85

"Working Time" defined in this sub-part is discussed at the end of the MINIMUM WAGE RATES AND ALLOWANCES section.

### 142-2.2 Overtime Hourly Rate

The overtime rate is one and one half times the basic minimum hourly rate before allowances for meals and lodging but after allowance, if any, for tips. It is applied for working time after 40 hours in a week for non-residential employees, and after 44 hours in a week for residential employees.

Example: A non-residential, non-tipped employee works six days, 9:00 A.M. to 5:30 P.M. with one hour meal period, for a total of 45 hours. The minimum wage is computed as follows:

| | |
|---|---|
| 40 hours x $1.85 = | $74.00 |
| 5 hours x 2.77½= | 13.88 |
| | $87.88 |

For examples of the overtime rate where allowances are part of the minimum wage, see "Allowances" section which follows.

### 142-2.3 Allowances

(a) Allowances for Meals, Lodging and Utilities

Meals - Meals furnished by an employer to his employees may be considered part of the minimum wage but shall be valued at not more than 65¢ per meal. Although not defined in the wage order, a "meal" shall provide adequate portions of a variety of wholesome foods. Meals shall be deemed to be furnished to an employee when customarily eaten by the employee. The mere availability of the meals is not a sufficient basis in itself to permit the employer an allowance for meals. However, where an employee misses, on occasion, a customarily eaten meal, the employer may be granted the allowance for the missed meal.

Where members of an employee's family receive meals, the 65¢ per meal allowance for such meals will administratively also be permitted as part of the minimum wage.

Lodging - Lodging furnished by an employer to an employee may be considered part of the minimum wage but shall be valued at not more than 75¢ per day.

"Lodging" means living accommodations which meet generally accepted standards of adequacy and sanitation. The mere availability of the lodging accommodation in itself shall not be the criteria for granting of an allowance. The lodging accommodation must be actually used by the employee. Residential employees generally live on the premises of the employer for a full week. Where the employee has the exclusive use of the lodging accommodation for the full week, lodging allowance may be permitted for 7 days.

The value of an apartment and utilities furnished an employee shall be $1.50 per day, or the value of prevailing rentals in the community for similar apartments, whichever is lower. No "apartment" allowance may be granted unless it contains cooking and refrigeration facilities. In the case of an apartment furnished an employee and occupied by the employee and his family, the allowance shall be $1.50 per day for each occupant, but the total allowance shall not exceed the rental value prevailing in the locality for comparable apartments.

(b) Allowances for Tips

Tips may be considered a part of the minimum wage if the particular occupation is one in which tips are usually given (barbers, bootblacks, etc.); there is substantial evidence that the employee received in tips at least the amount of the allowance claimed (e.g. statement signed by employee); and the allowance is recorded on a weekly basis in the payroll records.

Allowances for tips shall be:

30¢ an hour - where weekly average of tips is between 30¢ through 44¢ an hour
45¢ an hour - where weekly average of tips is 45¢ per hour or more.

No allowance for tips shall be permitted for an employee whose weekly average of tips is less than 30¢ an hour. Note that under this order tips are averaged on a weekly basis, as distinguished from some wage orders where the tip allowance is not permitted on nonservice days.

Examples:

A non-residential, non-tipped, employee works six days, 45 hours a week. He receives one meal a day. The minimum wage is:

| | | |
|---|---|---|
| 40 hours x $1.85 | = | $74.00 |
| 5 hours x 2.77½ | = | 13.88 |
| | | $87.88 |
| Meals - 6 x 65¢ | = | 3.90 |
| S.M.W. | | $83.98 |

A parking lot attendant, working 54 hours a week, earns an average of $50 a week in tips. He receives six meals a week. (Note that no matter how high tip earnings may be, allowance may not exceed 45¢ an hour. Applicable basic rate is $1.85 less 45¢ or $1.40)

| | | |
|---|---|---|
| 40 hours x $1.40 | = | $56.00 |
| 14 hours x $2.10 | = | 29.40 |
| | | $85.40 |
| Meals - 6 x 65¢ | = | 3.90 |
| S.M.W. | | $81.50 |

An attendant at a private nursing home works six days, 48 hours a week. He receives lodging and three meals a day for the entire week. He earns an average of $10.00 a week in tips. (Note that no tip allowance may be granted where tips do not average at least 30¢ an hour).

| | | |
|---|---|---|
| 44 hours x $1.85 | = | $81.40 |
| 4 hours x $2.77½ | = | 11.10 |
| | | $92.50 |

| | | |
|---|---|---|
| Meals - 21 x 65¢ = $13.65 | | |
| Lodg. 7 x 75¢ = 5.25 | | |
| Total allowances | | 18.90 |
| | | $73.60 |

Appropriation of Tips - Under Section 196-d of the Labor Law, no employer or his agent may demand or accept, directly or indirectly, any part of the gratuities received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for any employee. See the Tip Appropriation section in the Restaurant Manual for further details of Departmental guidelines relating to this subject.

(c) Required Uniforms

No allowance for the supply, maintenance or laundering of required uniforms shall be permitted as part of the minimum wage. Where an employee purchases a required uniform he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages. Where the employer fails to launder or maintain a required uniform for any employee, he shall pay such employee $2.30 per week if the employee works more than 30 hours weekly, or $1.75 per week for more than 20 to 30 hours per week, or $1.15 per week for 20 hours or less per week, in addition to the minimum wage otherwise due the employee.

Example: a guard maintains a required uniform which his employer has provided. He works 48 hours a week.

| | | |
|---|---|---|
| 40 hours x $1.85 | = | $74.00 |
| 8 hours x $2.77½ | = | 22.20 |
| | | $96.20 |
| Uniform Maint. | | 2.30 |
| Minimum Wage | | $98.50 |

In accordance with our new policy on required uniforms as outlined in memo to supervisors dated May 25, 1971, employers are responsible for the cost and maintenance of required uniforms for all employees, even where such costs if borne by the employee would not depress the minimum wage. Deductions from wages for the cost or maintenance of required uniforms, or charges for such a purpose in a separate transaction are deemed to be in violation of Section 193 of the Labor Law.

If a uniform is not required either by the employer or by law or regulation, the employer has no responsibility for its supply, or maintenance.

<u>Working Time</u>

Section 142-2.1 (b) of the wage order requires that minimum wages be paid for "time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee."

<u>Example</u>:

Employee reports for work as instructed at 9:00 A.M. No work is provided but he is told to wait. At 10:00 A.M. he is assigned to work. Employee must be paid for the hour from 9 to 10 because he was required to be available for work. During that hour he was "on call".

In othersituations, it will be necessary to distinguish between "on call" and "subject to call" time. In general, when an employee is subject to call, only the hours actually worked are considered to be working time; when an employee is on call, the total hours of work plus required waiting time are considered working time. More specifically --

<u>On call</u> time is that time during which employees are required to remain at the prescribed workroom or workplace, awaiting the need for the immediate performance of their assigned duties. They are considered to be working all the hours that they are confined to the workplace.

<u>Subject to call</u> time is that time during which employees are permitted to leave the work room or workplace between work assignments to engage in personal pursuits and activities. In some cases, arrangements are made for employees to be available for assignments by leaving word as to where they can be reached. Sometimes, they may be restricted to a specified area, to be reachable by telephone or otherwise, to report for the work assignment within 15 to 30 minutes, etc. For such persons, working time starts when they are actually ordered to a specific assignment.

<u>Example</u>:

An ambulance driver for a proprietary hospital works from 6 A.M. to 3 P.M. with one hour for lunch. From 3 P.M. to 7 P.M. he is free to be anywhere on hospital grounds or he may leave the grounds if he can be reached and become available within 30 minutes. From 7 P.M. to 9 P.M. he is required to be available in the emergency room to answer emergency calls.

Working time is as follows:

| | |
|---|---|
| From 6 A.M. to 3 P.M. (1 hour lunch) | 8 hours |
| From 3 P.M. to 7 P.M. (Subject to call time) Working time only if called upon and only for actual time spent working. If not called upon | 0 hours |
| From 7 P.M. to 9 P.M. (on call time) | 2 hours |
| Total working time | 10 hours, |

plus any time actually worked during "subject to call time".

The above distinctions have particular significance with regard to a residential employee. The wage order provides that "a residential employee--one who lives on the premises of the employer--shall not be deemed to be permitted to work or required to be available for work: (a) during the <u>normal sleeping hours</u> solely because he is required to be on call during such hours, and (b) at any other time when he is <u>free to leave</u> the place of employment."

<u>Normal sleeping hours</u> shall be presumed to be 8 hours a day. Where a variance from 8 hours is claimed, any reasonable agreement of the parties shall be accepted.

<u>Free to leave</u> is that period of time when an employee may engage in private pursuits such as meal periods, shopping, or any other period of complete freedom from his duties, when he may leave the premises for purposes of his own. For this purpose, "premises" is construed to be that place or area in which the employee is required to perform his duties. As shown above, it does not necessarily mean the entire confines of the establishment.

<u>Example</u>:

A resident employee in an undertaking parlor does porter work from 8 A.M. to 5 P.M. with one hour for lunch. From 5 P.M. to 8 P.M. he is free to leave the premises. From 8 P.M. to 8 A.M. he is required to remain on the premises to take phone calls and messages.

Working time is as follows:

| | |
|---|---|
| From 8 A.M. to 5 P.M. - one hour for lunch | 8 hours |
| From 5 P.M. to 8 P.M. - free time | |
| From 8 P.M. to 8 A.M. - deducting 8 hours for sleeping time and one hour for dressing, breakfast etc. the balance of "on call" time is | 3 hours |
| Total working time | 11 hours |

Some employees, such as ambulance drivers, are required to be on duty for a continuous period of 24 hours or more, and although they are not "residential" employees, they are able to sleep on the employer's premises while on call. In such circumstances, sleeping time may be excluded from working time under the following conditions: (Administrative guidelines)

1. The employer and the employee agree to exclude from working time a bona fide, regularly scheduled "sleeping period" of not more than 8 hours. Where there is no such agreement, express or implied, all sleeping time will be considered as hours worked.

2. Adequate sleeping facilities are provided.

3. During a given 24 hours on duty, the scheduled sleeping period is confined to a specified period of not more than 8 hours. Sleep which occurs outside the specified 8 hour period, will not be excluded from working time.

4. If the scheduled sleeping period is interrupted by a call to duty, the interruption will be considered time worked.

5. The employee can usually enjoy an uninterrupted night's sleep. If the sleeping period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, then the entire sleep period will be considered as working time. To be counted as a reasonable night's sleep, there must be at least one uninterrupted period of continuous sleep of at least 3 hours with a total of at least 5 hours sleep during the scheduled period.

In similar fashion, where the employer and employees agree to exclude bona fide meal periods, such meal period time, up to a maximum of three hours during the 24 hour period, may be excluded from working time.

<u>Waiting Time in Grading Houses</u>

For minimum wage purposes, all waiting time at grading house of one hour or less is considered as working time. Where more than one hour of waiting time is involved, a detailed report is to be submitted for a determination. The report should include such information as the reason for the stoppage of work; the amount of waiting time incurred; a description of the work site as distinguished form the grading house premises or other premises where employees worked; what instructions if any were given to workers as to the time they should report back to work; what limitations, if any, were placed on their leaving the work site; how the employees used the time, etc.

<u>Training programs</u>

In some cases, employers have attempted to set up "pre-employment" training programs claiming the trainees were not employees subject to the minimum wage law. Our counsel has held that generally trainees are deemed individuals "employed or permitted to work by an employer in any occupation" within the framework of Section 651 of the Labor Law.

When investigating the status of training programs, one of the key issues is whether the work in the training program is productive for the firm. Other questions that should be answered by the investigator are: Is this training for a specific job? If not, why does the company give the course. The investigator should give a detailed description of the firm's operation and of the training course including the equipment, materials, and premises used for such training. Why do people take the course except if there are jobs with the company upon completion of the course. How does the company recruit its trainees for the course? Are there jobs available with the company upon completion of the course. All of this information should be reported by the investigator at the time of investigation.

Where the trainees are deemed to be "employees" and the training course is of two weeks duration or more, the employer may be eligible to apply for learners certificates which authorize payment of specified sub-minimum wages for the specified learning period. See page 13 for further discussion of learners.

REGULATIONS

42-2.4 Employer Records

Every employer shall establish, maintain and preserve for not less than six years weekly records which shall show for each employee: name and address; social security number; daily and weekly hours; gross wages; deductions and allowances; and cash wages paid. Records shall also indicate handicapped, learner, apprentice and student status, where certificates have been issued, and shall contain statement from school when student status is claimed.

For staff counselors in a childrens' camp, and for executive, administrative and professional employees, the records shall show the employee's name and address, social security number, description of occupation; wages for each payroll period, and allowances, if any, except that wages and allowances need not be shown for professional employees.

Employers, including those who maintain their records containing the information required at a place outside of New York State, shall make such records, or sworn certified copies thereof, available upon request of the commissioner at the place of employment.

For recording allowances, payroll records should be deemed adequate where they are maintained in accordance with the requirements of another agency, so long as sufficient information is available to make a minimum wage determination.

142-2.5 Statement to Employees

This wage order requires an employer to furnish a statement with every payment of wages to his employees listing period covered, hours worked, rates paid, gross wages, allowances if any, all deduction and net wages.

The investigator is to accept, upon the initial visit to an establishment, any statement that the employer uses in attempting to meet this requirement. He is to instruct the employer that full compliance in the future will be required.

142 2.6 Posting

A "Summary of Laws" including the provisions and regulations of this order must be posted in a conspicuous place for employees to read. An employer must also post any certificates issued by the Commissioner for employment of learners at wages lower than the prescribed minimum.

142 2.7 Basis of Wage Payment

The minimum wage provided by this order shall be required for each week of work regardless of the frequency of payment, whether the wage is on a commission, bonus, piece rate, or any other basis.

This regulation requires the prompt payment of minimum wages - not later than an employee's next regular pay day. (Under Section 191.1, manual workers must be paid weekly, not later than 7 days after the end of the week in which wages are earned. Payment every two weeks is permitted if it includes all wages earned through pay day. ommission salesmen must be paid in accordance with the agreed terms of employment but .ot less frequently than once a month. Other employees must be paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly.)

We have had some problems in determining minimum wage compliance in employment agencies where placement employees are paid on a commission basis. Since commissions are not deemed "earned" until the agency receives the placement fees, some time may elapse between the placement and the required payment of commissions to the employee. While there is no requirement in the law that placement managers must be paid weekly, it is our policy - as with automobile salesmen - to instruct the employer to set up a "weekly draw" against commissions in the amount of the minimum wage, to assure compliance with the minimum wage law.

Where an employer either by established practice or express agreement provides "fringe benefit" payments such as for hospitalization and group insurance, or vacation pay, or holiday pay, or a Christmas bonus, or other similar supplement pay, he is required to pay both the minimum wage and the agreed benefits, without any offset of the supplement pay against any minimum wage underpayment. However, where no agreement exists, and the wage supplement is discretionary with the employer, credit for supplement pay may be allowed in the week that such monies are paid to the employee, but any excess credit may not be prorated beyond such week of payment.

142-2.8 Deductions and Expenses

The minimum wage of employees shall be subject to no deductions other than those authorized by law or for allowances permitted by this order. The minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer. For example, an employee who is required by an employer to travel as part of his duties must be reimbursed for any travel expenses to the extent that the expense depresses the wage below the minimum.

Deductions from wages which are voluntary and for the direct benefit of the employee are permissible, such as savings bonds, union dues, group insurance, and contributions to charities. Permissible deductions also includes taxes, wages assignments for the benefit of a third part, and garnishees.

Some examples of prohibited deductions are deductions for spoilage or breakage; deductions for cash shortages or losses, or errors on checks or unpaid checks, fines or penalties for lateness, misconduct or quitting by an employee without notice.

Deductions from wages for such items also are prohibited under Section 193 of the Labor Law, which is applicable to all employees including those who earn more than the minimum wage. Under departmental policy, as described in memo to Supervisors dated February 8, 1972, we have extended the statutory prohibition to so called voluntary repayment arrangements by transactions separate and distinct from the payment of wages - since in effect such arrangements enable the employer to accomplish indirectly what the law directly prohibits.

Accordingly, any deduction - or separate repayment by the employee - for cash shortages, breakage, or other similar items which reduces the minimum wage is to be computed as a minimum wage underpayment. Where such deductions or separate repayments do not depress the minimum wage, they will be deemed violations of Section 193 and the amounts involved are collectible by the Department as illegal deductions.

142-2.9 and 2.10 Learners and Apprentices

Under provisions of Section 655 of the Minimum Wage Act, the Industrial Commissioner, upon recommendations of a Wage Board, may issue regulations regarding sub-minimum rates for learners and apprentices, and certain other categories of workers, e.g. handicapped workers.

Regulations authorizing employment of learners and apprentices at subminimum rates are contained only in the wage order for Miscellaneous Industries and Occupations. All other industry wage orders specifically prohibit lower rates for learners and apprentices.

142-2.9 Learner

The term "learner" means a person who is participating in a bona fide training program with formal instruction and supervision for an occupation in which he is employed, the required training period for which is recognized to be at least two weeks.

An employer who wishes to employ learners at less than the minimum wage must file application for a certificate with the Commissioner concerning: occupation for learners; duration of learning period; nature and extent of instruction and supervision; and such other information as may be required. An investigation is generally made upon such application. Investigations may not be necessary when sufficient experience and standards have been developed concerning the occupation involved. However, investigation is mandatory when a learning period of more than ten weeks is requested.

The certificate issued will contain name and address of employer, number of permitted learners, and rate of pay for the learners. This may not be less than 75% of the basic hourly rate after allowances. The certificate must be retained by the employer for a period of six years.

Certificates have been issued for the following classifications of learners:

X-ray Technicians

First year of employment as a learner - 75% of minimum rates
Second year of employment as a learner - 85% of minimum rates

Funeral Director Trainees

After completion of one year at a school for funeral director:

| | | |
|---|---|---|
| First six months of training (employment as "learner") | - | 85% of minimum |
| Next six months | - | 90% of minimum |
| | | |
| First six months | - | 75% of minimum |
| Second six months | - | 80% " " |
| Third six months | - | 85% " " |
| Fourth six months | - | 90% " " |

Learners certificates have also been issued for Nurses Aides (75%-80% for up to eight weeks); shoe repairman (75% for 10 weeks); and dental assistants (75% for ten weeks.) Certificates have also been issued for an advertising lay out assistant, chiropractic assistant, architect's assistant, window trimmer trainee, weaver trainee, and others.

142-2.10 Apprentice

The term "apprentice" means a person whose work at an establishment is in an apprenticeable trade or occupation and is part of a bona fide training program leading to qualification as a journeyman in the trade or occupation, such training program requiring at least two years (4000 hours).

An employer to qualify for a certificate to employ apprentices must file an application with the Commissioner listing all required information. The certificate issued will contain name and address of employer, specified occupation, length of apprentice periods and rate of pay for each period. (Rate of pay for starting period may not be less than 75% of the minimum hourly rate after allowances.) It must be retained by the employer for a period of six years.

Certificates have been issued for the following classifications of apprentice:

Barbers

Barber School Graduate Apprentices:

| | | |
|---|---|---|
| First six months of apprentice employment | - | 75% of minimum |
| Second six months | - | 85% " " |
| Third six months | - | 95% " " |

Non-School Apprentices:

| | | |
|---|---|---|
| First year | - | 75% " " |
| Next six months | - | 85% " " |
| Following six months | - | 95% " " |

Television Repairmen

| | | |
|---|---|---|
| First 1,000 hours | - | 75% |
| Second 1,000 hours | - | 83 1/3% |
| Third 1,000 | - | 93 1/2% |

Certificates have also been issued for auto mechanics, commercial photographers, opticians, plumber's apprentice, printers, dental mechanics, upholsterers and others.

142-2.11 Student

The term "student" means a person who is enrolled in and regularly attends during the daytime a course of instruction leading to a degree, certificate, or diploma offered at an institution of learning, or who is completing residence requirements for a degree. A person is deemed to be a student during the time that school is not in session if he was a student during the preceding semester.

A. In a camp

(For profitmaking camps which offer lodging, see Hotel Order. Also note, all employees of a day camp are covered under Miscellaneous Order by administrative decision.)

An employer to qualify for a certificate to employ students must file an application with the Commissioner concerning:

a. length of time the camp is opened
b. occupations for students
c. period of employment of students. The length of employment cannot exceed 17 consecutive weeks in a year.

The certificate issued will contain name and address of employer and authorization to employ students at a wage 20% lower than the minimum hourly rate after allowances for tips, meals, and lodging.

B. Obtaining vocational experience

A student enrolled and regularly attending a non-profitmaking religious, charitable or educational institution shall not be deemed an employee if he works for this institution in any capacity, or for an establishment covered by this order, if under the curriculum requirements of his institution he is required to obtain vocational experience in another establishment. The establishment shall maintain evidence that the "student" is fulfilling curriculum requirements by having a letter from the institution stating name of student, length of service required and type of experience. (There is no rate of pay established for such students).

142-2.12 Impairment of Earning Capacity

"Impairment of earning capacity" may be either by age (at least 65 years), or by physical or mental deficiency, or injury.

A person whose performance in the duties assigned to him, is hindered by reason of age, mental or physical deficiency or injury, comes within the definition. Such a person is deemed to be a "handicapped worker".

An employer to qualify for a certificate in this classification must have an application completed, signed by the employer and employee, and filed with the commissioner. A special investigation will have to be made. (In New York City, applications and special investigations for a handicap certificate are handled by the Permit Unit). Minimum wage inspections should not be completed, or underpayment computed, until a determination has been made.

The handicap certificate when issued will contain the name and address of the employer, name of employee, occupation at which handicapped worker is to be employed; reasons why such handicap impairs earning capacity, rate to be paid employee (the rate of pay may not be less than 75 per cent of the basic hourly rate <u>after allowances</u>, although the commissioner may authorize a payment at a lower wage where the employment is part of a rehabilitation program).

The certificate shall be retained for six years after termination of the period during which the handicapped worker was employed at a sub-minimum wage.

<u>Example</u>: An employer has been issued a certificate for his handicapped worker authorizing payment at not less than 75% of the hourly rate, after allowances. The employee works 40 hours a week and receives 5 meals a week. The minimum wage (7/1/70) for this worker is:

40 hours x $1.85 = $74.00
5 meals x 65¢ = -3.25
$70.75 x 75% = $53.06 S.M.W.

142-2.13 <u>Minimum Wage for Youth under 18 years of age</u>

The youth rate provision, designed to prevent curtailment of opportunities for employment of youths, was introduced in the wage order effective January 1, 1967. Under those orders, an employer to whom a youth rate certificate was issued, was permitted under prescribed conditions to pay a limited number of youths under 18 years of age 25¢ an hour less than the applicable wage order minimum.

Under the new orders which became effective July 1, 1970, the youth rate was changed from 25¢ to 30¢; all other regulations were unchanged. (Certificates which were issued under the previous order at the 25¢ rate will remain valid for the 30¢ rate. Employers need not apply for a new certificate.)

The following guidelines will apply to enforcement of the youth rate:

<u>Quota</u> - The youth rate may be paid to no more than two employees on any day, or more than 10% of the total number of employees, whichever is greater. If 10% of the total number of employees results in a fraction of ½ or more, the faction will be recognized as an additional eligible youth. Where an employer applies the youth rate to more than his quota of youths, he shall select the employees who are subject to the under-payment. If the employer fails to make a selection, the investigator should choose the employees (s) producing the smallest underpayment.

<u>Legal Employment</u> - The youth rate may not be applied during any period when the youth is illegally employed, e.g. without an employment certificate, in a prohibited occupation, or during prohibited hours. In the latter case, the youth rate would be applied for all legal hours so far as they can be ascertained. The illegal hours worked shall be paid at the regular rate.

Verification of qualified youth - For each youth employed under the youth rate, the employer is required to keep on file with his records proof of age as certified by the school of last attendance or the date of birth and the number which appears on the youth's employment certificate. Those records must be kept and made available for inspection for a period of not less than six years from the date of issuance. Where the required information is not provided, the employer may be granted a reasonable time to produce proof of age.

Other Certificate - Administratively, we will not permit the youth rate to be applied to an employee for whom another certificate has been issued (e.g. Handicapped Certificate) authorizing payment of less than the minimum rate.

FLSA coverage - Federally covered employees are also covered by all provisions of the State wage orders. In any employment covered by both State and Federal laws the higher standards govern. Although the employer may be entitled to pay the State youth rate, this does not excuse non-compliance with the Federal requirements. In situations, therefore, where the $1.60 Federal rate is applicable, the employer will not be able to take full advantage of the State youth rate, now $1.55 per hour.

Rate - The youth rate provisions authorizes employment at a minimum wage which is 30¢ an hour less than the applicable minimum wage specified in the order.

Examples:

Basic rate of $1.85 becomes $1.55. A youth who works 40 hours a week must be paid at least $62.00 (40 x $1.55).

Overtime rate of $2.77½ becomes $2.47½. A youth who works 48 hours a week must be paid at least $81.80 (40 hours x $1.55 = $62.00 plus 8 hours at $2.47½ = $19.80 for a total of $81.80).

142-2.14 - Seasonal Workers in the Establishment of a Canner or Freezer

Under a special certificate, canners or freezers may employ seasonal workers during first processing, canning or freezing of perishable fruits or vegetables at $1.70 an hour. Although the wage order defines a seasonal worker as one employed for not more than seven months beginning with June 1 and ending on December 31, administratively we will apply the definition to a worker who is employed not more than 30 weeks during a calendar year. The 30 weeks need not be continuous. An employee who works more than 30 weeks in the calendar year must be paid $1.85 per hour plus the applicable overtime for all hours worked in all weeks in the calendar year.

Note also that under Sec. 655.5(b) certificates have been issued allowing special overtime standards for employees of a canner or freezer for 20 weeks in the year.

Employment Covered by More than One Wage Order

This order contains no regulation regarding employment covered by the Miscellaneous Order and by another industry wage order. In the event of such diversification of employment, the provisions of Regulation "Employment Covered by More than One Wage Order" under the other wage order shall apply.

142-2.15 Employee

"Employee" means any individual permitted to work by an employer. In certain occupations, there have been cases of alleged independent contractor status. The mere label of "independent contractor" does not necessarily remove someone from the category of a worker. However -

Where barbers, bootblacks, and manicurists in barber shops alleged to be independent contractors, earn well over the minimum wages from all sources of income, including gratuities, we will administratively accept the situation without spending time to secure legal clearance on whether an employer/employee relationship exists. Where earnings are borderline, and a record of hours worked essential to a finding of future compliance, the investigator will proceed to secure a determination of an employer-employee relationship. Some of the factors to be considered in making such a determination are: the degree of supervision, direction and control over the work performed; who furnishes supplies; the amount and kinds of payments to the owner for the use of shop equipment and supplies; the owner's authority to fix hours of work; who carries the public liability and other insurance; gratuities; and other similar considerations.

Certain individuals are exempt from the definition of "employee" by the statute. Among these are individuals employed by a federal, state or municipal government or political subdivision, and the following:

(1) Part-Time baby sitters in the home of the employer, or someone who lives in the home of an employer for the purpose of serving as a companion to a sick, convalescing or elderly person, and whose principal duties do not include housekeeping.

Prior to January 15, 1972 an exemption was provided for "domestic service in the home of the employer" -- work in or about the domocile of an employer in his capacity as a householder. An amendment effective January 15, 1972 enacted by the 1971 Legislature removed this exemption and substituted the above, thus extending minimum wage coverage for the first time to all domestic workers, except part-time baby sitters and live-in companions to the sick or elderly. Domestic workers are covered under this wage order. A separate manual dated 12/10/71, contains guidelines for enforcement of the minimum wage provisions for domestic workers.

(2) Labor on a Farm

The term "farm" includes stock, dairy, poultry, fur-bearing animal, fruit, and truck farms, plantations, orchards, nurseries, greenhouses, or other similar structures, used primarily for the raising of agricultural or horticultural commodities.

The term "labor on a farm" includes the service of any person permitted to work on a farm by an employer in connection with:

(a) cultivating the soil;
(b) raising or harvesting any agricultural or horticultural commodity, including the raising or hatching of poultry, the raising, shearing, feeding, caring for, training, and management of livestock, bees, fur-bearing animals, and wildlife;
(c) the production or harvesting of maple syrup or maple sugar;
(d) the operation, management, conservation, improvement, or maintenance of a farm and its tools and equipment;
(e) the operation or maintenance of ditches, canals, reservoirs, or waterways used exclusively for removing, supplying, and storing water for farming purposes;
(f) the handling, planting, drying, packing, packaging, processing, freezing, grzding storing or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity.

Persons employed in "labor on a farm" as defined above are exempt from coverage under the Minimum Wage Order for Miscellaneous Industries and Occupations. A separate minimum wage law (Article 19-A) was enacted for farm workers by the 1969 Legislature, and a separate wage order, Part 190, effective October 1, 1969 applies to farm workers employed on farms subject to the law.

Questions have arisen from time to time as to the applicability of the minimum wage orders to a farmer's fruit and vegetable processing plant where the plant is located off the farm or where products grown on other farms are processed. The following is our ruling on these questions: (1) For a plant on the farm which handles only products grown by the farmer, the farm minimum wage order applies. (2) For a plant which is off the normal geographic limits of the farm and in which only the farmer's products are handled, the farm minimum wage order applies. (3) For a plant also handling products grown on other farms, regardless of where the plant is located, the Miscellaneous Wage order applies only when processing products grown on other farms.

Another question has concerned coverage for employees engaged in landscaping work for private homes and other buildings. Such employment is covered under the Miscellaneous Wage Order regardless of whether the employer also operates a greenhouse. Where an employee works in the greenhouse and also does outside landscaping, both wage orders apply -- the farm wage order for the time spent in farm work, and the Miscellaneous Wage Order for the time spent in outside landscaping.

(3) <u>Executive, Administrative, or Professional Capacity</u>

Persons employed in a bona fide executive or administrative capacity are exempt from minimum wage coverage if they meet the duties tests described below and are paid a salary of at least $138.75 weekly. Professionals also must qualify on a duties basis, but there is no minimum salary requirement for this category.

<u>Executive</u>

To be exempt, an executive must meet these tests: His primary duty must be management of the enterprise, or of a recognized department or subdivision (as a general rule, "primary" means that over 50% of the time is spent in management); he must regularly direct the work of at least two or more employees; he must have the authority to hire or fire, or recommend hiring and firing, or whose recommendation on these and other actions affecting employees is given weight; he must regularly exercise discretionary powers; and he must be paid a salary of not less than $138.75 per week, inclusive of board, lodging, other allowances and facilities.

> Examples: Store manager, department manager, branch office manager. However, a "trainee" manager is not exempt unless all specifications listed above are met. (In most instances, trainees do not have authority to hire or fire other employees.)

<u>Administrative</u>

To be exempt, an administrative employee must meet these tests: His primary duty must be responsible office or nonmanual field work directly related to management policies or general business operations; he must customarily and regularly exercise discretion and independent judgment; he must regularly and directly assist an employer or a bona fide executive or administrative employee; or he must perform work under only general supervision along specialized or technical lines requiring special training, experience or knowledge; and his salary is not less than $138.75 weekly.

> Examples: Executive and administrative assistants, such as assistant to general manager, assistant buyers; advisory specialists for management such as tax experts,systems analysts, investment consultants, credit managers, purchasing agents, personnel directors, labor relations directors. An executive secretary may meet these specifications but the average private secretary would not. An administrative "trainee" is not exempt as he would not be expected to customarily and regularly exercise discretion and independent judgment.

Few problems have arisen in the interpretation of an executive or administrative employee since the minimum salary standard tends to exceed the State minimum wage

requirements for the number of hours worked. ($138.75 would be sufficient for up to 63 hours.) However questionable cases should be referred to the supervisor.

Professional

To be exempt, the person employed in a professional capacity must meet these tests: His primary duty must be either work requiring knowledge or an advanced type in a field of science of learning, usually obtained by a prolonged course of specialized instruction and study; or work that is original and creative in character in a recognized field of artistic endeavor and the result of which depends primarily on his invention, imagination and talent. He must consistently exercise discretion and judgment and he must do work that is mainly intellectual and varied, as distinguished from routine or mechanical.

No salary scale is set for persons employed in professional work. In general, a college degree or certificate in a specialized field of endeavor is acceptable for a professional classification. The individual would have to be employed in the field in which he obtained the degree, i.e. a law clerk in a law office.

Examples: lawyer, doctor, registered nurse, accountant, engineer, architect, teacher, pharmacist, physicist, chemist, medical technologist. Also, musician, composer, painter, creative writer, designer, actor. Not exempt: draftsman, skilled craftsman, practical nurse, laboratory technician, x-ray technician, computer programmer. In questionable cases, full details concerning type of training, education, etc. should be reported to the supervisor.

(4) Outside Salesman

The term "outside salesman" means an individual who is customarily and predominantly engaged away from the premises of the employer and not at any fixed site and location for the purpose of: making sales, or selling and delivering articles or goods, or obtaining orders or contracts for service or for the use of facilities.

Some salesmen spend time at the employer's office. A real estate salesman, for example, who customarily and predominantly is engaged away from the employer's premises is not to be considered covered for minimum wage merely because he appears at an office to collect names of prospects or information about property, or to make some phone calls. However, when a considerable amount of working time (e.g. 2 hours or more a day) is spent at the place of employment, either in making phone calls or in preparatory work necessary to making outside contacts, he is subject to minimum wage coverage. When an undeterminable amount of time is spent away from the employer's premises, in addition to a considerable amount of working time at the place of employment, the minimum wage is required only for time worked at the employer's premises. (Note, real estate salesmen are covered under the Building Service Wage Order).

Regarding questions on this which have arisen in the past, we have notified the New York State Automobile Dealers Inc. that an automobile salesman who spends part of his working time at his place of employment and part in the field is considered subject to minimum wage coverage only when working on the premises of the employer. (Automobile salesmen are covered under the Retail and Wholesale Trade Wage Order). We have also notified the Association of Stock Exchange Firms that a securities salesman who is regularly employed at a fixed location during normal business hours and continues his sales efforts when at home by telephoning present and prospective customers is considered subject to minimum wage coverage only when working on the premises of the employer or under the employer's express direction. (Stock salesmen are covered under the Miscellaneous Wage Order.)

(5) Taxicab Driver

The term "driver engaged in operating a taxi-cab" means an individual employed to drive an automobile equipped to carry no more than seven passengers, which is used in the business of carrying or transporting passengers for hire on a zone or meter fare basis, and the use of which is generally limited to a community's local transportation needs and which is not operated over fixed routes, or between fixed terminals, or under contract.

The exemption would apply to drivers of New York City medallioned cabs, licensed or unlicensed "gypsy" cabs and limousine services with no fixed routes and other local taxicab services. It does not apply to drivers or airport limousines operated over fixed routes.

Note the exemption applies only to the taxicab driver. All other employees of the industry such as dispatchers, mechanics, clerical help, etc. are covered under the minimum wage order.

(6) Student in or for a College or University Fraternity, Sorority, Student Association, or Faculty Association

A student is not deemed to be an employee if he is permitted to work in or for a college or university fraternity, sorority, student association or faculty association, no part of the net earnings of which insures to the benefit of any private shareholder or individual, and which is recognized by such college or university.

(7) Staff Counselor in a Children's Camp

A "staff counselor" is a person whose duties primarily relate to the guidance and care of campers in a children's camp. "Children's camp" means an establishment which is engaged in offering children, on a residential or nonresident basis, recreational programs of supervised play or organized activity in such fields as sports, nature lore, and arts and crafts, whether known as camps, play groups, play schools, or by any other name. This definition would cover the typical sleep-away camp or day camp. Note however, in an investigation of a cabana club, we did not permit the "counselor" exemption for persons employed to supervise the children because there was no organized program as described above.

The term "children's camp" does not include an establishment which is open for a period exceeding 17 consecutive weeks during the year.

142-2.16 Impairment of Earning Capacity

The phrase "earning capacity is ....impaired by ....age, or by physical or mental deficiency or injury," applies to a person whose earning capacity for the work he is assigned to perform is impaired by age, or by physical or mental deficiency or injury; but a person's earning capacity may not be deemed impaired by age until his 65th birthday. See Regulation on page 15.

142-2.17 Required Uniforms and Protective Garments

A required uniform includes any item of clothing, decoration, or ornament that an employee wears at work at the request or direction of the employer, or to comply with any state, city, or local law, rule or regulation, and which is not ordinarily used outside of employment. Protective garments include apparel such as gloves, goggles, boots, or aprons necessary to safeguard or prevent injury to the employee or required for sanitary purposes.

142-2.18 Tips

Tip, or gratuities, shall mean a voluntary contribution received by the employee from a guest, patron, customer, or other person for services rendered. No gratuities or tips shall be deemed received for the purposes of this order if their acceptance is prohibited by the employer or prohibited by law.

142-2.19 Student

The term "student" means an individual who is enrolled in and regularly attends during the daytime a course of instruction leading to a degree, certificate, or diploma, offered at an institution of learning, or who is completing residence requirements for a degree. A person is deemed to be a student during the time that school is not in session if he was a student during the preceding semester. See Regulation on page 14.

Meal

There is no definition of "meal" contained in this wage order. When meal allowances are claimed, investigators should see that adequate meals approximating the "meal" defined in other wage orders are furnished.

# EXHIBIT "2"

HEINONLINE

DATE DOWNLOADED: Mon Aug 18 15:20:25 2025
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1960 vol. II 1858 .

ALWD 7th ed.
, , 1960 vol. II 1858 .

Chicago 17th ed.
"," New York - 183rd Legislature : 1858-1870

AGLC 4th ed.
'' New York - 183rd Legislature 1858

OSCOLA 4th ed.
'' 1960 vol II 1858 x Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.
Cite this document
PinCite this document

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

## CHAPTER 619*

AN ACT to amend the labor law, in relation to prescribing minimum wages, and to repeal article nineteen of such law and making an appropriation therefor

Became a law April 18, 1960, with the approval of the Governor. Passed, on message of necessity, pursuant to article III, section 14 of the Constitution, by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Labor law, Art. 19, (§§ 650-666), repealed.

Section 1. Article nineteen of the labor law, as added by chapter two hundred seventy-six of the laws of nineteen hundred thirty-seven, and all acts amendatory thereof and supplemental thereto, said article comprising sections six hundred fifty through and including section six hundred sixty-six of such law, is hereby repealed.

New Art. 19 (§§ 650-665), added

§ 2. Such law is hereby amended by adding thereto a new article, to be article nineteen, to read as follows:

### *ARTICLE 19*

#### *MINIMUM WAGE ACT*

*Section 650. Statement of public policy.*
*651. Definitions.*
*652. Minimum wage.*
*653. Investigation of adequacy of wages.*
*654. Basis of changes in minimum wage.*
*655. Wage board; procedure; report.*
*656. Action by commissioner upon wage board report.*
*657. Appeals from wage orders and regulations.*
*658. Appeals from compliance orders.*
*659. Reconsideration of wage orders and regulations.*
*660. Commissioner's powers of investigation.*
*661. Records of employers.*
*662. Penalties.*
*663. Civil action.*
*664. Referrals by employment agencies*
*665. Savings clause.*

§ *650. Statement of public policy There are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves and their families Such employment impairs the health, efficiency, and well-being of the persons so employed, constitutes unfair competition against*

* NOTE.—Former Article 19 that is repealed by this act provided for the establishment of minimum wages for women and minors through a wage board procedure. Men were covered by the minimum rates by virtue of the supplementary protection provision of Section 663-a.

The new Article 19 proposed by this act would apply to all employees in the state, with certain exemptions, and provides for both a statutory minimum and the establishment of minimum rates through wage board procedure.

*other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that their wages be supplemented by the payment of public moneys for relief or other public and private assistance. Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of this state and injures the overall economy.*

*Accordingly, it is the declared policy of the state of New York that such conditions be eliminated as rapidly as practicable without substantially curtailing opportunities for employment or earning power. To this end minimum wage standards shall be established and maintained.*

*§ 651. Definitions. As used in this article:*

*1. "Commissioner" means the industrial commissioner.*

*2. "Department" means the labor department.*

*3. "Board" or "wage board" means a board created as provided in this article.*

*4. "Occupation" means an industry, trade, business or class of work in which employees are gainfully employed.*

*5. "Employee" includes any individual permitted to work by an employer in any occupation, but shall not include any individual permitted to work: (a) in domestic service in the home of the employer; (b) in labor on a farm; (c) in a bona fide executive, administrative, or professional capacity; (d) as an outside salesman, or as a driver engaged in operating a taxicab; (e) as a volunteer, learner or apprentice by a corporation, unincorporated association, community chest, fund or foundation organized and operated exclusively for religious, charitable or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual; (f) as a member of a religious order, or as a duly ordained, commissioned or licensed minister, priest or rabbi, or as a sexton, or as a christian science reader; (g) in or for such a religious or charitable institution, which work is incidental to or in return for charitable aid conferred upon such individual and not under any express contract of hire, or in or for such a religious, educational or charitable institution at which institution such individual is a student, or in or for such a religious, educational or charitable institution if the earning capacity of such individual is impaired by age or by physical or mental deficiency or injury; (h) by a federal, state or municipal government or political subdivision thereof; or (i) to whom the minimum wage provisions of the federal fair labor standards act of nineteen hundred thirty-eight, as amended, is applicable. The exclusions from the term "employee" contained in this subdivision shall be as defined by regulations of the commissioner.*

*6. "Employer" includes any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons acting as employer.*

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

*7. "Wage" includes allowances, in the amount determined in accordance with the provisions of this article, for gratuities and, when furnished by the employer to his employees, for meals, lodging, apparel, and other such items, services and facilities.*

*§ 652. Minimum wage. 1. Statutory. On and after October first, nineteen hundred sixty, every employer shall pay to each of his employees in every occupation a wage of not less than one dollar an hour, or such other wage as may be established in accordance with the provisions of this article.*

*2. Existing wage orders. The minimum wage orders issued prior to the effective date of this article shall remain in full force and effect, except as modified in accordance with the provisions of this article. Effective October first, nineteen hundred sixty, minimum wage rates of less than one dollar an hour in such orders shall be modified by order of the commissioner to provide for a wage of one dollar an hour. Effective October first, nineteen hundred sixty, such orders, to the extent they do not provide for a minimum hourly wage rate, shall be modified by order of the commissioner, as he deems necessary or appropriate, to carry out the purposes of this article and to safeguard the minimum wage of one dollar an hour. In making modifications under this subdivision, the commissioner shall determine (a) the amount, if any, to be allowed for gratuities and, when furnished by the employer to his employees, for meals, lodging, apparel, and other such items, services and facilities (hereinafter referred to as "allowances"), (b) the changes in wages regulations contained in such minimum wage orders as he deems necessary or appropriate to safeguard the minimum wage of one dollar an hour, and (c) such regulations as he deems necessary to prevent curtailment of oportunities for employment of persons specified in paragraph (c) of subdivision five of section six hundred fifty-five.*

*3. Occupations not covered by existing minimum wage orders. Effective October first, nineteen hundred sixty, for any occupation or occupations in which, on the effective date of this article, there is no existing minimum wage order, the commissioner shall issue an order providing for a minimum wage of one dollar an hour. In making any such order, the commissioner shall determine (a) the amount, if any, of allowances, and (b) such regulations as he deems necessary or appropriate to carry out the purposes of this article and to safeguard the minimum wage of one dollar an hour, and such regulations as he deems necessary to prevent curtailment of opportunities for employment of persons specified in paragraph (c) of subdivision five of section six hundred fifty-five.*

*4. Procedure for determination of allowances and regulations. The determination of allowances and regulations by the commissioner pursuant to the provisions of this section shall be made after public hearing. Such hearing shall be held by the commissioner or, if the commissioner determines, a wage board.*

*5. Non-profitmaking institutions. (a) This article shall apply to any corporation, unincorporated association, community chest, fund*

*or foundation organized and operated exclusively for religious, charitable or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or individual (hereinafter referred to as a "non-profitmaking institution").*

*(b) The provisions of subdivisions one, two, three and four of this section and the provisions of sections six hundred fifty-three, six hundred fifty-four, six hundred fifty-five, six hundred fifty-six and six hundred fifty-nine shall not apply, however, to any non-profitmaking institution which, on or before October first, nineteen hundred sixty, pays and thereafter continues to pay to each of its employees in every occupation a wage, exclusive of allowances, of not less than one dollar an hour, provided that such institution shall have certified under oath to the commissioner, on or before September first, nineteen hundred sixty, that on or before October first, nineteen hundred sixty it shall pay and thereafter intends to pay such wage to each of its employees in every occupation. If such institution is not organized before September first, nineteen hundred sixty, such provisions shall not apply so long as, commencing six months after it has been organized, it pays and thereafter continues to pay such wage to each of its employees in every occupation, provided that such institution shall have certified under oath within six months after it has been organized that it shall pay and thereafter intends to pay such wage to each of its employees in every occupation.*

*(c) All the provisions of this article, including all of the provisions of any wage order issued thereunder which, but for the operation of paragraph (b) of this subdivision, would apply to any non-profitmaking institution, shall become fully applicable to such institution sixty days after such institution files a notice with the commissioner requesting that the provisions of such wage order apply to it, or immediately upon the issuance of an order by the commissioner finding that such institution has failed to pay a wage of one dollar an hour as provided in paragraph (b) of this subdivision, but in no event shall any such order discharge the obligation of such institution to pay the wage provided by paragraph (b) of this subdivision for any period prior to the issuance of such order.*

*§ 653. Investigation of adequacy of wages. The commissioner shall have power on his own motion to cause an investigation to be made of the wages being paid to persons employed in any occupation or occupations to ascertain whether the minimum wages established in accordance with the provisions of this article are sufficient to provide adequate maintenance and to protect the health of the persons employed in such occupation or occupations. The commissioner shall, on the petition of fifty or more residents of the state engaged in or affected by an occupation or occupations sought to be investigated, cause such an investigation of such occupation or occupations to be conducted. If, on the basis of information in his possession with or without such*

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

*an investigation, the commissioner is of the opinion that any substantial number of persons employed in any occupation or occupations are receiving wages insufficient to provide adequate maintenance and to protect their health, he shall appoint a wage board to inquire into and report and recommend adequate minimum wages and regulations for employees in such occupation or occupations.*

*§ 654. Basis of changes in minimum wage. In establishing minimum wages and regulations for any occupation or occupations pursuant to the provisions of the following sections of this article, the wage board and the commissioner shall consider the amount sufficient to provide adequate maintenance and to protect health and, in addition, the wage board and the commissioner shall consider the value of the work or classification of work performed, and the wages paid in the state for work of like or comparable character.*

*§ 655. Wage board; procedure; report. 1. Wage board. A wage board shall be composed of not more than three representatives of employers, an equal number of representatives of employees and an equal number of persons selected from the general public. The commissioner shall appoint the members of the board, the representatives of the employers and employees to be selected so far as practicable from nominations submitted by employers and employees in such occupation or occupations. The commissioner shall designate as the chairman one of the members selected from the general public. The members of the board shall be entitled to compensation at a rate not to exceed fifty dollars a day for each meeting called by the chairman. They shall also be paid actual and necessary traveling expenses while engaged in the performance of their duties.*

*2. Organization. The chairman of the board is authorized to delegate to a panel of the members, composed of an equal number of employer, employee and public members, any or all of the powers which the board itself may exercise, except as otherwise provided in subdivision four of this section. Two-thirds of the members of the board or of a panel, as the case may be, shall constitute a quorum. The commissioner may from time to time formulate rules governing the manner in which the wage board shall function and perform its duties under this article.*

*3. Powers. The wage board shall have power to conduct public hearings. The board may also consult with employers and employees, and their respective representatives, in the occupation or occupations involved, and with such other persons, including the commissioner, as it shall determine. The board shall also have power to administer oaths and to require by subpoena the attendance and testimony of witnesses, and the production of all books, records, and other evidence relative to any matters under inquiry. Such subpoenas shall be signed and issued by the chairman of the board, or any other public member, and shall be served and have the same effect as if issued out of the supreme court. The board shall have power to cause depositions of witnesses residing within*

*or without the state to be taken in the manner prescribed for like depositions in civil actions in the supreme court. The board shall not be bound by common law or statutory rules of procedure or evidence.*

*4. Report. Within forty-five days of the appointment of the wage board to inquire into wages in any occupation or occupations, the board shall (a) conduct public hearings and (b) submit to the commissioner a report, including its recommendations as to minimum wages and regulations for the employees in such occupation or occupations. The report and recommendations of the board shall be submitted only after a vote of not less than a majority of all its members in support of such report and recommendations. No report or recommendation of a panel shall be submitted without the prior vote of not less than a majority of all the members of the board in support of such report or recommendation. The commissioner may extend up to ninety days the time in which the report shall be submitted.*

*5. Minimum wage recommendations. (a) The minimum wage recommended by the wage board shall not be in excess of an amount sufficient to provide adequate maintenance and to protect the health of the employees. In no event, however, shall any minimum wage recommended by the board be less than one dollar an hour, except (1) as expressly otherwise provided in paragraph (c) of this subdivision, and (2) where the board finds conditions of employment are such as to make an hourly rate impracticable, in which event the board may recommend a wage rate other than an hourly rate, provided that such recommended rate carries out the purposes of this article and safeguards the minimum wage of one dollar an hour. The board may classify employments in any occupation according to the nature of the work rendered and recommend minimum wages in accordance with such classification. The board may also recommend a minimum wage varying with localities if, in the judgment of the board, conditions make such variation appropriate.*

*(b) In addition to recommendations for minimum wages, the wage board may recommend such regulations as it deems appropriate to carry out the purposes of this article and to safeguard minimum wages. Such recommended regulations may include regulations defining the exclusions from the term "employee" set forth in subdivision five of section six hundred fifty-one. Such recommended regulations may also include, but are not limited to, regulations governing piece rates, incentives, and commissions in relation to time rates; overtime or part-time rates; waiting time and call-in pay rates; wage rate provisions governing split shift, excessive spread of hours and weekly guarantees; and allowances for gratuities and, when furnished by the employer to his employees, for meals, lodging, apparel and other such items, services and facilities.*

*(c) The wage board may also recommend, to the extent necessary in order to prevent curtailment of opportunities for employ-*

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

*ment, regulations for (1) the employment of learners and apprentices, under special certificates issued by the commissioner, at such wages lower than the minimum wage established by this article and subject to such limitations as to time, number, proportion and length of service as shall be prescribed in such regulation, (2) the employment of individuals whose earning capacity is impaired by age or by physical or mental deficiency or injury, under special certificates issued by the commissioner, at such wages lower than the minimum wage established by this article and for such period as shall be prescribed in such regulation, and (3) the employment at any time of students, under special certificates issued by the commissioner, in a resort hotel or camp, which resort hotel or camp is open not more than six months of the year, at such wages lower than the minimum wage established by this article as shall be prescribed in such regulation.*

*§ 656. Action by commissioner upon wage board report. When the wage board submits its report and recommendations to the commissioner, the commissioner shall forthwith file them with the secretary of the department. Within five days of their receipt, the commissioner shall publish a notice of such filing in at least ten newspapers of general circulation in the state. Any objections to the report and recommendations shall be filed with the commissioner within fifteen days after such publication. The commissioner may, if he deems it appropriate, order oral argument, which shall be scheduled before the commissioner, or such representative as he may designate, on five days' notice to the persons who have filed objections to the report and recommendations. Whether or not oral argument is scheduled, the commissioner shall by order accept or reject the board's report and recommendations within forty-five days after filing with the secretary of the department. The commissioner may by such order modify the regulations recommended by the board. Such order of the commissioner shall become effective thirty days after publication, in the manner prescribed in this section, of a notice of such order. The commissioner may, within such forty-five days, confer with the wage board, which may make such changes in its report or recommendations as it may deem fit. The commissioner also may, within such forty-five days, remand the matter to the board for such further proceeding as he may direct.*

*§ 657. Appeals from wage orders and regulations. 1. Finality. Any minimum wage order and regulation issued by the commissioner pursuant to this article shall, unless appealed from as provided in this section, be final. The findings of the commissioner as to the facts shall be conclusive on any appeal from an order of the commissioner issued pursuant to sections six hundred fifty-two, six hundred fifty-six, or six hundred fifty-nine.*

*2. Review by board of standards and appeals. Any person in interest, including a labor organization or employer association, in any occupation for which a minimum wage order or regulation has been issued under the provisions of this article who is aggrieved by such order or regulation may obtain review before the board of*

*standards and appeals by filing with said board, within ninety days after the date of the publication of the notice of such order or regulation, a written petition requesting that the order or regulation be modified or set aside. A copy of such petition shall be served promptly upon the commissioner. On such appeal, the commissioner shall certify and file with the board of standards and appeals a transcript of the entire record, including the testimony and evidence upon which such order or regulation was made and the report of the wage board. The board of standards and appeals, upon the record certified and filed by the commissioner, shall, after oral argument, determine whether the order or regulation appealed from is contrary to law. Within sixty days after the filing of the petition, the board of standards and appeals shall issue an order confirming, amending or setting aside the order or regulation appealed from. The appellate jurisdiction of the board of standards and appeals shall be exclusive and its order final except that the same shall be subject to review, under article seventy-eight of the civil practice act, in the supreme court in the third judicial district, within sixty days after its order is issued. The commissioner shall be considered an aggrieved party entitled to take an appeal from an order of the board of standards and appeals.*

*3. Security. The taking of an appeal by an employer to the board of standards and appeals shall not operate as a stay of a minimum wage order or regulation issued under this article unless and until, and only so long as, the employer shall have provided security determined by the board of standards and appeals in accordance with this section. The security shall be sufficient to guarantee to the employees affected the payment of the difference between the wage they receive and the minimum wage they would be entitled to receive under the terms of the minimum wage order or regulation (such difference being hereinafter referred to as "underpayments") in the event that such order or regulation is affirmed by the board of standards and appeals. The security shall be either:*

*a. A bond filed with the board of standards and appeals issued by a fidelity or surety company authorized to do business in this state. The bond shall be sufficient to cover the amount of underpayments due at the time the bond is filed with the board of standards and appeals and the amount of underpayments that can reasonably be expected to accrue within the following sixty days; or*

*b. An escrow account established by the employer in behalf of employees and deposited in a bank or trust company in this state, of which the employer has notified the board of standards and appeals in writing that he has established such account. The account shall be sufficient to cover the amount of underpayments due at the time of notification to the board of standards and appeals and shall be kept current by the employer depositing therein the amount of underpayments*

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

*accruing each and every pay period. Such deposits shall be made no later than the day on which the wages for each pay period are payable. As an alternative thereto, an employer may deposit the amount of underpayments due at the time the deposit is made and the amount of underpayments that can reasonably be expected to accrue within the following sixty days, as determined by the board of standards and appeals. The employer shall keep accurate records showing the total amount of each deposit, the period covered, and the name and address of each employee and the amount deposited to his account. The employees' escrow account shall be deemed to be a trust fund for the benefit of the employees affected, and no bank or trust company shall release funds in such account without the written approval of the board of standards and appeals.*

*4. Maintenance of security. The commissioner, at the request and on behalf of the board of standards and appeals, shall have the right to inspect the books and records of every employer who appeals from an order or who provides a security in accordance with subdivision eight of this section. In the event that the board of standards and appeals finds that the security provided by an employer is insufficient to cover the amount of underpayments, it shall notify the employer to increase the amount of the security. If the employer fails to increase the security to the amount requested within seven days after such notice, the stay shall be terminated. If the board of standards and appeals finds that the amount of the security is excessive, it shall decrease the amount of security required.*

*5. Review of determination as to security. Notwithstanding any provision in this chapter, any determination of the board of standards and appeals with reference to subdivisions three and four of this section shall be reviewable only by a proceeding under article seventy-eight of the civil practice act instituted in the supreme court in the third judicial district within ten days after such determination.*

*6. Security on court review. In the event that an appeal is taken from the order of the board of standards and appeals to the supreme court in the third judicial district pursuant to subdivision two of this section, the court may continue the security in effect or require such security as it deems proper.*

*7. Waiver of security. Notwithstanding any provision in this section, the board of standards and appeals may, in its discretion, waive the requirement of a security for an employer who the board of standards and appeals finds is of such financial responsibility that payments to employees of any underpayments due or to accrue are assured without the security provided by this section.*

*8. Stay for other employers. Any employer affected by a minimum wage order or regulation from which an appeal has been taken by another employer to the board of standards and appeals or to the supreme court in the third judicial district, may obtain a*

*stay of proceedings against him by providing a security in accordance with subdivisions three and four of this section within thirty days after the filing of the appeal by the other employer.*

*§ 658. Appeals from compliance orders. Within sixty days after the issuance by the commissioner of an order to comply with any provision of this article or with any minimum wage order or regulation promulgated thereunder, any person aggrieved may take an appeal from such order to the board of standards and appeals, provided, however, that no such appeal shall bring under review any minimum wage order or regulation promulgated under this article unless such appeal is also taken from such wage order or regulation within the time prescribed and pursuant to the provisions of subdivision two of section six hundred fifty-seven. The provisions of subdivisions three through seven of section six hundred fifty-seven shall apply to appeals such as herein provided. Unless an appeal such as herein provided is taken within the prescribed time, the findings of fact and conclusions of law contained in such order to comply shall be final and binding and no board or court shall have jurisdiction to review such order, or finding or conclusion contained therein, or to restrain or interfere with its enforcement.*

*§ 659. Reconsideration of wage orders and regulations. 1. By wage board. At any time after a minimum wage order has been in effect for six months or more, the commissioner, on his own motion or on a petition of fifty or more residents of the state engaged in or affected by the occupation or occupations to which an order is applicable, may reconvene the same wage board or appoint a new wage board to recommend whether or not the minimum wage and regulations prescribed by such order should be modified, and the provisions of section six hundred fifty-five through six hundred fifty-seven shall thereafter apply.*

*2. By commissioner. The commissioner, without referral to the wage board, may, at any time after public hearing, by order propose such modifications of or additions to any regulations as he may deem appropriate to effectuate the purposes of this article. Notice of hearing and promulgation of any such order shall be published in accordance with the provisions contained in section six hundred fifty-six. Such order shall be effective thirty days after such publication and section six hundred fifty-seven shall thereafter apply.*

*§ 660. Commissioner's powers of investigation. The commissioner or his authorized representative shall have power: (a) to investigate the wages of persons in any occupation in the state; (b) to enter the place of business or employment of any employer for the purpose of (1) examining and inspecting any and all books, registers, payrolls and other records that in any way relate to or have a bearing upon the wages paid to, or the hours worked by any employees, (2) ascertaining whether the provisions of this*

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

*article and the orders and regulations promulgated hereunder are being complied with; and (c) to require from any employer full and correct statements and reports in writing, at such times as the commissioner may deem necessary, of the wages paid to and the hours worked by his employees.*

*§ 661. Records of employers. Every employer shall keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and such other information as the commissioner deems material and necessary, and shall, on demand, furnish to the commissioner or his duly authorized representative a sworn statement of the same. Every employer shall keep such records open to inspection by the commissioner or his duly authorized representative at any reasonable time. Every employer of an employee shall keep a digest and summary of this article or applicable wage order, which shall be prepared by the commissioner, posted in a conspicuous place in his establishment and shall also keep posted such additional copies of said digest and summary as the commissioner prescribes. Employers shall, on request, be furnished with copies of this article and of orders, and of digests and summaries thereof, without charge. Employers shall permit the commissioner or his duly authorized representative to question any employee of such employer in the place of employment and during working hours in respect to the wages paid to and the hours worked by such employee or other employees.*

*§ 662. Penalties. 1. Discrimination against employee. Any employer or his agent, or the officer or agent of any corporation, who discharges or in any other manner discriminates against any employee because such employee has made a complaint to his employer, or to the commissioner or his authorized representative, that he has not been paid in accordance with the provisions of this article, or because such employee has caused to be instituted a proceeding under or related to this article, or because such employee has testified or is about to testify in an investigation or proceeding under this article, shall be guilty of a misdemeanor and upon conviction be punished by a fine of not less than fifty dollars nor more than five hundred dollars.*

*2. Payment of less than minimum wage. Any employer or his agent, or the officer or agent of any corporation, who pays or agrees to pay to any employee less than the wage applicable under this article shall be guilty of a misdemeanor and upon conviction be punished by a fine of not less than fifty dollars nor more than five hundred dollars or by imprisonment of not less than ten nor more than ninety days or by both such fine and imprisonment, and each payment to any employee in any week of less than the wage applicable under this article shall constitute a separate offense.*

*3. Failure to keep records. Any employer or his agent, or the officer or agent of any corporation, who fails to keep the records required under this article or to furnish such records or any information required to be furnished under this article to the commis-*

*sioner or his authorized representative upon request, or who hinders or delays the commissioner or his authorized representative in the performance of his duties in the enforcement of this article, or refuses to admit the commissioner or his authorized representative to any place of employment, or falsifies any such records or refuses to make such records accessible to the commissioner or his authorized representative, or refuses to furnish a sworn statement of such records or any other information required for the proper enforcement of this article to the commissioner or his authorized representative, shall be guilty of a misdemeanor and upon conviction be punished by a fine of not less than fifty dollars nor more than five hundred dollars, and each day's failure to keep the records requested under this article or to furnish such records or information to the commissioner or his authorized representative shall constitute a separate offense.*

*§ 663. Civil action. 1. By employee. If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer to work for less than such wage shall be no defense to such action.*

*2. By commissioner. At the request of any employee paid less than the wage to which he is entitled under the provisions of this article, the commissioner may take an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to collect such claim, and the employer shall be required to pay the costs.*

*§ 664. Referrals by employment agencies. No employment agency shall place or attempt to place any employee in an occupation at less than the wage applicable to such occupation under this article.*

*The term "employment agency" as used in this section shall mean an employment agency as defined in section one hundred seventy-one of the general business law.*

*§ 665. Savings clause. If any provision of this article or the application thereof to any person, employer, occupation or circumstance is held invalid, the remainder of the article and the application of such provision to other persons, employees, occupations, or circumstances shall not be affected thereby.*

§ 3. Pending actions and proceedings. The enactment of this act shall not affect pending actions or proceedings, civil or criminal, but the same may be prosecuted or defended in the same manner and with the same effect as if this act had not been passed. Any investigation, examination, or proceeding undertaken or commenced or instituted by the commissioner, or persons designated by him, prior to the enactment of this act may be conducted and

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

continued to a final determination or conclusion in the same manner, and under the same terms and conditions, and with the same effect as though this act had not been passed.

Appropriates $40,000. § 4. Appropriation. The sum of forty thousand dollars ($40,-000), or so much thereof as may be necessary, is hereby appropriated for the fiscal year beginning April first, nineteen hundred sixty to the department of labor from any monies in the state treasury in the general fund to the credit of the state purposes fund, not otherwise appropriated, for the purposes set forth in this act, including personal service and travel in and outside the state and other necessary expenses, payable on the audit and warrant of the comptroller on vouchers certified or approved by the industrial commissioner in the manner prescribed by law.

§ 5. This act shall take effect immediately.

## CHAPTER 620

AN ACT to amend the education law, in relation to prior service credit for members of the New York state teachers' retirement system

Became a law April 18, 1960, with the approval of the Governor. Passed, by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Education Law, § 509, subd. 8, ¶ a, amended. Section 1. Paragraph a of subdivision eight of section five hundred nine of the education law, as last amended by chapter eight hundred seventeen of the laws of nineteen hundred fifty-two, is hereby amended to read as follows:

a. Notwithstanding anything to the contrary in this article, any member of the retirement system who is credited with at least fifteen years of teaching service rendered in the state and who has uncredited prior service may claim uncredited service pursuant to this subdivision by paying to the retirement board four per centum of the salaries earned for the years claimed, except that such payments shall not be required with respect to any part of such uncredited service rendered before the first day of August, nineteen hundred twenty-one, in the cases of those members who would be reclassified as "present teachers" as provided in paragraph b, of this subdivision. The amount due, if any, for such service shall be deposited with the retirement board accompanied by a duly executed application for [superannuation] retirement in accordance with the requirements of [section five hundred ten of] this article. The retirement board, upon verification of the claim and payment made, shall retire such member on the date stated in the application, which shall not be less than thirty days nor more than sixty days following receipt of such application.

§ 2. This act shall take effect immediately.

# EXHIBIT “3”

# THIRTEENTH OFFICIAL SUPPLEMENT

TO THE

OFFICIAL COMPILATION

OF

CODES, RULES AND REGULATIONS

OF THE

STATE OF NEW YORK

January 1, 1957 to December 31, 1958, Inclusive

CAROLINE K. SIMON
Secretary of State

VOLUME 1

1961

*I*

## DIVISION OF INDUSTRIAL RELATIONS, WOMEN IN INDUSTRY AND MINIMUM WAGE

Minimum Wage Order No. 1-c—Governing Minimum Wage Standards in the Laundry Industry and Occupations
A. Minimum Wage Standards
1. Minimum wage rates ... 1
2. Minimum weekly wage ... 1
3. Overtime ... 1
4. Minimum call-in pay ... 1
5. Uniforms ... 1
6. Allowances for meals and lodging ... 1
B. Regulations
1. Method of wage payment ... 1
2. No deductions ... 1
3. Diversified employment ... 1
4. Learner or apprentice rates ... 1
5. Required records ... 1
6. Statement to employee ... 1
7. Posting ... 1
C. Definitions
1. Industry ... 1
2. Employee ... 1
3. Working time ... 1
4. Voluntary absence ... 1
Effective date ... 1
Minimum Wage Order No. 2-c—Governing Minimum Wage Standards in the Beauty Service Industry
I. Minimum Wage Standards
1. Minimum wage rates ... 1
2. Exceptions to the minimum weekly wage ... 1
II. Regulations to Safeguard Minimum Wage Standards
1. Tips ... 1
2. Uniforms ... 1
3. Supplies and implements ... 1
4. Method of wage payment ... 1
5. Deductions ... 1
6. Diversified employment ... 1
7. Required records ... 1
8. Statement to employee ... 1
9. Posting ... 1
III. Definitions
1. Beauty service industry ... 1
2. Employee ... 1
3. Booth renter ... 1
4. Working time ... 1
5. Voluntary absence ... 1
Effective date ... 1
Minimum Wage Order No. 4-c—Governing Wage Standards in the Cleaning and Dyeing Industry
I. Minimum Wage Standards
1. Basic minimum hourly rate ... 1
2. Minimum weekly wage ... 1

Page

)F INDUSTRIAL RELATIONS, WOMEN IN DUSTRY AND MINIMUM WAGE

Order No. 1-c—Governing Minimum Wage in the Laundry Industry and Occupations
/age Standards
um wage rates ... 102
um weekly wage ... 102
me ... 102
um call-in pay ... 102
ms ... 102
inces for meals and lodging ... 102

d of wage payment ... 102
luctions ... 102
ified employment ... 102
er or apprentice rates ... 102
red records ... 102
nent to employee ... 102
g ... 102

ry ... 102
yee ... 102
ng time ... 102
tary absence ... 102
date ... 102
rder No. 2-c—Governing Minimum Wage Standards in the Beauty Service Industry
Wage Standards
num wage rates ... 102
itions to the minimum weekly wage ... 102
s to Safeguard Minimum Wage Standards
... 102
rms ... 102
ies and implements ... 102
od of wage payment ... 102
ctions ... 102
sified employment ... 102
ired records ... 102
ment to employee ... 102
ng ... 102
s
ty service industry ... 102
oyee ... 102
n renter ... 102
ing time ... 102
ntary absence ... 102
e date ... 102
Order No. 4-c—Governing Wage Standards in the and Dyeing Industry
Wage Standards
e minimum hourly rate ... 102
mum weekly wage ... 102



Page
3. Basic work week ... 1029
4. Overtime rate ... 1029
5. Part-time rate ... 1029
6. Wage rates for split-shift days ... 1029
7. Minimum daily rate ... 1030

II. Administrative Regulations
1. Required records ... 1030
2. Statement to employee ... 1030
3. Posting ... 1030
4. Method of wage payment ... 1030
5. No deductions ... 1030
6. Travel expenses ... 1030
7. Tips ... 1031
8. Diversified employment ... 1031
9. Furnishing and maintenance of required uniforms ... 1031
10. Allowances for meals and lodging ... 1031

III. Definitions
1. Cleaning and dyeing industry ... 1031
2. Employee ... 1032
3. Apprentices and learners ... 1032
4. Full-time employee ... 1032
5. Part-time employee ... 1032
6. Working time ... 1032
7. Voluntary absence ... 1032
8. Split shift ... 1032
Effective date ... 1032

Minimum Wage Order No. 5-c—Governing Minimum Wage Standards in the Restaurant Industry

A. Minimum Wage Standards
1. Basic full-time rates ... 1033
2. Part-time rates ... 1033
3. Overtime rates ... 1033
4. Additional rate for split shift and spread of hours ... 1033
5. Minimum call-in pay ... 1034

B. Regulations
1. Tips ... 1034
2. Furnishing and maintenance of required uniforms ... 1034
3. Meals ... 1034
4. Allowance for lodging ... 1034
5. No deductions ... 1034
6. Travel expense ... 1034
7. Learner or apprentice rates ... 1034
8. Diversified employment ... 1035
9. Required records ... 1035
10. Statement to employee ... 1035
11. Posting ... 1035

C. Definitions
1. Restaurant industry ... 1035
2. Employee ... 1036
3. Service employee ... 1036
4. Non-service employee ... 1036
5. Working time ... 1036

Page

6. Voluntary absence ..... 1036
Effective date ..... 1036

Minimum Wage Order No. 6-d—Governing Minimum Wage Standards in the Hotel Industry

1. Minimum wage standards—all-year hotels
   a. Nonresidential employees ..... 1036
   b. Residential employees ..... 1038
2. Regulations to safeguard minimum wage standards—all-year hotels—all employees except as otherwise provided
   a. Uniforms ..... 1038
   b. Lodging and meals ..... 1039
   c. Travel time and expense ..... 1039
3. Minimum wage standards—resort hotels
   a. Minimum full-time weekly rate ..... 1039
   b. Exception to weekly rate ..... 1039
   c. Part-time hourly rate ..... 1040
   d. Overtime rate ..... 1040
   e. Minimum daily rate ..... 1040
   f. Rate for waiting time ..... 1040
4. Regulations to safeguard minimum wage standards—resort hotels—all employees except as otherwise provided
   a. Uniforms ..... 1040
   b. Lodging and meals ..... 1040
5. Regulations to safeguard minimum wage standards in all-year and resort hotels
   a. Gratuities ..... 1041
   b. Deductions ..... 1041
   c. Apprentices and learners ..... 1041
   d. Handicapped workers ..... 1041
   e. Diversified employment ..... 1041
   f. Employment under other minimum wage orders ..... 1041
6. Administrative regulations—all-year and resort hotels
   a. Statement to employee ..... 1041
   b. Records ..... 1041
   c. Posting ..... 1042
7. Definitions
   a. Hotel industry ..... 1042
   b. Employee ..... 1042
   c. Minors ..... 1043
   d. Chambermaid ..... 1043
   e. Service employee ..... 1043
   f. Non-service employee ..... 1044
   g. Camp counselor ..... 1044
   h. Residential employee ..... 1044
   i. Working time ..... 1044
   j. Split shift ..... 1044
   k. Spread of hours ..... 1044
   l. Uniform ..... 1044
   m. Meal ..... 1044
   n. Lodging ..... 1045
   o. Diversified employment ..... 1045
   p. Voluntary absence ..... 1045
Effective date ..... 1045

CONTENTS

Page
y absence .......... 1036
e .......... 1036
r No. 6-d—Governing Minimum Wage Stand-
Industry
standards—all-year hotels
ntial employees .......... 1036
l employees .......... 1038
afeguard minimum wage standards—all-year
employees except as otherwise provided
.......... 1038
nd meals .......... 1039
e and expense .......... 1039
standards—resort hotels
full-time weekly rate .......... 1039
to weekly rate .......... 1039
hourly rate .......... 1040
rate .......... 1040
daily rate .......... 1040
waiting time .......... 1040
safeguard minimum wage standards—resort
employees except as otherwise provided
.......... 1040
nd meals .......... 1040
afeguard minimum wage standards in all-year
hotels
.......... 1041
s .......... 1041
es and learners .......... 1041
ed workers .......... 1041
l employment .......... 1041
nt under other minimum wage orders .......... 1041
regulations—all-year and resort hotels
to employee .......... 1041
.......... 1041
.......... 1042
ustry .......... 1042
.......... 1042
.......... 1043
naid .......... 1043
nployee .......... 1043
ce employee .......... 1044
nselor .......... 1044
al employee .......... 1044
time .......... 1044
t .......... 1044
hours .......... 1044
.......... 1044
.......... 1044
.......... 1045
d employment .......... 1045
absence .......... 1045
e .......... 1045



Page

Minimum Wage Order No. 6-e—Governing Minimum Wage Standards in the Hotel Industry
1. Minimum wage standard—all year hotels
 a. Nonresidential employees .......... 1045
 b. Residential employees .......... 1046
2. Regulations to safeguard minimum wage standards—all year hotels—all employees—except as otherwise provided
 a. Uniforms .......... 1047
 b. Lodging and meals .......... 1047
 c. Travel time and expense .......... 1047
3. Minimum wage standards—resort hotels
 a. Minimum full-time weekly rate .......... 1047
 b. Exception to weekly rate .......... 1048
 c. Part-time hourly rate .......... 1048
 d. Overtime rate .......... 1048
 e. Minimum daily rate .......... 1048
 f. Rate for waiting time .......... 1048
4. Regulations to safeguard minimum wage standards—resort hotels—all employees—except as otherwise provided
 a. Uniforms .......... 1049
 b. Lodging and meals .......... 1049
5. Regulations to safeguard minimum wage standards in all-year and resort hotels—all employees
 a. Gratuities .......... 1049
 b. Deductions .......... 1049
 c. Apprentices and learners .......... 1049
 d. Handicapped workers .......... 1049
 e. Diversified employment .......... 1049
 f. Employment under other minimum wage orders .......... 1049
6. Administrative regulations—all-year hotels and resort hotels
 a. Statement to employee .......... 1050
 b. Records .......... 1050
 c. Posting .......... 1050
7. Definitions
 a. Hotel industry .......... 1050
 b. Employee .......... 1051
 c. Minors .......... 1052
 d. Chambermaid .......... 1052
 e. Service employee .......... 1052
 f. Non-service employee .......... 1052
 g. Camp counsellor .......... 1052
 h. Residential employee .......... 1052
 i. Working time .......... 1052
 j. Split shift .......... 1052
 k. Spread of hours .......... 1052
 l. Uniform .......... 1052
 m. Meal .......... 1053
 n. Lodging .......... 1053
 o. Diversified employment .......... 1053
 p. Voluntary absence .......... 1053
 Effective date .......... 1053

Case: 26-1130, 08/28/2026, DktEntry: 37.1, (88 of 108)
Case 1:24-cv-07563-LDH-JAM Document 29-7 Filed 09/12/25 Page 50 of 135 PageID #: 315



Page

Minimum Wage Order No. 7-b—Governing Minimum Wage Standards in the Retail Trade Industry
1. Minimum wage standards
a. Zones ........ 1053
b. Minimum wage rates ........ 1053
2. Regulations to safeguard minimum wage standards
a. Voluntary absence ........ 1054
b. Required uniforms ........ 1054
c. Payment of wages ........ 1054
d. Allowances for meals and lodging ........ 1054
e. Travel expenses ........ 1054
f. Deductions ........ 1054
g. Tips ........ 1055
h. Diversified employment ........ 1055
i. Learner of apprentice rates ........ 1055
3. Administrative regulations
a. Required records ........ 1055
b. Statement to employee ........ 1055
c. Posting ........ 1055
4. Definitions
a. Industry ........ 1055
b. Employee ........ 1055
c. Working time ........ 1056
d. Voluntary absence ........ 1056
e. Split shift ........ 1056
f. Spread of hours ........ 1056
g. Required uniform ........ 1056
Effective date ........ 1056

Minimum Wage Order No. 8-a—Governing Minimum Wage Standards in the Amusement and Recreation Industry
1. Minimum wage standards
a. Minimum hourly rate ........ 1056
b. Minimum call-in pay ........ 1057
c. Additional rate for spread of hours ........ 1057
2. Regulations
a. Uniforms ........ 1057
b. Lodging and meals ........ 1057
c. Travel expenses ........ 1057
d. Wage payment ........ 1057
e. No deductions ........ 1057
f. Tips ........ 1058
g. Diversified employment ........ 1058
h. Learner or apprentice rates ........ 1058
i. Required records ........ 1058
j. Statement to employee ........ 1058
k. Posting ........ 1058
3. Definitions
a. Amusement and recreation industry ........ 1058
b. Employee ........ 1059
c. Working time ........ 1059
d. Motion-picture service staff employee ........ 1059
Effective date ........ 1059

lule *supersedes the schedule heretofore established* ruary 1, 1957, *and is applicable in new cases arising* i and after March 1, 1959. *The appropriate provi-* dical fee schedule shall continue to be effective in

8

ANGELA R. PARISI
*Chairman*
Workmen's Compensation Board

## dule for Podiatry Treatment and Care the Volunteer Firemen's Benefit Law

1957; effective March 1, 1957; filed February ry authority §§16, 57 and 58, Volunteer Firemen's Benefit Law.)

ORDER OF THE CHAIRMAN

ority vested in me by sections 16, 57 and 58 of s Benefit Law, I, Angela R. Parisi, chairman of sation Board, hereby **establish** as the *Podiatry y treatment and care rendered under the Volun- aw,* the schedule of fees for podiatry treatment kmen's Compensation Law* of the state of New chairman and filed in the office of the secretary 953.

ffect on March 1, 1957.

ANGELA R. PARISI
*Chairman*
Workmen's Compensation Board

lement.



# DIVISION OF INDUSTRIAL RELATIONS, WOMEN IN INDUSTRY AND MINIMUM WAGE

## Minimum Wage Order No. 1-c—Governing Minimum Wage Standards in the Laundry Industry and Occupations

(Adopted February 14, 1957; effective April 15, 1957; filed February 20, 1957. Statutory authority article 19, Labor Law.)

### A. Minimum Wage Standards

**1. Minimum wage rates.**

a. *Full-time employees.* Basic minimum hourly rate for full-time employees—90 cents from the date the order is promulgated; $1 on October 1, 1958.

A full-time employee is one who works more than 30 hours per week.

b. *Part-time employees.* Basic minimum hourly rate for part-time employees—95 cents from the date the order is promulgated; $1.05 on October 1, 1958.

A part-time employee is one who works less than and up to 30 hours per week.

**2. Minimum weekly wage.** a. Basic minimum weekly wage for a full-time employee—$33.60 on promulgation of the order; and $37.33 on and after October 1, 1958.

b. In no event shall an employee be paid less than his or her actual earnings if such hourly earnings exceed the minimum weekly guarantee.

*Exceptions to minimum weekly wage.* The obligation to pay the guaranteed wages in accordance with the foregoing rules shall not apply in the following cases:

(a) *Voluntary absence.* An employee, in case of voluntary absence in any week, whose normal working time is more than 30 hours, shall be paid at the rate of not less than the basic minimum hourly rate of 90 cents on promulgation of the order and $1 on and after October 1, 1958 for the number of hours of working time.

(b) *Total stoppage.* The minimum weekly wage need not be paid to an employee in any week in which there is a total stoppage of the whole plant in excess of six hours in a day because of a legal holiday, riot, general breakdown or act of God. In such event, employees shall be paid not less than the basic minimum hourly rate for the number of hours of working time.

(c) *New employee.* The minimum weekly wage need not be paid to an employee during the first week of employment if hired after the beginning of the week or dismissed as unsatisfactory before the end of the week. Such new employee shall be paid not less than the basic minimum hourly rate for the number of hours of working time.

**3. Overtime.** Overtime shall begin after the 40th hour in each week. The overtime rate per hour for full-time employees follows:

| | |
|---|---|
| On promulgation of order | $1.35 |
| On and after October 1, 1958 | 1.50 |

**4. Minimum call-in pay.** An employee who by request or permission of the employer reports for duty on any day shall be paid for at least four hours at the applicable minimum wage. Students who regularly attend a

full-time school are exempt from this provision on days when school is in session.

**5. Uniforms.** a. Where uniforms are required by the employer, the actual cost of the uniform shall be shared equally by the employer and employee. The employer shall launder such uniforms without charge to the employees.

b. A "required uniform" shall include any item of clothing, decoration or ornament that an employee wears at work at the suggestion, request, or direction of the employer or his agent, or to comply with any state, city or local law, rule or regulation, and which is not ordinarily worn by a person as part of a normal wardrobe.

**6. Allowances for meals and lodging.** a. Meals and lodging actually furnished by an employer to an employee may be considered a part of the minimum wage, but shall be valued at not more than:

Meals—25 cents per meal, $5.25 per week
Lodging—40 cents per day, $2.50 per week
Meals and lodging—$7.75 per week

b. A "meal" shall provide adequate portions of a variety of wholesome, nutritious foods and shall include at least one of the types of foods from all four of the following groups: (1) fruits or vegetables; (2) cereals, bread or potatoes; (3) eggs, meat, fish or poultry; or (4) milk, tea or coffee, except that for breakfast, group (3) may be omitted if both cereal and bread are offered in group (2).

### B. Regulations

**1. Method of wage payment.** Each employee shall be paid for each week not less than the applicable minimum wage, regardless of the basis of payment, whether commission, bonus, piece rate, or any other basis.

**2. No deductions.** The minimum wage of employees shall be subject to no deductions other than those authorized or required by law.

**3. Diversified employment.** a. An employee in the laundry industry who works at an occupation governed by another New York State minimum wage order

(1) for one hour or more during any one day; or
(2) for six or more hours in any one week

shall be paid for all his hours of working time for that day or week at the rates contained in the minimum wage order for such other industry or the laundry industry, whichever is greater. Such employee shall be entitled to all of the benefits under any minimum wage order of either the laundry industry or the other applicable industry covering the said date period, whichever is greater.

b. An employee in the laundry industry who works in any week solely at an occupation or in an industry governed by another New York State minimum wage order shall be covered by such order for such week.

**4. Learner or apprentice rates.** Learners and apprentices shall be paid at not less than the minimum wage herein provided.

**5. Required records.** a. Every employer subject to this order shall establish, maintain, and make available for inspection at the place of employment for not less than two years, daily and weekly payroll records which shall include for each employee: name, address, social security account number, and age of males under 21, cash wages paid, the value of any additions to cash earnings, and daily and weekly hours worked.

b. Each employ
records as may be
or income.
c. Time cards, t
be kept for at leas
**6. Statement to**
furnish a stateme
of wages listing h
**7. Posting.** A
forth the provisic
establishment in
ployees can read

**1. Industry.**
a. The wash
ironing, press
b. The solic
retail of the a
c. The enga
above for thei
except where
a commodity;
d. All occu
dental to the
The term "la
ettes and auton
try *and occupa*
solely in conn
institutions or
part of the ne
shareholder or
**2. Employe**
and any persor
(Pursuant to
visions of a r
and over.)
**3. Working**
mitted attend
vided, and tir
**4. Volunta**
work not dire
by the employ
untary absen
ment contrac
at the directi
or periodic s
doctor's care
**Effective**
* a. and b., ou

this provision on days when school is

rms are required by the employer, the be shared equally by the employer and nder such uniforms without charge to

nclude any item of clothing, decoration, rs at work at the suggestion, request, is agent, or to comply with any state, 1, and which is not ordinarily worn by obe.

dging. a. Meals and lodging actually ployee may be considered a part of the l at not more than:

r meal, $5.25 per week
per day, $2.50 per week
$7.75 per week

te portions of a variety of wholesome, t least one of the types of foods from 1) fruits or vegetables; (2) cereals, fish or poultry; or (4) milk, tea or oup (3) may be omitted if both cereal

ulations

ach employee shall be paid for each inimum wage, regardless of the basis onus, piece rate, or any other basis. wage of employees shall be subject thorized or required by law.

n employee in the laundry industry d by another New York State mini-

during any one day; or
in any one week

rking time for that day or week at wage order for such other industry is greater. Such employee shall be any minimum wage order of either plicable industry covering the said

stry who works in any week solely verned by another New York State by such order for such week.

Learners and apprentices shall be ge herein provided.

ployer subject to this order shall ble for inspection at the place of s, daily and weekly payroll records ee: name, address, social security r 21, cash wages paid, the value of ily and weekly hours worked.



b. Each employer shall also make available for inspection such other records as may be kept by the employer to determine the employee's wages or income.

c. Time cards, time sheets, and other original time records, if any, shall be kept for at least two years and be made available for inspection.

**6. Statement to employee.** Every employer subject to this order shall furnish a statement to each of his employees with every weekly payment of wages listing hours worked, rates paid, and total earnings.

**7. Posting.** A notice issued by the Department of Labor, setting forth the provisions and regulations of this order, shall be posted in every establishment in the laundry industry in a conspicuous place where employees can read it.

### C. Definitions

**1. Industry.** The term *"laundry industry and occupations"* includes:

a. The washing of fabrics or textiles of any kind whatsoever and the ironing, pressing, repairing or processing incidental to such washing;

b. The soliciting, collection, distribution or rental at wholesale or retail of the articles so processed;

c. The engaging in any of the processes mentioned in (a)* or (b)* above for their own use by business establishments, clubs or institutions except where the processing is incidental to the manufacture or sale of a commodity;

d. All occupations, operations and services in connection with or incidental to the processes mentioned above.

The term *"laundry industry and occupations"* shall also include launderettes and automatic and coin-operated laundries. The term *"laundry industry and occupations"* excludes laundries owned, and operated and used solely in connection with religious or charitable activities by nonprofit institutions organized exclusively for religious or charitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

**2. Employee.** *"Employee"* means a women 21 years of age and over, and any person under the age of 21 years employed in the laundry industry. (Pursuant to section 663-a of article 19 of the Labor Law all of the provisions of a minimum wage order apply also to males 21 years of age and over.)

**3. Working time.** *"Working time"* means time worked or time of permitted attendance, including waiting time, whether or not work is provided, and time spent in traveling as part of the duties of the employee.

**4. Voluntary absence.** *"Voluntary absence"* includes any absence from work not directed by the employer or his agent and not designed or planned by the employer or the employee to evade minimum wage standards. "Voluntary absence" does not include any absence contemplated in the employment contract; or incurred as a condition of continued employment; or at the direction or suggestion of the employer or his agent; or recurrent or periodic absence, except such absence for medical treatment under a doctor's care.

**Effective date.** This order shall take effect April 15, 1957.

*a. and b., our designations.

## Minimum Wage Order No. 2-c—Governing Minimum Wage Standards in the Beauty Service Industry

(Adopted November 7, 1957; effective January 6, 1958; filed November 8, 1957. Statutory authority article 19, Labor Law.)

### I. Minimum Wage Standards

**1. Minimum wage rates.**

a. *All employees except maids, cleaning women, and porters.*

(1) Minimum full-time hourly rate—$1.05.

A full-time employee is one who works more than 28 hours a week.

At least the minimum full-time hourly rate shall be paid whenever the minimum part-time hourly rate, the minimum weekly wage, the minimum overtime rate, or minimum call-in pay is not required to be paid.

(2) Minimum part-time hourly rate—$1.35.

A part-time employee is one whose total working time is 28 hours or less in any week.

(3) Minimum weekly wage—$42.

For each week in which an employee's working time is more than 28 hours, but not more than 40 hours (except in cases of voluntary absence.)

(4) Minimum overtime hourly rate—$1.58 after 40 hours.

The minimum overtime hourly rate is one and one-half times the minimum full-time hourly rate.

(5) Minimum call-in pay for part-time employees.

A part-time employee who, by request or permission of the employer, reports for duty on any day shall be paid for at least four hours for that day, at the applicable minimum wage rate.

b. *Maids, cleaning women, and porters.* Rate—$1.05 per hour.

**2. Exceptions to the minimum weekly wage.**

a. *Voluntary absence.* Any full-time employee who is voluntarily absent from her full-time assigned work schedule shall be paid not less than the full-time basic minimum hourly rate for each hour of working time.

b. The minimum weekly wage shall not be required to be paid in any week in which there is a total stoppage of business in excess of six hours in a day because of a legal holiday, riot, general breakdown or act of God. In such event, full-time employees shall be paid not less than the full-time basic minimum hourly rate for each hour of working time.

c. Upon the hiring of a new full-time employee, during the first week of employment the minimum weekly wage shall not be required to be paid to such new employee who was hired after the beginning of the week, or dismissed as unsatisfactory before the end of the week. But such new employee shall be paid not less than the full-time basic minimum hourly rate for each hour of working time.

### II. Regulations to Safeguard Minimum Wage Standards

**1. Tips.** Tips or gratuities shall not be counted as part of the minimum wage.

**2. Uniforms.** a. If a required uniform is sold by the employer to the employee, the charge therefor may not exceed the actual cost to the employer, and the deduction from the employee's wages, in any one week, may not exceed the amount of earned wage over and above the minimum weekly rate.

Case: 26-1130, 08/28/2026, DktEntry: 37.1, (93 of 108)
Case 1:24-cv-07563-LDH-JAM Document 29-7 Filed 09/12/25 Page 55 of 135 PageID #: 320



**r No. 2-c—Covering Minimum Wage the Beauty Service Industry**

7, 1957; effective January 6, 1958; filed
tutory authority article 19, Labor Law.)

**nimum Wage Standards**

*maids, cleaning women, and porters.*
e hourly rate—$1.05.
one who works more than 28 hours a week.
full-time hourly rate shall be paid whenever
hourly rate, the minimum weekly wage, the
or minimum call-in pay is not required to be

e hourly rate—$1.35.
is one whose total working time is 28 hours

age—$42.
an employee's working time is more than 28
0 hours (except in cases of voluntary absence.)
hourly rate—$1.58 after 40 hours.
hourly rate is one and one-half times the
rate.
y for part-time employees.
ho, by request or permission of the employer,
ay shall be paid for at least four hours for
minimum wage rate.
*and porters.* Rate—$1.05 per hour.
**mum weekly wage.**
full-time employee who is voluntarily absent
vork schedule shall be paid not less than the
ly rate for each hour of working time.
age shall not be required to be paid in any
l stoppage of business in excess of six hours
liday, riot, general breakdown or act of God.
yees shall be paid not less than the full-time
r each hour of working time.
w full-time employee, during the first week
weekly wage shall not be required to be paid
s hired after the beginning of the week, or
efore the end of the week. But such new
s than the full-time basic minimum hourly
time.

**eguard Minimum Wage Standards**

s shall not be counted as part of the mini-

red uniform is sold by the employer to the
r may not exceed the actual cost to the
om the employee's wages, in any one week,
earned wage over and above the minimum



b. A *"required uniform"* shall include any item of clothing, decoration, or ornament that an employee wears at work at the suggestion, request, or direction of the employer or his agent, or to comply with any state, city, or local law, rule, or regulation, and which is not ordinarily worn by a person as part of a normal wardrobe.

**3. Supplies and implements.** The employer shall furnish to the employee cosmetics and supplies, including but not limited to emery boards, orangewood sticks, combs, hairbrushes, nets, permanent wave rods and protectors, and linens.

**4. Method of wage payment.** Each employee shall be paid for each week not less than the applicable minimum wage, regardless of the basis of payment, whether commission, bonus, piece rate, or any other basis.

**5. Deductions.** The minimum wage of employees shall be subject to no deductions other than those authorized or required by law.

**6. Diversified employment.**

a. An employee in the beauty service industry who works for the same employer at an occupation governed by another New York State minimum wage order

(1) for one hour or more during any one day, or
(2) for six or more hours in any one week

shall be paid for all his hours of working time for that day or week at the rates contained in the minimum wage order for such other industry or the beauty service industry, whichever is greater. Such employee shall be entitled to all of the benefits under any minimum wage order of either the beauty service industry or the other applicable industry covering the said date period, whichever is greater.

b. An employee in the beauty service industry who works in any week solely at an occupation or in an industry governed by another New York State minimum wage order shall be covered by such order for such week.

**7. Required records.** Every employer subject to this order shall establish, maintain, and make available for inspection at the place of employment for not less than two years, weekly payroll records which shall include for each employee: name, address, social security account number, and age of males under 21, occupational classification, cash wages paid, the gross and net amount of wages, the value of any additions to cash wages, and daily and weekly hours worked. Time cards, time sheets, and other original time records, if any, shall be kept for at least two years and be made available for inspection.

**8. Statement to employee.** Every employer subject to this order shall furnish a statement to each of his employees with every weekly payment of wages listing hours worked, rates paid, and total earnings.

**9. Posting.** A notice issued by the Department of Labor, setting forth the provisions and regulations of this order, shall be posted at all times in every establishment in the beauty service industry in a conspicuous place where employees can read it.

**III. Definitions**

**1. Beauty service industry.** The term *"beauty service industry"* shall include all establishments which perform services or operations in the care, cleansing or beautification of the skin, scalp, nails or hair, or in the enhancement of personal appearance, and also services or operations in connection therewith or incidental thereto. All occupations including but not limited to maids, cloakroom attendants, cleaning women, cashiers, receptionists, appointment clerks and clerical workers are covered by this

definition. Barbers, manicurists and other workers in barber shops which perform services primarily for men are excluded.

**2. Employee.** a. "*Employee*" means a woman 21 years of age and over, and any person under the age of 21 employed in the beauty service industry. (Pursuant to section 663-a of article 19 of the Labor Law all of the provisions of a minimum wage order apply also to males 21 years of age and over.)

b. A bona fide booth renter shall not be deemed an employee.

**3. Booth renter.** A "*booth renter*" is one who leases or rents space in an establishment or shop and who, in fact, operates as an owner or an independent contractor. If one or more of the following conditions exist, such person shall be deemed an employee and not a booth renter:

(a) The employer, landlord, or his agent receives fees from customers for the services of such woman or minor, even though such fees be returned in whole or in part to the woman or minor.

(b) The employer, landlord, or his agent exercises control over the general conduct, working hours, method of work, prices charged for service.

(c) The woman or minor is held out to customers or to the public as an employee, through advertising, signs, verbal statements or otherwise.

(d) The employer, landlord, or his agent, supplies such woman or minor with cosmetics, soaps, lotions, pins, linens, instruments, tools, machinery supplies or other equipment.

**4. Working time.** "*Working time*" means time worked or time of permitted attendance, including waiting time, whether or not work is provided, and time spent in traveling as part of the duties of the employee.

**5. Voluntary absence.** "*Voluntary absence*" includes any absence from work not directed by the employer or his agent and not designed or planned by the employer or the employee to evade minimum wage standards. "Voluntary absence" does not include any absence contemplated in the employment contract, or incurred as a condition of continued employment, or at the direction or suggestion of the employer or his agent, or recurrent or periodic absence, except such absence for medical treatment under a doctor's care.

**Effective date.** This order shall take effect January 6, 1958.

## Minimum Wage Order No. 4-c—Governing Minimum Wage Standards in the Cleaning and Dyeing Industry

(Adopted February 14, 1957; effective April 15, 1957; filed February 20, 1957. Statutory authority article 19, Labor Law.)

### I. Minimum Wage Standards

**1. Basic minimum hourly rate.** a. The basic minimum hourly rate shall be not less than

90 cents an hour for all employees until September 30, 1958 (no apprentice and learner rate permitted);

$1 an hour for all employees other than apprentices and learners beginning October 1, 1958;

95 cents an hour for apprentices and learners beginning October 1, 1958 until September 30, 1959. No apprentice and learner rate shall be permitted after September 30, 1959.

ırists and other workers in barber shops which
r for men are excluded.

oyee" means a woman 21 years of age and over,
age of 21 employed in the beauty service indus-
663-a of article 19 of the Labor Law all of the
wage order apply also to males 21 years of age

ter shall not be deemed an employee.

ooth renter" is one who leases or rents space
p and who, in fact, operates as an owner or an
one or more of the following conditions exist,
d an employee and not a booth renter:

dlord, or his agent receives fees from customers
ı woman or minor, even though such fees be
part to the woman or minor.

ıdlord, or his agent exercises control over the
g hours, method of work, prices charged for

ıor is held out to customers or to the public as
ertising, signs, verbal statements or otherwise.
ıdlord, or his agent, supplies such woman or
oaps, lotions, pins, linens, instruments, tools,
her equipment.

'king time" means time worked or time of per-
g waiting time, whether or not work is pro-
veling as part of the duties of the employee.

'Voluntary absence" includes any absence from
ployer or his agent and not designed or planned
nployee to evade minimum wage standards.
not include any absence contemplated in the
urred as a condition of continued employment,
estion of the employer or his agent, or recur-
cept such absence for medical treatment under

er shall take effect January 6, 1958.

## No. 4-c—Governing Minimum Wage Cleaning and Dyeing Industry

ı, 1957; effective April 15, 1957; filed
tutory authority article 19, Labor Law.)

imum Wage Standards

r rate. a. The basic minimum hourly rate

r all employees until September 30, 1958 (no
learner rate permitted);
nployees other than apprentices and learners
ber 1, 1958;
apprentices and learners beginning October
ptember 30, 1959. No apprentice and learner
mitted after September 30, 1959.



b. At least the basic minimum hourly rate shall be paid whenever the minimum weekly wage, part-time rate or overtime rate are not required by the provisions below.

**2. Minimum weekly wage.** The minimum weekly wage for each week in which the working time is not less than 24 hours but not more than 30 hours shall be except as hereinafter provided:

$27 for all employees until September 30, 1958;
$30 for all employees other than apprentices and learners beginning October 1, 1958;
$28.50 for apprentices and learners beginning October 1, 1958 until September 30, 1959.

*Exceptions to the minimum weekly wage.*

a. *Voluntary absence.* An employee assigned to work 24 or more hours in any week who is voluntarily absent in such week shall be paid not less than the applicable basic minimum hourly rate for the number of hours of working time.

b. *New employee.* The minimum weekly wage need not be paid to any new employee never heretofore employed until such new employee shall have completed one calendar week of work, irrespective of the number of hours worked in such first week. Such new employee shall be paid not less than the applicable basic minimum hourly rate for the number of hours of working time.

c. *Total stoppage.* The minimum weekly wage need not be paid to an employee in any week in which there is a total stoppage of the whole plant in excess of six hours in a day because of a legal holiday, riot, general breakdown, storm, act of God, or any other act that is not the fault of the employer. In such event, employees shall be paid not less than the applicable basic minimum hourly rate for the number of hours of working time.

d. Any minor whose hours are limited by law to fewer than 30 hours a week. Such minor shall be paid not less than the applicable basic minimum hourly rate for the number of hours of working time. In no event shall such minor's earnings for working time of 24 or more hours in any week be less than the maximum amount that may be earned at the applicable part-time rate for working time of less than 24 hours in any week.

**3. Basic work week.** 40 hours per week.

**4. Overtime rate.** The minimum overtime hourly rate for all hours exceeding 40 hours in any week shall be time and a half of the basic minimum hourly rate as follows:

$1.35 an hour for all employees until September 30, 1958;
$1.50 an hour for all employees other than apprentices and learners beginning October 1, 1958;
$1.42½ an hour for apprentices and learners beginning October 1, 1958 until September 30, 1959.

**5. Part-time rate.** The minimum hourly rate for part-time employees for working time of less than 24 hours in any week shall be

95 cents an hour for all employees until September 30, 1958;
$1.05 an hour for all employees other than apprentices and learners beginning October 1, 1958;
$1 an hour for apprentices and learners beginning October 1, 1958 until September 30, 1959.

**6. Wage rates for split-shift days.** Time and a half of the applicable

basic minimum hourly wage for each hour of work on any day in which there is a split shift. The rate shall be

$1.35 an hour for all employees until September 30, 1958;
$1.50 an hour for all employees other than apprentices and learners beginning October 1, 1958;
$1.42½ an hour for apprentices and learners beginning October 1, 1958 until September 30, 1959.

**7. Minimum daily rate.** a. Any employee, except as hereinafter provided, who by request or permission of the employer, reports for duty on any day shall be paid for at least four hours at the applicable minimum wage rate for any period of four hours or less of attendance whether or not such employee is assigned to actual work.

b. Any student other than a delivery boy who regularly attends a full-time school shall be paid for at least three hours at the applicable minimum wage rate on any day when school is in session.

c. A delivery boy who regularly attends a full-time school need not be paid a minimum daily wage but shall be paid not less than the applicable minimum wage rate for the number of hours worked on any day when school is in session.

d. The minimum daily wage shall not apply to the first day of employment of a worker never theretofore employed by the employer.

### II. Administrative Regulations

**1. Required records.** a. Every employer subject to this order shall establish, maintain, and make available for inspection at the place of employment for not less than two years, daily and weekly payroll records which shall include for each employee: name, address, social security account number, ages of males under 21, and the exact time of arrival and departure of each employee working a split shift.

b. Each employer shall also make available for inspection such other records as may be kept by the employer to determine the employee's wages or income.

c. Time cards, time sheets, and other original time records, if any, shall be kept for at least two years and be made available for inspection.

d. The employer shall, on demand, submit a sworn statement of such records to the commissioner or his representative, together with such information as the commissioner may, in his discretion, deem material and necessary.

**2. Statement to employee.** Every employer subject to this order shall furnish a statement to each of his employees with every weekly payment of wages listing hours worked, rates paid, and total earnings.

**3. Posting.** A notice issued by the Department of Labor, setting forth a summary of the provisions and regulations of this order, shall be posted in every establishment in the cleaning and dyeing industry in a conspicuous place where employees can read it.

**4. Method of wage payment.** Each employee shall be paid for each week not less than the applicable minimum wage, regardless of the basis of payment, whether commission, bonus, piece rate, or any other basis.

**5. No deductions.** The minimum wage of employees shall be subject to no deductions other than those authorized or required by law.

**6. Travel expenses.** An employee who is required by the employer to travel as part of his duties shall be reimbursed for actual travel expenses incurred.

'e for each hour of work on any day in which
ate shall be

all employees until September 30, 1958;
ill employees other than apprentices and learn-
October 1, 1958;
or apprentices and learners beginning October
eptember 30, 1959.

a. Any employee, except as hereinafter pro-
rmission of the employer, reports for duty on
t least four hours at the applicable minimum
' four hours or less of attendance whether or
ed to actual work.
a delivery boy who regularly attends a full-
at least three hours at the applicable minimum
chool is in session.
ularly attends a full-time school need not be
but shall be paid not less than the applicable
: number of hours worked on any day when

ge shall not apply to the first day of employ-
etofore employed by the employer.

**inistrative Regulations**

Every employer subject to this order shall
ke available for inspection at the place of
two years, daily and weekly payroll records
h employee: name, address, social security
s under 21, and the exact time of arrival and
orking a split shift.
o make available for inspection such other
employer to determine the employee's wages

and other original time records, if any, shall
and be made available for inspection.
lemand, submit a sworn statement of such
r his representative, together with such in-
r may, in his discretion, deem material and

Every employer subject to this order shall
f his employees with every weekly payment
, rates paid, and total earnings.
ed by the Department of Labor, setting
ions and regulations of this order, shall be
in the cleaning and dyeing industry in a
yees can read it.
t. Each employee shall be paid for each
ble minimum wage, regardless of the basis
on, bonus, piece rate, or any other basis.
imum wage of employees shall be subject
se authorized or required by law.
nployee who is required by the employer
all be reimbursed for actual travel expenses



**7. Tips.** Tips or gratuities shall not be counted as part of the minimum wage.

**8. Diversified employment.** a. An employee in the cleaning and dyeing industry who works for the same employer at an occupation governed by another New York State minimum wage order

(1) for one hour or more during any one day,
(2) for six or more hours in any one week.

shall be paid for all his hours of working time for that day or week at the rates contained in the minimum wage order for such other industry or the cleaning and dyeing industry, whichever is greater.

b. An employee in the cleaning and dyeing industry who works in any work solely at an occupation or in an industry governed by another New York State minimum wage order shall be covered by such order for such week.

**9. Furnishing and maintenance of required uniforms.** a. The employer shall supply the first required uniform and the first replacement required after each two-year period. Where an employee purchases a required uniform, he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages.

b. The employer shall maintain and launder required uniforms. Where the employer does not provide for the laundering or maintenance of any employee's required uniform, he shall pay such an employee $1.50 per week if he works more than 30 hours weekly or $1 per week if he works 30 hours or less per week, in addition to the minimum wage prescribed therein.

c. A "*required uniform*" shall include any item of clothing, decoration, or ornament that an employee wears at work at the suggestion, request, or direction of the employer or his agent, or to comply with any state, city, or local law, rule or regulation, and which is not ordinarily worn by a person as part of a normal wardrobe.

**10. Allowances for meals and lodging.** Meals and lodging actually furnished by an employer to an employee may be considered a part of the minimum wage, but shall be valued at not more than:

Meals—25 cents per meal, $5.25 per week.
Lodging—40 cents per day, $2.50 per week.
Meals and lodging—$7.75 per week.

A "meal" shall provide adequate portions of a variety of wholesome, nutritious foods and shall include at least one of the types of foods from all four of the following groups: (1) fruits or vegetables; (2) cereals, bread or potatoes; (3) eggs, meat, fish or poultry; or (4) milk, tea or coffee, except that for breakfast, group (3) may be omitted if both cereal and bread are offered in group (2).

## III. Definitions

**1. Cleaning and dyeing industry.** a. All types of cleaning, dyeing, pressing, or processing incidental thereto including mending and altering in connection therewith, of materials belonging to the ultimate consumer, i.e., clothing, hats, household furnishing*, rugs, textiles, furs, leather, upholstered goods, or fabrics of any kind whatsoever;

b. The soliciting, collecting, selling, reselling, or distributing at retail or wholesale of cleaning, dyeing, and pressing services;

c. All office, clerical, packing or other occupations (including plant

*So in original. Apparently should be "furnishings".

maintenance) incidental or related to the processes described in subdivision a. and b. above.

d. Cleaning, dyeing or pressing when a process in the manufacture of new materials or of second-hand materials being processed for resale shall be excluded, as well as establishments insofar as they are covered by the minimum wage order governing laundry occupations.

**2. Employee.** *"Employee"* means a woman 21 years of age and over, and any person under the age of 21 years employed in the cleaning and dyeing industry. (Pursuant to section 663-a of article 19 of the Labor Law all of the provisions of a minimum wage order apply also to males 21 years of age and over.)

**3. Apprentices and learners.** a. The term *"apprentice and learner"* shall mean an employee never heretofore employed in the cleaning and dyeing industry in any occupation whatsoever.

b. No employee shall be considered an apprentice or learner after such employee has been employed in any occupation in the cleaning and dyeing industry during four calendar weeks regardless of the number of hours worked in each of these weeks.

**4. Full-time employee.** A *"full-time employee"* is one who works 24 hours or more in any one week.

**5. Part-time employee.** A *"part-time employee"* is one who is assigned to and works less than 24 hours in any one week.

**6. Working time.** *"Working time"* means time worked or time of permitted attendance, including waiting time, whether or not work is provided, and time spent in traveling as part of the duties of the employee.

**7. Voluntary absence.** *"Voluntary absence"* includes any absence from work not directed by the employer or his agent and not designed or planned by the employer or the employee to evade minimum wage standards. "Voluntary absence" does not include any absence contemplated in the employment contract; or incurred as a condition of continued employment; or at the direction or suggestion of the employer or his agent; or recurrent or periodic absence, except such absence for medical treatment under a doctor's care.

**8. Split shift.** A *"split shift"* is a schedule of daily hours in which the hours of work required or permitted are not consecutive. Interruption of working hours for a lunch period of one hour or less does not constitute a split shift. If there shall be practical difficulties or unnecessary hardships in carrying out the definition of a split shift, the industrial commissioner may, after proper investigation make a variation from such provision if the intent of the order and the Minimum Wage Law, article 19 of the Labor Law, shall be observed. Any person affected by such provision, or the agent of such person, may petition the commissioner for such variation, stating in writing the ground therefor. The commissioner shall cause an investigation to be made, and if he deems it advisable, may hold a hearing on such petition. A record of all variations shall be kept in the office of the Department of Labor.

**Effective date.** This order shall take effect April 15, 1957.

related to the processes described in subdivi-

ressing when a process in the manufacture of hand materials being processed for resale shall .blishments insofar as they are covered by the rning laundry occupations.

ie" means a woman 21 years of age and over, age of 21 years employed in the cleaning and t to section 663-a of article 19 of the Labor if a minimum wage order apply also to males

ners. a. The term "*apprentice and learner*" ever heretofore employed in the cleaning and ipation whatsoever.

considered an apprentice or learner after such l in any occupation in the cleaning and dyeing dar weeks regardless of the number of hours ks.

A "*full-time employee*" is one who works 24 veek.

A "*part-time employee*" is one who is assigned ours in any one week.

*king time*" means time worked or time of per- g waiting time, whether or not work is pro- aveling as part of the duties of the employee. '*Voluntary absence*" includes any absence from ployer or his agent and not designed or planned nployee to evade minimum wage standards. not include any absence contemplated in the urred as a condition of continued employment; estion of the employer or his agent; or recur- ept such absence for medical treatment under

*hift*" is a schedule of daily hours in which the ermitted are not consecutive. Interruption of eriod of one hour or less does not constitute a practical difficulties or unnecessary hardships n of a split shift, the industrial commissioner tion make a variation from such provision if l the Minimum Wage Law, article 19 of the d. Any person affected by such provision, or y petition the commissioner for such variation, id therefor. The commissioner shall cause an d if he deems it advisable, may hold a hearing of all variations shall be kept in the office of

er shall take effect April 15, 1957.



## Minimum Wage Order No. 5-c—Governing Minimum Wage Standards in the Restaurant Industry

(Adopted July 19, 1957; effective September 17, 1957; filed July 30, 1957. Statutory authority article 19, Labor Law.)

### A. Minimum Wage Standards

**1. Basic full-time rates.** A full-time employee is one who works more than 30 hours in any week.

| | *Without Meals* | *With Meals* |
|---|---|---|
| *Until May 31, 1958* | | |
| Service employees | 62 cents per hour | 52 cents per hour |
| Non-service employees | 86 cents per hour | 76 cents per hour |
| *Effective June 1, 1958* | *Without Meals* | *With Meals* |
| Service employees | 70 cents per hour | 60 cents per hour |
| Non-service employees | $1.00 per hour | 90 cents per hour |

**2. Part-time rates.** A part-time employee is one who works 30 hours or less in any week. The part-time rate shall not apply to employees who work 30 hours or less in any week as the result of voluntary absence. In no event shall the earnings for total hours worked in excess of 30 in any week be less than the total that may be earned at the part-time rate for 30 hours in any such week.

| | *Without Meals* | *With Meals* |
|---|---|---|
| *Until May 31, 1958* | | |
| Service employees | 67 cents per hour | 57 cents per hour |
| Non-service employees | 91 cents per hour | 81 cents per hour |
| *Effective June 1, 1958* | *Without Meals* | *With Meals* |
| Service employees | 75 cents per hour | 65 cents per hour |
| Non-service employees | $1.05 per hour | 95 cents per hour |

**3. Overtime rates.** The minimum overtime rate shall be one and one-half times the applicable full time "with meals" rate, plus 10 cents hourly where meals are not furnished.

| | *Without Meals* | *With Meals* |
|---|---|---|
| *Until May 31, 1958* | | |
| Service employees | 88 cents per hour | 78 cents per hour |
| Non-service employees | $1.24 per hour | $1.14 per hour |
| *Effective June 1, 1958* | *Without Meals* | *With Meals* |
| Service employees | $1.00 per hour | 90 cents per hour |
| Non-service employees | $1.45 per hour | $1.35 per hour |

Overtime rate shall be paid for all hours in excess of 40 hours in any one week.

**4. Additional rate for split shift and spread of hours.** a. An employee shall be paid an additional $1, in addition to the minimum wages otherwise required herein, for any day in which (1) the spread of hours exceeds 10, or (2) in which there is more than one interval off duty (excluding any meal period of one hour or less), or (3) in which both situations occur.

b. A "*split-shift*" is a schedule of daily hours in which the working hours required or permitted of an employee are not consecutive. No meal period of one hour or less shall be considered an interruption of consecutive hours.

c. The "*spread of hours*" is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty.

d. An "*interval off duty*" is time during the workday other than work-

ing time, waiting time, travel time, and time off duty for any meal period of one hour or less.

**5. Minimum call-in pay.** a. An employee who by request or permission of the employer reports for duty on any day shall be paid at the applicable minimum wage rate

a. for at least three hours for one shift of three consecutive hours or less,
b. for at least six hours for two shifts totaling six hours or less,
c. for at least eight hours for three shifts totaling eight hours or less.

b. Students who regularly attend a full-time school are exempt from this provision on days when school is in session.

### B. Regulations

**1. Tips.** Tips or gratuities shall not be counted as part of the minimum wage.

**2. Furnishing and maintenance of required uniforms.** a. The employer shall supply, maintain, and launder required uniforms except that (1) where an employee purchases a required uniform he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages; and (2) where the employer does not provide for the laundering or maintenance of any employee's required uniform, he shall pay such an employee four cents per hour in addition to the minimum wage prescribed herein.

b. A *"required uniform"* shall include any item of clothing, decoration, or ornament that an employee wears at work at the suggestion, request, or direction of the employer or his agent, or to comply with any state, city, or local law, rule, or regulation, and which is not ordinarily worn by a person as part of a normal wardrobe.

**3. Meals.** a. An employer who pays the "with meals" rate shall furnish one meal a day to each employee who works less than five hours on any day and two meals a day to any employee working five hours or more on any day. An employee working on a split-shift on any day shall receive one meal for each shift worked.

b. No charge shall be made by an employer for any meal furnished.

c. A *"meal"* shall provide adequate portions of a variety of wholesome, nutritious foods and shall include at least one of the types of foods from all four of the following groups: (1) fruits or vegetables; (2) cereals, bread or potatoes; (3) eggs, meat, fish or poultry; (4) milk, tea or coffee; except that for breakfast, group (3) may be omitted if both cereal and bread are offered in group (2).

**4. Allowance for lodging.** Lodging actually furnished by an employer to an employee may be considered a part of the minimum wage, but shall be valued at not more than:

| | |
|---|---|
| Lodging for the full week | $2.50 |
| Daily lodging | .40 |

**5. No deductions.** The minimum wage of employees shall be subject to no deductions other than those authorized or required by law.

**6. Travel expense.** An employee who is required by the employer to travel as part of his duties shall be reimbursed for actual travel expenses incurred.

**7. Learner or apprentice rates.** Learners and apprentices shall be paid at not less than the minimum wage herein provided.

ːavel time, and time off duty for any meal period

ɏ. a. An employee who by request or permis-
ɔrts for duty on any day shall be paid at the
rate

hours for one shift of three consecutive hours

ɹrs for two shifts totaling six hours or less,
hours for three shifts totaling eight hours or

ly attend a full-time school are exempt from this
ɿool is in session.

### B. Regulations

ities shall not be counted as part of the mini-

**ntenance of required uniforms.** a. The em-
in, and launder required uniforms except that
rchases a required uniform he shall be reim-
the cost thereof not later than the time of the
d (2) where the employer does not provide for
ance of any employee's required uniform, he
four cents per hour in addition to the minimum

shall include any item of clothing, decoration,
yee wears at work at the suggestion, request,
or his agent, or to comply with any state, city,
ation, and which is not ordinarily worn by a
vardrobe.
yer who pays the "with meals" rate shall
ch employee who works less than five hours on
y to any employee working five hours or more
ɹrking on a split-shift on any day shall receive
ɛed.
'e by an employer for any meal furnished.
adequate portions of a variety of wholesome,
ıclude at least one of the types of foods from
oups: (1) fruits or vegetables; (2) cereals,
meat, fish or poultry; (4) milk, tea or coffee;
roup (3) may be omitted if both cereal and
:).
ɛ. Lodging actually furnished by an em-
be considered a part of the minimum wage,
re than:

| | |
|---|---|
| for the full week | $2.50 |
| ɩging | .40 |

ıinimum wage of employees shall be subject
ɿose authorized or required by law.
nployee who is required by the employer to
ɿall be reimbursed for actual travel expenses

rates. Learners and apprentices shall be
imum wage herein provided.



**8. Diversified employment.** a. An employee in the restaurant industry who works at an occupation governed by another New York State minimum wage order

(1) for one hour or more during any one day, or
(2) for six or more hours in any one week

shall be paid for all his hours of working time for that day or week at the rates contained in the minimum wage order for such other industry or the restaurant industry, whichever is greater. Such employee shall be entitled to all of the benefits under any minimum wage order of either the restaurant industry or the other applicable industry covering the said date period, whichever is greater.

b. An employee in the restaurant industry who works in any week solely at an occupation or in an industry governed by another New York State minimum wage order shall be covered by such order for such week.

**9. Required records.** a. Every employer subject to this order shall establish, maintain, and make available for inspection at the place of employment for not less than two years, weekly payroll records which shall include for each employee: name, address, social security account number, age of males under 21, occupational classification, cash wages paid, and daily and weekly hours worked, including the exact time of arrival and departure on each shift on any day in which a split shift is worked or in which the spread of hours exceeds 10. The records shall also indicate whether employees receive meals and have uniforms laundered, cleaned, or maintained by the employer.

b. Each employer shall also make available for inspection such other records as may be kept by the employer to determine the employee's wages or income.

c. Time cards, time sheets, and other original time records, if any, shall be kept for at least two years and be made available for inspection.

**10. Statement to employee.** Every employer subject to this order shall furnish a statement to each of his employees with every weekly payment of wages listing hours worked, rates paid, and total earnings.

**11. Posting.** A notice issued by the Department of Labor, setting forth the provisions and regulations of this order, shall be posted in every establishment in the restaurant industry in a conspicuous place where employees can read it.

### C. Definitions

**1. Restaurant industry.** The term "*restaurant industry*" includes:

a. Any eating or drinking place which prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, or curb or counter service, to the public, to employees or to members or guests of members, and services in connection therewith or incidental thereto.

The industry includes but is not limited to service restaurants, cafeterias, commissaries, automats, bars and grills, taverns, coffee shops, luncheonettes, diners, sandwich shops, tea rooms, ice cream parlors, night clubs and cabarets; restaurant concessions in hotels; restaurants operated by, or as concessions in, department and variety stores, drug stores, candy stores, bakeries, delicatessens, places of amusement or recreation, other commercial and industrial establishments, and social, fraternal and professional clubs and similar organizations; caterers and banquet halls; restaurants, cafeterias, snack bars, and canteens in institutions catering to visitors and guests; concessions in restaurants and night clubs such as hat and coat check rooms, cigarette girls, photographers

and their assistants; frozen custard stands, frankfurter stands, and refreshment stands which qualify as restaurants under the foregoing term "*restaurant industry*".

b. The term "*restaurant industry*" excludes eating or drinking places operated by establishments customarily offering lodging accommodations of five or more rooms to the public, to employees or to members or guests of members, and also establishments where the service of food or beverage is not available to the public but is incidental to instruction, medical care, religious observance, or the care of handicapped or destitute persons or other public charges.

**2. Employee.** "*Employee*" means a woman 21 years of age and over and any person under the age of 21 years employed in the restaurant industry. (Pursuant to section 663-a of article 19 of the Labor Law all of the provisions of a minimum wage order apply also to males 21 years of age and over.)

**3. Service employee.** "*Service employee*" shall mean any employee who receives gratuities in an amount equal to or greater than the difference between the minimum wage at the "service" employee rate and the minimum wage at the "non-service" employee rate.

a. Classification as a "service" or "non-service employee" shall be on a weekly basis except that an employee may not be classified as a "service employee" on any day of such week in which he or she has been assigned to work at which gratuities are not customarily received.

b. The employer shall have the burden of proof that an employee receives sufficient gratuities to entitle him to classify such employee as a "service employee".

**4. Non-service employee.** "*Non-service employee*" means all employees except service employees.

**5. Working time.** "*Working time*" means time worked or time of permitted attendance, including waiting time, whether or not work is provided, and time spent in traveling as part of the duties of the employee.

**6. Voluntary absence.** "*Voluntary absence*" includes any absence from work not directed by the employer or his agent and not designed or planned by the employer or the employee to evade minimum wage standards. "Voluntary absence" does not include any absence contemplated in the employment contract; or incurred as a condition of continued employment; or at the direction or suggestion of the employer or his agent; or recurrent or periodic absence, except such absence for medical treatment under a doctor's care.

**Effective date.** This order shall take effect September 17, 1957.

## Minimum Wage Order No. 6-d—Governing Minimum Wage Standards in the Hotel Industry

(Adopted November 14, 1957; effective January 13, 1958; filed November 18, 1957. Statutory authority article 19, Labor Law)

**1. The following minimum wage standards shall apply to all-year hotels:**

a. *Nonresidential employees.*

(1) *Minimum full-time hourly rate.*

(a) *New York City.* The minimum full-time hourly rate for em-

frozen custard stands, frankfurter stands, and re
:h qualify as restaurants under the foregoing term

rant industry" excludes eating or drinking places
ments customarily offering lodging accommoda-
rooms to the public, to employees or to members
and also establishments where the service of food
lable to the public but is incidental to instruction,
observance, or the care of handicapped or desti-
public charges.

oyee" means a woman 21 years of age and over,
e age of 21 years employed in the restaurant in-
ion 663-a of article 19 of the Labor Law all of the
wage order apply also to males 21 years of age

"*Service employee*" shall mean any employee who
amount equal to or greater than the difference
ge at the "service" employee rate and the mini-
ervice" employee rate.
service" or "non-service employee" shall be on
an employee may not be classified as a "service
such week in which he or she has been assigned
ies are not customarily received.
have the burden of proof that an employee re-
to entitle him to classify such employee as a

e. "*Non-service employee*" means all employ-
es.

rking time" means time worked or time of
luding waiting time, whether or not work is
traveling as part of the duties of the employee.
"*Voluntary absence*" includes any absence from
ployer or his agent and not designed or planned
mployee to evade minimum wage standards.
not include any absence contemplated in the
curred as a condition of continued employment;
stion of the employer or his agent; or recurrent
such absence for medical treatment under a

der shall take effect September 17, 1957.

**No. 6-d—Governing Minimum Wage
ls in the Hotel Industry**

4, 1957; effective January 13, 1958; filed
atutory authority article 19, Labor Law)

**um wage standards shall apply to all-year**

es.
*hourly rate.*
The minimum full-time hourly rate for em-



ployees whose working time is more than 30 hours but not more than 40 hours in any week shall be as follows:

| | |
|---|---|
| (1) Non-service employees | $1.00 an hour |
| (2) Service employees | .70 an hour |

(b) *Remainder of the state.* The minimum full-time hourly rate for employees whose working time is more than 30 hours but not more than 42 hours in any week shall be as follows:

| | |
|---|---|
| (1) Non-service employees: | |
| From January 13, 1958 through July 12, 1958 | $.85 an hour |
| From July 13, 1958 through October 15, 1958 | .90 an hour |
| On October 16, 1958 and thereafter | 1.00 an hour |
| (2) Service employees | .70 an hour |

(2) *The minimum part-time hourly rate.*

(a) Any employee whose working time is 30 hours or less in any week at the direction of the employer, shall receive five cents per hour more than the minimum full-time hourly rate for each hour worked up to and including 30 hours.

(b) In no event shall the earnings for hours worked totaling more than 30 hours in any week be less than the total amount that may be earned at the part-time rate for 30 hours in any such week.

(c) The part-time hourly rate shall not apply to full-time employees who voluntarily absent themselves for any period during a week.

(3) *Minimum overtime hourly rate.* The minimum overtime hourly rate for employees in (a) *New York City* for work in excess of 40 hours in any week, and (b) *the remainder of the state* for work in excess of 42 hours in any week shall be one and one-half times the minimum full-time hourly rate applicable to the classification of the employee taking into account the number of meals received.

(4) *Additional rate—split shift and spread of hours.* On any day (a) in which the spread of hours exceeds 10, or (b) in which there is more than one interval off duty, excluding any meal period of one hour or less, or in which both situations occur, an employee shall receive $1 in addition to the hourly wages earned.

(5) *Minimum daily rates.*

(a) An employee who, by request or permission of the employer, reports for duty on any day, whether or not assigned to actual work, shall be paid for at least three hours, at the rate applicable to the classification of the employee for the time actually worked and at the non-service rate for the balance of the three hours.

(b) An employee who, by request or permission of the employer, reports for duty twice on any day, whether or not assigned to actual work, shall be paid for at least six hours, at the rate applicable to the classification of the employee for the time actually worked and at the non-service rate for the balance of the six hours.

(c) An employee who, by request or permission of the employer reports for duty three times on any day, whether or not assigned to actual work, shall be paid for at least eight hours, at the rate applicable to the classification of the employee for the time actually worked and at the non-service rate for the balance of the eight hours.

(d) Payment shall be made at the minimum hourly rate applicable to the number of meals received and the total number of hours of working time for that week.

(e) This regulation shall not apply to an employee who is a student under 18 years of age, on a work day when he or she is required to

attend school, but such an employee shall be paid for each hour or fraction thereof of actual work or permitted attendance, not less than the minimum hourly rate applicable to such an employee.

(6) *Meals.* The following deductions may be made from the full-time or part-time hourly rate for employees who receive meals furnished by the employer:

| | |
|---|---|
| Employees who receive one meal per day | 6 cents per hour |
| Employees who receive two meals per day | 12 cents per hour |

Where an employee who works five or more hours on any day receives a third meal on such day, the employer may be allowed an additional credit of 40 cents for such day but with no effect upon the wage rate.

(7) *Rate for waiting time.* Waiting time, other than time off duty for split shift, during which an employee is required or permitted to wait during the work day while no work is provided by the employer, shall be counted as working time. Such waiting time shall be paid for at not less than the minimum hourly non-service rate applicable to the number of meals received, and the total number of hours of working time for that week.

b. *Residential employees.*

(1) *Minimum weekly rate.* The minimum weekly rate for residential employees who work 44 hours or less in any week shall be as follows:

| | |
|---|---|
| Employees who receive lodging but no meals | $35 per week |
| Employees who receive lodging and meals | 27 per week |

(2) *Exceptions to weekly rates.*

(a) The minimum weekly rate shall be prorated during the first week of employment of new employees who have been hired after the beginning of such week; for employees whose employment has terminated before the end of the week; for employees who voluntarily absent themselves during such week; and for employees who are prevented for more than six successive hours in any week from rendering service because of riot, act of God, or stoppage due to general breakdown of equipment.

(b) An employee working 14 hours or less per week and not "on call" at other times, whose lodging on the premises is not necessary to the performance of his duties, shall not be deemed a residential employee for the purposes of this classification and shall be paid not less than the applicable nonresidential rate.

(3) *Overtime rate.* The minimum hourly rate for work in excess of 44 hours in any week shall be one and one-half times the minimum weekly rate applicable to the employee based on a 44-hour week.

**2. The following regulations to safeguard these minimum wage standards in all-year hotels shall apply to all employees, except as otherwise provided:**

a. *Uniforms.* The employer is to furnish and to launder, clean and maintain uniforms for all employees. However, if the employee shall have furnished such uniforms at the request or direction of the employer, or as a condition of employment, the employer shall reimburse the employee for the cost thereof not later than one week after the furnishing of such uniforms or the time of the next payment of wages, whichever comes later and regardless of whether the employee leaves his employment within such period or not. If the employee leaves within such period he shall be reimbursed for the cost of the uniform at or before leaving. The employer may elect to pay regularly to employees an additional five cents per hour in lieu of laundering, cleaning and maintaining uniforms.

such an employee shall be paid for each hour or actual work or permitted attendance, not less than ly rate applicable to such an employee.

·llowing deductions may be made from the full-time rate for employees who receive meals furnished by

| | |
|---|---|
| :eive one meal per day | 6 cents per hour |
| :eive two meals per day | 12 cents per hour |

vho works five or more hours on any day receives ι day, the employer may be allowed an additional · such day but with no effect upon the wage rate. *ing time.* Waiting time, other than time off duty g which an employee is required or permitted to ‹ day while no work is provided by the employer, vorking time. Such waiting time shall be paid for ninimum hourly non-service rate applicable to the eived, and the total number of hours of working

*'ees.*

*:ly rate.* The minimum weekly rate for residential 14 hours or less in any week shall be as follows:

| | |
|---|---|
| :eive lodging but no meals | $35 per week |
| :eive lodging and meals | 27 per week |

*weekly rates.*

m weekly rate shall be prorated during the first t of new employees who have been hired after the veek; for employees whose employment has termi- l of the week; for employees who voluntarily absent such week; and for employees who are prevented accessive hours in any week from rendering service of God, or stoppage due to general breakdown of

ι working 14 hours or less per week and not "on , whose lodging on the premises is not necessary of his duties, shall not be deemed a residential urposes of this classification and shall be paid not able nonresidential rate.

The minimum hourly rate for work in excess of ‹ shall be one and one-half times the minimum to the employee based on a 44-hour week.

**·lations to safeguard these minimum wage stand- hall apply to all employees, except as otherwise**

loyer is to furnish and to launder, clean and main- ployees. However, if the employee shall have furn- the request or direction of the employer, or as a , the employer shall reimburse the employee for · than one week after the furnishing of such uni- ₂ next payment of wages, whichever comes later r the employee leaves his employment within such ployee leaves within such period he shall be reim- ₂ uniform at or before leaving. The employer may · employees an additional five cents per hour in ing and maintaining uniforms.



b. *Lodging and meals.* (1) No charge shall be made by an employer for lodging or for any meal furnished by the employer to an employee whose compensation is predicated on the inclusion of lodging and meals except as herein indicated. A nonresidential employee in an all-year hotel, working less than five hours on any day and receiving meals, shall be paid not less than the hourly rate for employees who receive one meal per day.

(2) A residential employee receiving meals shall receive three meals per day for six days a week and lodging for the entire week. In no event shall the employer charge for meals if supplied on the seventh day. Nothing herein contained shall prevent such employees purchasing from the employer, or the employer selling to the employee, meals at other times or places than those provided as part of their compensation.

c. *Travel time and expense.* Any nonresidential employee in an all-year hotel required or permitted to travel from one establishment to another of the same employer after the beginning or before the close of the working day shall be compensated for travel time at the non-service rate and shall be reimbursed for carfare.

**3. The following minimum wage standards shall apply to resort hotels*:**

* These provisions are a continuation of Minimum Wage Order No. 6-c.

a. *Minimum full-time weekly rate.* The minimum weekly rate for employees in resort hotels who work 48 hours or less in any week but more than three days or 24 hours shall be as follows:

(1) *Service employees.*

| | |
|---|---|
| Employees who receive three meals per day and lodging | $ 8 per week |
| Employees who receive three meals per day but no lodging | $13 per week |
| Employees who receive lodging but no meals | $15 per week |
| Employees who receive neither meals nor lodging | $20 per week |

(2) *Chambermaids.*

| | |
|---|---|
| Employees who receive three meals per day and lodging | $12 per week |
| Employees who receive three meals per day but no lodging | $17 per week |
| Employees who receive lodging but no meals | $19 per week |
| Employees who receive neither meals nor lodging | $24 per week |

(3) *Non-service employees.*

| | |
|---|---|
| Employees who receive three meals per day and lodging | $16 per week |
| Employees who receive three meals per day but no lodging | $21 per week |
| Employees who receive lodging but no meals | $23 per week |
| Employees who receive neither meals nor lodging | $28 per week |

b. *Exception to weekly rate.* The minimum weekly rate shall be prorated during the first week of employment of new employees who have been hired after the beginning of the week; for employees who have been dis-

missed as unsatisfactory or whose employment has terminated before the end of the week; for employees who voluntarily absent themselves; and for employees who are prevented from rendering services for more than six successive hours because of riot, act of God, or stoppage due to general breakdown of equipment.

c. *Part-time hourly rate.* The minimum hourly rate for employees who work three days or less or 24 hours or less in any week shall be one-fortieth of the applicable weekly rate.

d. *Overtime rate.* The minimum hourly rate for employees who work in excess of 48 hours in any week shall be time and one-half the basic minimum rate applicable to the classification of the employee based on a 48-hour week. The minimum hourly rate for employees who work on the seventh consecutive day in any week shall be time and one-half of the basic minimum rate applicable to the classification of the employee for the hours worked on such seventh consecutive day.

e. *Minimum daily rate.* An employee employed at the part-time hourly rate who, by request or permission of the employer, reports for duty at the beginning of his or her work shift, regardless of whether he or she is assigned to actual work for the full three hours, shall be paid for a* least three hours on any shift at the minimum hourly rate applicable to that employee.

f. *Rate for waiting time.* Waiting time other than time off duty for split shift, during which an employee, employed at the part-time hourly rate, is required or permitted to wait during the work day while no work is provided by the employer, shall be counted as working time. Such waiting time shall be paid for at not less than the minimum hourly rate applicable to that employee.

**4.** ***The following regulations to safeguard these minimum wage standards in resort hotels shall apply to all employees, except as otherwise provided:**

* These provisions are a continuation of Minimum Wage Order No. 6-c.

a. *Uniforms.* (1) The employer is to furnish and to launder, clean and maintain uniforms for all employees. However, if the employee shall have furnished such uniforms at the request or direction of the employer, or as a condition of employment, the employer shall reimburse the employee for the cost thereof not later than one week after the furnishing of such uniforms or the time of the next payment of wages, whichever comes later and regardless of whether the employee leaves his employment within such period or not. If the employee leaves within such period he shall be reinbursed** for the cost of the uniform at or before leaving.

(2) The employer may elect to pay regularly to employees an additional three cents per hour, but not to exceed $1.44 in any week, in lieu of laundering, cleaning and maintaining uniforms.

b. *Lodging and meals.* (1) No charge shall be made by an employer for lodging or for any meal furnished by the employer to an employee whose compensation is predicated on the inclusion of lodging and meals except as herein indicated. An employee in a resort hotel receiving meals, who is employed at the part-time hourly rate and who works less than five hours on any day shall receive one meal on such day. Such employee working five hours or more on any day shall receive two meals on such day. In any

* So in original. Apparently should be "at".
** So in original. Apparently should be "reimbursed".

·y or whose employment has terminated before the ıployees who voluntarily absent themselves; and for vented from rendering services for more than six se of riot, act of God, or stoppage due to general ıt.

*'ate.* The minimum hourly rate for employees who or 24 hours or less in any week shall be one-fortieth · rate.

e minimum hourly rate for employees who work in ıy week shall be time and one-half the basic mini- he classification of the employee based on a 48-hour urly rate for employees who work on the seventh week shall be time and one-half of the basic mini- the classification of the employee for the hours consecutive day.

*c.* An employee employed at the part-time hourly permission of the employer, reports for duty at her work shift, regardless of whether he or she is for the full three hours, shall be paid for a* least t at the minimum hourly rate applicable to that

*ne.* Waiting time other than time off duty for split mployee, employed at the part-time hourly rate, to wait during the work day while no work is pro- shall be counted as working time. Such waiting not less than the minimum hourly rate applicable

**gulations to safeguard these minimum wage ls shall apply to all employees, except as other-**

ıre a continuation of Minimum Wage Order

: employer is to furnish and to launder, clean and l employees. However, if the employee shall have at the request or direction of the employer, or as t, the employer shall reimburse the employee for than one week after the furnishing of such uni- next payment of wages, whichever comes later the employee leaves his employment within such loyee leaves within such period he shall be rein- he uniform at or before leaving.
ay elect to pay regularly to employees an addi- our, but not to exceed $1.44 in any week, in lieu and maintaining uniforms.

(1) No charge shall be made by an employer for ırnished by the employer to an employee whose l on the inclusion of lodging and meals except as loyee in a resort hotel receiving meals, who is hourly rate and who works less than five hours one meal on such day. Such employee working day shall receive two meals on such day. In any

uld be "at".
uld be "reimbursed".



case such employee working on split shift on any day shall receive one meal for each consecutive period of hours worked on that day.

(2) Nothing herein contained shall prevent such employees purchasing from the employer, or the employer selling to the employee, food in addition to meals provided as part of their compensation.

**5. The following regulations to safeguard the minimum wage standards in all-year and resort hotels shall apply to all employees:**

a. *Gratuities.* In no event shall gratuities from patrons or others be considered as part of the minimum wage.

b. *Deductions.* The minimum wage shall be subject to no deductions whatsoever except as authorized by statute.

c. *Apprentices and learners.* Learners and apprentices shall be paid not less than the minimum wage. This provision has no application to handicapped workers or students in hotel administration courses in universities, colleges, junior colleges, high schools or institutes as elsewhere covered in this order.

d. *Handicapped workers.* No employee whose earning capacity has been impaired may be paid less than the minimum wage, until a special license, issued in accordance with the provisions of section 658 of the Labor Law, has been obtained by the employer from the Division of Industrial Relations, Women in Industry and Minimum Wage.

e. *Diversified employment.* An employee who works at diversified employment shall be paid the minimum rate for the highest paid occupation at which she works for each day of such diversified employment under this order, provided that she works for two hours or more at the higher paid occupation.

f. *Employment under other minimum wage orders.* An employee of a hotel establishment who works for a period of one week solely at an occupation or in an industry governed by another New York State minimum wage order, shall not be covered by this order, but shall for that week be covered by such other minimum wage order.

**6. The following administrative regulations shall apply to all-year hotels and resort hotels.**

a. *Statement to employee.* With every wage payment to each employee subject to Minimum Wage Order No. 6-d, there shall be given a statement specifying the rates, earnings (gross and net), deductions, and hours worked.

b. *Records.* (1) Every employer shall keep and make available for inspection at each establishment and branch of the establishment for at least two years a record of each employee, including the name, address, age of male under 21, social security number, occupational classification, cash wages paid, and daily and weekly hours worked, including the exact time of arrival and departure on each shift on any day in which a split shift is worked or in which the spread of hours exceeds 10. The records shall also indicate whether employees receive meals and have uniforms laundered, cleaned or maintained by the employer.

(2) Such records shall be kept on the premises in each establishment for a period of at least two years, and the employer shall on demand submit a sworn copy of such records to the commissioner or his representative together with such information as the commissioner in his discretion may deem necessary.

(3) Time cards, time sheets, or other original time records, where used, shall be kept for at least two years.

c. *Posting.* A summary of the provisions of Minimum Wage Order No. 6-d and Administrative Regulations issued by the Department of Labor shall be posted in a conspicuous place where employees can read it.

**7. Definitions.**

a. *Hotel industry.*

The term *"hotel industry"* includes any establishment which, as a whole or part of its business activities offers lodging accommodations for hire to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto.

The industry includes but is not limited to commercial hotels, apartment hotels, resort hotels, lodging houses, boarding houses, furnished room houses, children's camps, adult camps, tourist camps, tourist homes, auto camps, residence clubs, membership clubs, dude ranches, Turkish baths and Russian baths.

The term *"hotel industry"* excludes:

Eating or drinking places customarily offering lodging accommodations of less than five rooms to the public, to employees, or to members or guests of members.

Establishments in which lodging accommodation is not available to the public, or to members or to guests of members, but is incidental to instruction, medical care, religious observance, or to the care of handicapped or destitute persons or other public charges.

(1) *Resort hotel*.* A *"resort hotel"* (see definition of "hotel industry") is one which offers lodging accommodations of a vacational nature to the public or to members or guests of members and which

(a) operates for not more than seven months in any calendar year, or

(b) being located in a rural community or in a city or village of less than 15,000 population, increased its number of employee work days (including adult males) during any consecutive four-week period by at least 100 percent over the number of employee work days (including adult males) in any other consecutive four-week period within the preceding calendar year, or

(c) being located in a rural community or in a city or village of less than 15,000 population, increased its number of guest days during any consecutive four-week period by at least 100 percent over the number of guest days in any other consecutive four-week period in the preceding calendar year.

* This provision is a continuation of Minimum Wage Order No. 6-c.

(2) *All-year hotels. "All-year hotels"* shall be all other hotels not qualifying as "resort hotels" under the foregoing definition.

(3) *Motor courts, motels, cabins, tourist homes and other establishments* serving similar purposes shall be classified as all-year hotels unless they specifically qualify as a resort hotel in accordance with the foregoing definition thereof.

b. *Employee. "Employee"* shall mean a woman 21 years of age and over and all workers of either sex under the age of 21 years employed in the hotel industry by the operator of the establishment or by any other employer. (*Note:* No male 21 years of age or over may be paid less than the rates fixed for women and minors; other requirements of this order also apply.)

(1) *Caddies.* Caddies shall be excluded from this definition. This exclusion shall not be deemed to exclude caddies from another minimum wage order which covers such employees.

DI

(2) *Camp counselo*
selors and employees
struction of campers
ing from a camp coun
junior aide or by som
This exclusion shall r
ployees in children's
minimum wage order
(3) A camper whe
dren's camp and at a
and accommodations
as a "camper-worke
deemed an employee
(4) A person whi
hotel administration
institute and is requ
by accepting employ
Such college or univ
and their places of e
ployment to the Divi
Minimum Wage. Th
of exemption for ea
to the student who
shall keep such certi
(5) A person wh
high school or oth
acquire experience i
shall be known as
exceed a total of th
a list of such and t
of their employmer
Industry and Minir
cial certificate of e
be delivered to the
employer shall kee
(6) Turkish bat
employees under t
bath workers empl
operated independ
baths shall be cons
in connection wit
c. *Minors. "Mino*
years of age.
d. *Chambermaid.*
relate solely to the
e. *Service employ*
gardless of sex who
ence between the se
that employees who
are "service employ
(1) The servic
the perf
(2) Bellmen.
(3) Baggage p
(4) Package-r